**ODENBREIT LAW, APC**
KATHERIN J. ODENBREIT (184619)
odenbreit@huntortmann.com
16835 Algonquin Street, Suite 221
Huntington Beach, California 92649
Telephone: 888/490-3510

**COHELAN, KHOURY & SINGER**
ISAM C. KHOURY (58759)
ikhoury@ckslaw.com
MICHAEL D. SINGER (115301)
msinger@ckslaw.com
JEFF GERACI (151519)
jgeraci@ckslaw.com
605 C. Street, Suite 200
San Diego, California
Telephone: 619/595-3001
Facsimile: 619/595-3000

**BISNAR|CHASE LLP**
BRIAN D. CHASE (SBN 164109)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (211258)
jbeligan@bisnarchase.com
1301 Dove Street, Suite 120
Newport Beach, California 92660
Telephone: 949/752-2999
Facsimile: 949/752-2777

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cynthia L. Czuchaj, a California resident; Angelique Mundy, a Pennsylvania resident; Barbara McConnell, a Michigan resident; and Patricia Carter, a New York resident, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Conair Corporation, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 13CV01901-BEN-RBB<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

1       Plaintiffs Cynthia L. Czuchaj ("Plaintiff Czuchaj" or "California Plaintiff"),
2   Angelique Mundy ("Plaintiff Mundy" or "Pennsylvania Plaintiff"), Barbara
3   McConnell ("Plaintiff McConnell" or "Michigan Plaintiff"), and Patricia Carter
4   ("Plaintiff Carter" or "New York Plaintiff", collectively with Czuchaj, Mundy, and
5   McConnell, "Plaintiffs"), by and through their undersigned attorneys, bring this
6   action on behalf of themselves and all others similarly situated, based upon personal
7   knowledge as to themselves and their activities, and on information and belief as to
8   all other matters, against defendants Conair Corporation and DOES 1 through 10
9   (collectively, "CONAIR" or "Defendant"), and allege as follows:

10                         **JURISDICTION AND VENUE**

11       1.     Diversity subject matter jurisdiction exists over this class action
12   pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4
13   (2005), amending 28 U.S.C. § 1332, at new subsection (d), conferring federal
14   jurisdiction over class actions involving: (a) 100 or more members in the proposed
15   class; (b) where at least some members of the proposed class have different
16   citizenship from some defendants; and (c) where the claims of the proposed class
17   members exceed the sum or value of five million dollars ($5,000,000) in the
18   aggregate.  28 U.S.C. §§ 1332(d)(2) and (6).

19       2.     While the exact number of members in the proposed class is unknown
20   at this time, Plaintiffs have reason to believe hundreds of thousands of consumers
21   purchased Defendant's Conair Infiniti Pro 1875 Watt Hair Dryer (259/279 Series)
22   ("CONAIR Hair Dryers" or "Hair Dryers") throughout California, Pennsylvania,
23   Michigan and New York during the relevant period.  According to Defendant's own
24   website, "about 570,000 units" were sold from approximately August 2010 to
25   August 2013.[1]  The number of Class members could be discerned from the records

26   
27       [1]   http://www.conair.com/recalls.php?cntpcID=62&id=60.
28

1  maintained by Defendant and by identifying Class members who registered their
2  product with CONAIR.

3      3.     Diversity of citizenship exists between Plaintiffs and Defendant.
4  Plaintiff Czuchaj is a citizen and resident of California.  Plaintiff Mundy is a citizen
5  and resident of Pennsylvania.   Plaintiff McConnell is a citizen and resident of
6  Michigan, and Plaintiff Carter is a citizen and resident of New York.  CONAIR is
7  incorporated in Delaware with its corporate headquarters in East Windsor, New
8  Jersey with its Marketing and Sales headquarters located at One Cummings Point
9  Road, Stamford, Connecticut.  Therefore, diversity of citizenship exists.

10     4.     While the exact damages to Plaintiffs and the Class are unknown at this
11 time, Plaintiffs reasonably believe their claims exceed five million dollars
12 ($5,000,000) in the aggregate.

13     5.     This Court has personal jurisdiction over Defendant because Defendant
14 has purposefully availed itself of the privilege of conducting business in the State of
15 California.

16     6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because
17 many of the acts and transactions giving rise to this action occurred in this District
18 and because Defendant:

19         a.     has intentionally availed itself of the laws and markets within this
20                District through the promotion, marketing, distribution and sale
21                of CONAIR Hair Dryers in this District;
22         b.     does substantial business in this District;
23         c.     is subject to personal jurisdiction in this District;
24 and because Plaintiff Czuchaj:
25         a.     was exposed to Defendant's misleading practices and
26                representations in this District; and
27         b.     purchased CONAIR HAIR DRYERS in this District.
28

## NATURE OF THE ACTION

7.     Defendant, the manufacturer of the CONAIR Hair Dryers, has a uniform and long-standing pattern of employing unfair and deceptive practices with respect to the sale of its products through misrepresentations and omissions concerning the potential risks thereof.   During the relevant period, CONAIR manufactured and sold Hair Dryers to consumers either directly through their website or through major retail chains nationwide.

8.     CONAIR sells its products, including the Hair Dryers, through major retail chains throughout California and the United States, such as Walmart, Sam's Club, Target and CVS.  These retail chains have a significant presence in California. For example, Walmart has approximately 250 retail locations in California which is the third largest for any state.  A significant number of the CONAIR Hair Dryers were sold to consumers in California.  Defendant also markets and sells its products, including the CONAIR Hair Dryers, directly to consumers in California and nationwide through its website: www.Conair-Store.com.   The website is a virtual store where consumers can view descriptions of the products, pictures of the products, check out, provide credit card information and have items shipped directly to them.   CONAIR also advertises a program on their website directed at local businesses whereby they can direct their customers to CONAIR's website directly and the businesses earn commissions.

9.     One of Defendant's principal marketing slogans is that its CONAIR Hair Dryers provide "Great Hair…Salon Results at Home," and variations of that statement.[2]   As will be explained in detail below, this is deceptive, false and misleading because it is not true that the CONAIR Hair Dryers provide "Great Hair … Salon Results at Home."  Instead consumer reports, complaints and CONAIR's

---

[2]     http://www.conair.com/index.php.

- 4 -

own internal studies have shown that the Hair Dryers are defective and could and did cause serious burns and fires—which is the antithesis of CONAIR's slogan that the its Hair Dryers provide "Great Hair...Salon Results at Home."   In fact, despite Defendant's marketing slogan that its Hair Dryers provide "Great Hair...Salon Results at Home," which conveys the impression that the CONAIR Hair Dryers carry no risk of harm to person or property, Defendant failed to disclose not only what it should know about the contents of its own products, but its Hair Dryers had a known manufacturing and design defect that caused coils in the barrel of the Hair Dryers to come into contact with one another and cause electrical short-outs, fire, or worst, cause hot coils to be shot from the barrel; resulting in physical harm to the consumers and/or their property.   The following is a block quoted text from CONAIR's recall website (language in brackets added):

> Hazard: The small heater coils in the barrel of the [H]air [D]ryer can come into contact with adjacent coils that can create an electrical short. As a result of the electrical short, small hot coils can project out of the dryer posing a burn or fire hazard.[3]

10.   Despite numerous incidents, injuries and complaints reported to Defendant and studies it performed on the CONAIR Hair Dryers notifying Defendant of the manufacturing and design defects, CONAIR did not voluntarily recall the Hair Dryers until October 15, 2013 (more than three years after the CONAIR Hair Dryers were sold to consumers which ranged in cost between $24.99 to $39.00).   The following bullet pointed paragraphs are block quoted text from CONAIR's recall website (language in brackets added):

> • October 15, 2013.   Stamford, CT-Conair Corporation today announced a voluntary recall of the Hair Dryers.   Consumers

---

[3]   http://www.conair.com/recalls.php?cntpcID=62&id=60.

should stop using recalled products immediately unless otherwise instructed. Conair Corporation has notified the U.S. Consumer Product Safety Commission of this voluntary recall.

- Sold at: Mass merchandisers, drug stores, department stores, beauty and specialty stores and on the Internet from approximately August 2010 to August 2013 for about $24.99 to $39.99.[4]

11. Prior to the recall and to this date, Defendant has employed numerous methods to convey to consumers throughout the United States its deceptive, false and misleading message about its CONAIR Hair Dryers, including its packaging, product inserts, and print advertisements, as well as its website through which it sells its product directly to the public.[5]

12. As a result of Defendant's deceptive, false and misleading claims in its advertising, consumers—including Plaintiffs and the other members of the proposed Class—have purchased CONAIR Hair Dryers without being advised that they have known manufacturing and design defects that could and did expose consumers to health and safety hazards as demonstrated by the complaints and incidents reported to Defendant, its own internal studies and investigations, which eventually resulted in the delayed voluntary recall of the CONAIR Hair Dryers. Had Defendant disclosed these material facts, Plaintiffs would not have purchased Defendant's CONAIR Hair Dryers. Defendant was able to charge more than what its CONAIR Hair Dryers would have been worth had it disclosed the truth about them.

13. Plaintiffs bring this lawsuit against Defendant, on behalf of themselves and the proposed Class, in order to: (a) halt the dissemination of Defendant's

---

[4]   *Id.*

[5]   http://www.conair.com/index.php (last visited May 29, 2014).

deceptive advertising message; (b) correct the false and misleading perception Defendant has created in the minds of consumers through its representations and omissions; and (c) secure redress for consumers who have purchased one or more CONAIR Hair Dryers.  Plaintiffs, on behalf of themselves and the proposed Class, allege violations of: (1) the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"); (2) the California Business & Professions Code §§ 17200, *et seq.* ("UCL"); (3) Song—Beverly Warranty Act, California Civil Code §§ 1792, *et seq.*; (4) breach of the Pennsylvania Unfair Trade Practices and Consumer Protection ("PUTPCP"), 73 P.S. §§ 201-1, *et seq.*; (5) breach of the Michigan Consumer Protection Act ("MCPA"), MCL 445.902, *et seq.*; (6) violations of the New York General Business Law § 349 ("GBL"); (7) breach of express warranty in violation of, among other state statutes, Cal. Com. Code § 2313 and common law; (8) breach of implied warranty; (9) strict products liability—defective design or manufacture; (10) strict products liability—failure to warn; and (11) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(1).

## PARTIES

*Plaintiffs*

14.    Plaintiff Czuchaj is an individual who resides in Los Angeles and is a citizen of California.

15.    Plaintiff Mundy is an individual who resides in Schuylkill Haven, Pennsylvania and is a citizen of Pennsylvania.

16.    Plaintiff McConnell is an individual who resides in Temperance, Michigan and is a citizen of Michigan.

17.    Plaintiff Carter is an individual who resides in Lewiston, New York and is a citizen of New York.

18.    During the relevant period, Plaintiffs, while in the states of California, Pennsylvania, Michigan, and New York, were exposed to and saw Defendant's

1    material, deceptive marketing claims and packaging.  As a result of that misleading

2    marketing and packaging and Defendant's omissions, Plaintiffs believed that

3    CONAIR's products were safe and did not expose them to unforeseeable and

4    dangerous health risks (e.g., flames protruding from the barrel of CONAIR Hair

5    Dryers or hot projectiles being shot at their heads).  While in the states of California,

6    Pennsylvania, Michigan, and New York, Plaintiffs purchased CONAIR Hair Dryers.

7    Had Defendant disclosed CONAIR Hair Dryers contained manufacturing and design

8    defects by which coils could touch each other, cause electrical short-outs and related

9    potential health hazards which is, or should be known to Defendant, and as

10   established by numerous complaints and Defendant's own research and

11   investigation, Plaintiffs would not have purchased Defendant's CONAIR Hair

12   Dryers.  Thus, as a result of Defendant's material deceptive claims and omissions,

13   Plaintiffs suffered injury in fact and lost money.

14        19.    Plaintiff Czuchaj purchased a CONAIR Hair Dryer in October 2011

15   from a mass retailer, Sam's Club in California.  Plaintiff Czuchaj purchased this

16   particular model of hair dryer due to CONAIR's representation that the AC motor is

17   more powerful, provides fast airflow and lasts up to three times longer than the

18   typical DC motor hair dryers, and based on its slogan that it would provide "Great

19   Hair ... Salon Results at Home":

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20
21
22
23
24
25
26
27
28

20.   Plaintiff Czuchaj used the Hair Dryer for its intended use to dry her hair for approximately 10 months. On August 14, 2012, while using the Hair Dryer to dry her hair, Plaintiff Czuchaj was suddenly made aware that flames were emanating from the Hair Dryer. Plaintiff Czuchaj dropped the Hair Dryer to avoid serious bodily injury at which time it scorched the carpet in her home. She then managed to unplug the device from the wall at which time it turned off. Plaintiff Czuchaj has been damaged in the amount she purchased the Hair Dryer, which on information and belief, ranged between $24.99 to $39.99.

21.   Plaintiff Mundy purchased a CONAIR Hair Dryer within the last two years from a Wal-Mart retail store in Pottsville or Hamburg, Pennsylvania. Mundy used the hair dryer for its intended use to dry her hair on a regular basis. In August 2013, while using the Hair Dryer to dry her hair, the Hair Dryer suddenly popped and several burning hot coils were projected from the barrel of the Hair Dryer. One of the coils landed inside Plaintiff Mundy's shirt causing burns and scarring to her chest. Plaintiff Mundy attempted to minimize the scarring by using a derma cream daily. However, the scarring remains and is not likely to be diminished or restored without surgery. Subsequent to the incident, Mundy contacted CONAIR's customer service department to lodge a complaint about the Hair Dryer. In or around October 2013, CONAIR acknowledged receipt of Plaintiff Mundy's complaint.

22.   Plaintiff McConnell purchased a CONAIR Hair Dryer in or around March 2012 at a Target retail store in Toledo, Ohio. Plaintiff McConnell used the Hair Dryer for its intended use to dry her hair on a regular basis. In early October 2013, Plaintiff McConnell was using the Hair Dryer to dry her hair when it popped loudly and flames began emanating from the cord. Plaintiff McConnell attempted to unplug the device, but each time she let go of the cord, flames erupted. Plaintiff McConnell had no choice but to put the device in the granite sink and quickly pull the plug from the wall. Burn marks remain in the sink. In mid-October 2013,

1   Plaintiff McConnell reported the incident to CONAIR customer service to which it
2   acknowledged receipt.

3        23.    Plaintiff Carter purchased the CONAIR Hair Dryer within the past 12
4   months at an Ulta Beauty retail store in Amherst, New York.  Plaintiff Carter used
5   the Hair Dryer on a daily basis to dry her hair and her three-year-old child's hair.  In
6   November 2013, while using the Hair Dryer to dry her hair, the Hair Dryer
7   exploded, burst into flames and ejected a hot coil which was lodged into Plaintiff
8   Carter's skull.  Plaintiff Carter's hair caught fire. Plaintiff Carter suffered second
9   degree burns to her scalp.  Plaintiff Carter was treated at Mount St. Mary's hospital
10  on November 2, 2013.  There remains some scarring and scabbing on her scalp and
11  her hair is just beginning to grow back in patches.

12  **_Defendant_**

13       24.    CONAIR is a Delaware Corporation headquartered in East Windsor,
14  New Jersey with its Marketing and Sales headquarters located at One Cummings
15  Point Road, Stamford, Connecticut.  CONAIR is engaged in the business of
16  designing, manufacturing and selling hair dryers to consumers either directly
17  through their website or through major retail chains nationwide.

18       25.    Plaintiffs allege, on information and belief, that at all times herein,
19  Defendant's agents, employees, representatives, executives, directors, partners,
20  and/or subsidiaries were acting within the course and scope of such agency,
21  employment, and representation, on behalf of Defendant.

22       26.    Each of defendant DOES 1-10 is the agent, servant, partner, joint-
23  venturer, co-venturer, principal, director, officer, manager, employee or shareholder
24  of one or more of its co-defendants who aided, abetted, controlled, and directed or
25  conspired with and acted in furtherance of said conspiracy with one or more of its
26  co-defendants in said co-defendants performance of the acts and omissions
27  described herein.  Plaintiffs sue each of these Doe defendants by these fictitious
28

1     names because Plaintiffs do not know these defendants' true names and capacities at

2     this time.

### FACTUAL ALLEGATIONS

**I.**     **THE CONAIR INFINITI PRO 1875 WATT HAIR DRYERS**

       27.     This action concerns CONAIR's Infiniti Pro 1875 Watt Hair Dryers:

*for immediate release*

**Infiniti Pro Hair Dryers (259/279 Series) Recalled by Conair Due to Burn or Fire Hazard**

October 15, 2013. Stamford, CT-Conair Corporation today announced a voluntary recall of the following products. Consumers should stop using recalled products immediately unless otherwise instructed. Conair Corporation has notified the U.S. Consumer Product Safety Commission of this voluntary recall.

**Name of Product:** Infiniti Pro by Conair™ Hair Dryer (259/279 Series)
**Units:** About 570,000
**Distributor:** Conair Corporation, Stamford, Conn.
**Hazard:** The small heater coils in the barrel of the hair dryer can come into contact with adjacent coils that can create an electrical short. As a result of the electrical short, small hot coils can project out of the dryer posing a burn or fire hazard.
**Incidents/Injuries:** Conair has received approximately 19 consumer reports of hot coils exiting the hair dryer, including minor property damage (one fire reported) and 3 minor burn injuries to consumers who sought medical attention.
**Description:** This voluntary recall involves certain Infiniti Pro by Conair™ Hair Dryers, 259 and 279 Series. Recalled units have the Model Numbers below, one (1) screw hole on the back of the hair dryer handle and Product Codes listed below. Hair dryers with 2 screw holes on back of the hair dryer handle are **not** subject to this recall.

Infiniti Pro by Conair™ Hair Dryer, 259 or 279 Series, **Subject to Recall**

| Model Numbers (on Back of Handle of Hair Dryer) | Number of Screw Holes (on Back of Handle of Hair Dryer) | Product Code starting with "V" (on Small White Tag on Power Cord) |
|---|---|---|
| 259BCAUT, 259BCR, 259BCRUL, 259GUTR, 259GUTT, 259N, 259NP, 259PR, 259UL, 259X, 259XD, 259XR and 279 | One (1) screw hole | V05692 or V10290 |

**Sold at:** Mass merchandisers, drug stores, department stores, beauty and specialty stores and on the Internet from approximately August 2010 to August 2013 for about $24.99 to $39.99
**Manufactured in:** China
**Remedy:** Consumers should immediately stop using a hair dryer that is subject to this voluntary recall and contact Conair to receive a free replacement hair dryer.
**Customer Contact:** For additional information, contact Conair at (877) 339-2534 between 7:00 a.m. and 11:00 p.m. ET Monday through Friday, and 9:00 a.m. and 5:30 p.m. ET Saturday or Sunday



(Color may vary)

CONAIR CORPORATION · ONE CUMMINGS POINT ROAD · STAMFORD CT 06902 · USA · 203.351.9000 · FAX 203.351.9180 · WWW.CONAIR.COM

28.     CONAIR is one of the world's largest privately held health and beauty companies and has been around for more than 50 years.   It develops, designs, manufactures and sells health and beauty products, including the CONAIR Hair Dryers, nationwide through direct website sales and through nationwide retailers such as Sam's Club, Wal-Mart, Target and CVS Pharmacies.   CONAIR holds the number one position in the industry with respect to hair dryers.[6]

29.     CONAIR's four-year limited warranty for the Hair Dryers provides CONAIR "will repair or replace (at our option) your unit free of charge for 48 months from the date of purchase if the appliance is defective in workmanship or materials":

**LIMITED FOUR YEAR WARRANTY**
Conair will repair or replace (at our option) your unit free of charge for 48 months from the date of purchase if the appliance is defective in workmanship or materials.

To obtain service under this warranty, return the defective product to the service center nearest you, together with your purchase receipt and $7.00 for postage and handling. California residents need only provide proof of purchase and should call 1-800-366-0937 for shipping instructions. In the absence of a purchase receipt, the warranty period shall be 48 months from the date of manufacture.

ANY IMPLIED WARRANTIES, OBLIGATIONS, OR LIABILITIES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, SHALL BE LIMITED IN DURATION TO THE 48 MONTH DURATION OF THIS WRITTEN, LIMITED WARRANTY. Some states do not allow limitations on how long an implied warranty lasts, so the above limitations may not apply to you.

IN NO EVENT SHALL CONAIR BE LIABLE FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES FOR BREACH OF THIS OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, WHATSOEVER. Some states do not allow the exclusion or limitation of special, incidental, or consequential damages, so the above limitation may not apply to you.

This warranty gives you specific legal rights, and you may also have other rights, which vary from state to state.

30.     CONAIR warrants the Hair Dryers against defects in material or workmanship for four years from the date of purchase.   In numerous cases as

---

[6]     CONAIR website, www.conair.com/corporate-cn-10.html.

established by Plaintiffs' experiences, the CONAIR Hair Dryers failed or had the potential to fail or short-out within one to two years of purchase; resulting in fire and/or flames or hot projectiles being shot out of the barrel of the Hair Dryers.

31.     Any limitations on remedies contained in Defendant's express warranties fails of their essential purpose and are unenforceable with respect to the manufacturing and design defects alleged herein.

32.     The defects manifests themselves in one of two ways: (1) the heater coils within the Hair Dryers can come in contact with each other creating an electrical short resulting in a handheld flamethrower and/or hot coils shooting from the barrel of the Hair Dryers; or (2) the line cord that connects the cord to the Hair Dryers would break down prematurely due to defective design/manufacturing causing the electricity flow to be disrupted to the device.  This creates arching and/or sparks which can lead to the device to catch fire.  Both of these defects put consumers at great risk of serious bodily injury or damage to their property.  As explained in more detail below, Defendant knew these defects pose a serious safety hazard, but concealed that information from Plaintiffs and consumers to make a profit, to maintain an edge over its competitors, and to place consumers under the false belief that its products were safe.

33.     Plaintiffs while using the CONAIR Hair Dryers for its intended purpose, to wit: to dry their hair, experienced substantially similar incidents/injuries (i.e., fire and projecting hot coils), resulting from the same manufacturing and/or design defects.  In each incident, the CONAIR Hair Dryers continued to run despite the fact it was plugged into a GFCI outlet.  The Hair Dryers are equipped with two different types of "safety plugs," one of which is the ALCI or Appliance Leakage Current Interrupter.  The ALCI is designed to recognize a change in the electrical current.  This "safety" feature did not prevent the Hair Dryers from bursting into flames or projecting hot coils.

34.     The defects identified above typically occur within the first year or so of use.  The defects' presence is material because the defects cause the CONAIR Hair Dryers to catch fire and/or project hot coils, thereby exposing consumers to potential serious injury.  The defects are also material because neither Plaintiffs nor any reasonable consumer would have purchased the CONAIR Hair Dryers had they been aware of its propensity to shoot flames or projectiles during normal use.  The retail cost of the CONAIR Hair Dryers range from $24.99 to $39.99.  Defendant's unfair and unlawful business practices have caused Plaintiffs and other consumers to spend millions of dollars on the purchase and/or pay a premium price for a defective and potentially dangerous hair dryer (avg. price is $32.49 [$24.99 + $39.99 ÷ 2] × approximately 570,000 units sold), which they would not otherwise have spent had they known that the CONAIR Hair Dryers were defective.  Defendant has made an illegal profit which should be disgorged and returned to the proposed Class.

## II.  PUBLISHED CONSUMER COMPLAINTS DEMONSTRATE THE DANGERS OF THE CONAIR HAIR DRYERS AND ITS FAILURE TO DISCLOSE OR WARN CONSUMERS OF THE DEFECTS

35.     Although numerous consumers reported the defects directly to Defendant, CONAIR failed to adequately notify consumers or retailers, which sell its products, of the potential dangers of the CONAIR Hair Dryers' defects.

36.     At all times relevant herein, CONAIR knew or should have known that the defects were not known or reasonably discoverable by Plaintiffs and consumers before they purchased the Hair Dryers.  CONAIR has exclusive knowledge of the dangerously defective nature of the Hair Dryer's propensity to short-out, catch fire, and/or shoot flames and hot projectiles.  As the manufacturer, marketer and seller of the Hair Dryers, CONAIR alone possessed specialized knowledge about the design and manufacturing process and is in a superior position to know and learn of potential defects.  As established by Plaintiffs' experience and the many consumers

of the defective Hair Dryers who have gone through the trouble to complaint not only directly to CONAIR, but to the United States Consumer Product Safety Commission ("CSPC") and by visiting online forums to complain about the dangerous defect, CONAIR has actual notice of these defects.

37.    Plaintiffs are informed and believe that Defendants knew about the defects as of 2009 or earlier through sources not available to consumers including, but not limited to, pre-release testing data, manufacturer inspection, oversight of the manufacturing process by CONAIR, early consumer complaints about the defects to Defendant and related retailers, testing or investigation conducted in response to those early complaints, return and exchange data, among other internal sources of aggregate information about the problem.  Thus Plaintiffs are informed and believe that when Defendant released the CONAIR Hair Dryers for sale to the consuming public, CONAIR was already aware and confirmed the defects.  However, this information was not available to Plaintiffs or to the public.

38.    CONAIR was under a duty to disclose to Plaintiffs and consumers these defects in the Hair Dryers because CONAIR had exclusive knowledge of these defects and was in a superior position to know the truth about the quality and nature of the Hair Dryers.  Through its exclusive manufacturing of the CONAIR Hair Dryers, its own internal investigation and compilation of testing and consumer complaint data, none of which was released to the public or otherwise available to the public, CONAIR had exclusive control of the information regarding the defects and actively concealed the existence of the defects from unwary consumers.  When a consumer would contact CONAIR directly to inform them about incidents and/or injuries relating to the defects, CONAIR would immediately send a postage-paid package to the consumer to return the defective device and replace it with another, equally defective device up to and including mid-to-late 2013.  CONAIR acknowledges it initiated an internal investigation based on these direct consumer

complaints.  Despite having knowledge of consumer complaints as far back as 2009, CONAIR failed to make any attempt to notify consumers or affect an immediate recall until October 2013, thereby actively concealing the defects from Plaintiffs and consumers for numerous years.  Even to this day CONAIR continues to actively conceal the serious nature of the defects and has failed to adequately notify consumers who are still in possession and using the CONAIR Hair Dryers, unaware of its potential dangers.

39.    CONAIR intentionally failed to disclose to consumers the existence of the defects or the potential dangers they could cause.  Only CONAIR had exclusive knowledge of the results of its own internal investigation/testing, design, manufacturing process, and consumer complaints directed to CONAIR.  CONAIR was in a superior position to know the CONAIR Hair Dryers could catch fire and project hot coils, yet none of this information was directly accessible to Plaintiffs or consumers. CONAIR actively concealed from Plaintiffs and consumers the fact that the Hair Dryers were defective and was a serious safety hazard to prevent an avalanche of consumers from not purchasing its products in the first place, or be placed in a position wherein it would have to replace hundred and thousands of Hair Dryers; thus placing profits over the safety of its consumers.

40.    From at least 2009 to as recent as May 2013, consumers nationwide have posted complaints of the same problem with the CONAIR Hair Dryers on consumer websites, including but not limited to, consumeraffairs.com.  Consumers consistently reported the Hair Dryers sparking and catching fire during normal use and sometimes even when the Hair Dryer was turned off.  The complaints also reflect early and continued manifestation of the defects and CONAIR's refusal to recall the product or even to publicly warn consumers of the danger, as some of these samples show:

| Date/Location | Comments/Source |
|---|---|
| Oct. 3, 2009 - Bowie, MD | I have a Conair 1875 model hair dryer and when I was cleaning out closets, the dryer started up and by the time I got to the dressing area there were flames shooting out of it. I quickly pulled out the plug and threw a wet towel over it. Horrible smell and smoke but nothing to speak of was damaged except some frayed nerves and a hair brush where the teeth had melted. I am just thankful I was home at the time. – www.consumeraffairs.com/homeowners/conair.html |
| Oct. 4, 2009 – Attleboro, MA | My 87 year old mother was drying her hair when the appliance burst into flames-She luckily was not injured and was only minor damage to her home, however this could have been disasterous [sp] and I feel someone should know about it. - www.consumeraffairs.com/homeowners/conair.html |
| Mar. 30, 2010 – Yelm, WA | I have a Conair 1875. After using it and turning it off about five minutes later, it turned itself on and caught fire. I think these should be recalled. – www.consumeraffairs.com/homeowners/conair.html |
| Apr. 22, 2012 – Chatsworth, CA | I've purchased several Conair hairdryers which usually start burning after several years of use, but the 1875 which I bought three months ago, January 30, 2012, started burning today, 4-22-2012. I could see orange flames on the coils in the dryer so I immediately switched to the cool heat, which I was able to use. Judging by the complaints on this board, I am not the only one experiencing this problem. This is too dangerous for Conair to ignore. Do not buy Conair 187[5] if you value your safety. - www.consumeraffairs.com/homeowners/conair.html |
| Oct. 13, 2012 | The product in question is the Conair Infinity 1875 series watt hair dryer with blue handle. The handle gets very hot just after a few minutes of use. It gets so hot that I have to turn it off or else I fell [sp] like it will burn my hand. - www.saferproducts.gov (U.S. Consumer Product Safety Commission) |
| Nov. 4, 2012 – New Paltz, NY | While drying my hair, my Conair 1875 suddenly made a loud pop and stopped working. It was 1-2 years old. It was pretty scary at the time but going by the other posts, I see it could have been worse. I am surprised there has not been a recall. - www.consumeraffairs.com/homeowners/conair.html |
| Dec. 12, 2012 | My wife was using a Conair 1875 dryer to dry her hair and it was working fine. She finished, turned it off and layed it down on the counter. It sat there for about 5 seconds and then turned on by itself and put out a bunch of nasty smoke. My wife immediately pulled the plug and it turned off. – www.saferproducts.gov (U.S. Consumer Product Safety Commission). |

- 18 -

41.     On information and belief, and based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, through testing, research, and complaints, among other things, Defendant knew or should have known that the CONAIR Hair Dryers were defective because of their propensity to spark, catch fire, and eject coils from the device during normal and intended use.   CONAIR concealed and omitted information regarding the defects in their advertising, marketing, warranty documents accompanying the Hair Dryers and other communications in a manner that has deceived and is likely to continue to deceive consumers and the public.   Defendant knew the defects posed a serious safety hazard, but concealed that information from Plaintiffs and the proposed Class.

42.     Over the past several years, consumers have also reported the problem directly to CONAIR's corporate offices that failed and refused to recall the product until October 2013.   Some of these complaints were filed with the CPSC.   The CPSC's records indicate Defendant was notified of the complaints providing further evidence Defendant is and has been aware of the dangerous defects in the product:

| Date/Location | Comments/Source |
|---|---|
| Mar. 19, 2012 | Complaint filed with the United States Consumer Product Safety Commission regarding Conair 1875 hair dryer purchased at Walmart in California – Defendant was notified via email by consumer: While my wife was blow drying her hair, the cord closest to the plug burst into flames and caused a significant power surge throughout my home.  My wife quickly dropped the hair dryer fearing from the fire and electrocution and ran out of the bathroom. As I approached the bathroom, the dryer was still smoldering, however no active fire... www.saferproducts.gov (U.S. Consumer Product Safety Commission) |
| Jun. 8, 2012 | Plaintiff is informed and believes this complaint filed with the United States Consumer Product Safety Commission regarding Conair 1875 hair dryer purchased at Walmart (state not specified). The complaint states the consumer returned products to Conair notifying them of the problem. |

| | | Turned on hair dryer made by Conair (name on side states it is a cord keeper). The dryer was on a medium setting and began throwing sparks out into my hair and onto the floor. The dryer has the name Infiniti by Conair on the upper part of the hair dryer. |
| --- | --- | --- |
| | | I have a second dryer by Conair and it also makes a buzzing sound when turned on. I want to get credit for these products and have them returned to the manufacturer as both are in my opinion unsafe to use. |
| | | www.saferproducts.gov (U.S. Consumer Product Safety Commission) |

43.    The above samples of consumer complaints mirror the class-wide manifestation of the defects and that CONAIR was and has been aware of the defects. CONAIR has never proactively informed or warned consumers about the defects' existence or the potential injury it can cause. Defendant never revealed the existence of the defects in its marketing materials, website or retailers where consumers can purchase the product.   Reasonable consumers, like Plaintiffs, reasonably expect that a hair dryer will be safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiffs and the proposed Class further reasonably expect that Defendant will not sell its Hair Dryers with known safety defects, such as a possibility of sparking, catching fire and ejecting hot coils, and will disclose such defects to its consumers in an adequate manner when it learns of them. Plaintiffs and Class members did not expect Defendant to fail to disclose the defects to them.

44.    CONAIR only sought to recall the Hair Dryers well after being notified pre-filing of this action. Plaintiffs on information and belief allege that CONAIR's post-lawsuit recall has not come close to adequately advising consumers of the potential dangerous nature of the CONAIR Hair Dryers. In fact, Plaintiff Carter was seriously injured by the Hair Dryer after the recall had been instituted. Despite CONAIR's awareness of the danger and injury this product can cause to consumers, CONAIR has refused to adequately take action to protect the proposed Class

members from the defects.  Despite CONAIR's exclusive knowledge of the defects at all times relevant herein, Defendant has concealed and suppressed these facts from the public and consumers who purchase and use the product.

### III.   CONAIR'S ADVERTISEMENTS, MARKETING AND PACKAGING FOR ITS CONAIR HAIR DRYERS ARE MATERIALLY DECEPTIVE, FALSE AND MISLEADING

45.   For years, CONAIR publically touted, in its marketing and packaging materials and on its website, about how its products provide "Great Hair … Salon Results at Home," despite its knowledge the Hair Dryers could and did expose its consumers to serious danger and personal injuries.  Further, CONAIR failed to even issue a warning to consumers of the known defect in its packaging, user's guide or advertising, despite its knowledge that lack of such warning caused consumers to use the product unaware of its dangerous propensity to cause injury to body and property.

46.   Defendant has carried out a consistent and widespread campaign of deceptively promoting its CONAIR Hair Dryers.  Its core marketing statement that its products provide ***"Great Hair … Salon Results at Home,"*** (emphasis added), or similar variations, is false and misleading given the complaints and studies discussed above that have found a manufacturing and/or design defects in the Hair Dryers, which cause coils inside the barrel of the Hair Dryers to interact with one another, resulting in fire or flames and hot projectiles being shot from the barrel.

47.   While Defendant has been fully aware of the CONAIR Hair Dryers' defects and the safety concern it poses to consumers, it actively concealed the existence and nature of the defects from Plaintiffs and the proposed Class at the time of purchase, and thereafter.  Specifically, Defendant failed to disclose or actively concealed at and after the time of purchase:

a.   Any and all known material defects or material nonconformity of the Hair Dryers, including the risk of the device to spark, catch fire and project hot coils;

b.   That the Hair Dryers were not in good working order, were defective, and were not fit for their intended purposes; and

c.   That the Hair Dryers were defective, despite the fact that Defendant learned of such defects through consumer complaints, internal investigation, testing, and related research data, as well as other internal sources.

48.   Plaintiffs and the proposed Class were, at all times relevant, ignorant of the existence of the defects and, knowing this, CONAIR continued to broadly market and sell this product online and through nationwide retailers.

49.   In October 2013, years after it discovered the defects, CONAIR did issue a voluntary recall of the Hair Dryers.  However, as is evident by Plaintiff Carter's experience and injuries which occurred after the recall was issued, CONAIR's recall efforts have been inadequate to reasonably and effectively inform consumers of the potential dangers of the product.  Plaintiffs are informed and believe and hereon allege that CONAIR's recall efforts are inadequate to mitigate damages and/or liability.

50.   Through such acts of fraudulent concealment, Conair has successfully concealed from the public facts necessary to support the claims alleged herein. Plaintiffs, the general public and others similarly situated, were and are prevented from knowing and having knowledge of such unlawful, unfair, and/or deceptive conduct or of facts that might have led to the discovery thereof.

51.   CONAIR's wrongful acts caused Plaintiffs and the proposed Class to purchase hair dryers they otherwise would not have purchased, paid more for those hair dryers than they would have paid, and will continue to be subjected to the

potential of serious bodily injury and injury to their property as a result of the defects.

52.    CONAIR's warnings are also false and misleading in that it omits any notice or warning of the potential dangers when the coils interact.  The small print on the Important Safety Information pamphlet included in the package with each Hair Dryer is significant not only because its font is so small as to be difficult for many person to read, but also for its failure to notify consumers of the defects:

**IF YOU MUST USE YOUR HAIR DRYER IN THE BATHROOM, INSTALL A GFCI* NOW!**
Your local electrician can help you decide which type is best for you—a portable unit that plugs into the electrical outlet or a permanent unit installed by your electrician. The National Electrical Code now requires GFCIs in the bathrooms, garages, and outdoor outlets of all new homes.

**WHY DO YOU NEED A GFCI?** Electricity and water don't mix. If your hair dryer falls in water while it's plugged in, the electric shock can kill you, even if the switch is "off." A regular fuse or circuit breaker won't protect you under these circumstances. A GFCI offers you far greater protection.



A GFCI can save your life! Compared to that, the price is small! Don't wait.. Install one now!

*GFCI is a sensitive device which reacts immediately to a small electric current leak by stopping the electricity flow.

## USER MAINTENANCE
Your dryer is virtually maintenance free. No lubrication is needed. For proper operating performance, the dryer must be kept clean. When cleaning is needed, unplug the cord, allow to cool and clean dust and lint from air intake openings with a small brush or the brush attachment of a vacuum cleaner. The outer surface of the dryer should be wiped clean with a cloth only.

Blocked or clogged air intake vents will cause the dryer to overheat. If overheating occurs, an automatic safety device will shut the dryer or the heat off to prevent damage or personal injury. If the unit or the heat turns off, unplug the cord and allow the dryer to cool for 10 to 15 minutes before restarting. Make sure the air vents are clean.

### CAUTION
NEVER allow the power supply cord to be pulled, twisted, or severely bent. Never wrap the cord tightly around the dryer. Damage will occur at the high flex point of entry into the dryer, causing it to rupture and short. Inspect the cord frequently for damage. Stop use immediately if damage is visible or unit stops or operates intermittently.

If the cord or dryer is damaged or does not operate properly, return it for repair to an authorized Conair service representative only. No repairs should be attempted by the consumer.

**STORAGE - Important**
When not in use, your dryer should be disconnected, allowed to cool and stored in a safe, dry location, out of reach of children. Do not wrap the cord around dryer. Allow the cord to hang at its lowest and straight at the point of entry into the dryer.

53.    While Defendant does describe what would happen if you place the CONAIR Hair Dryers in water of if the air intakes get blocked or clogged, the warnings mention nothing about the defects identified above and the potentially dangerous consequences.  By warning of risks relating to exposure to water or blocked air intakes, and the risks that may arise if those conditions occurred, the packaging implies that those are the only health-related risks that relate to CONAIR

Hair Dryers.  This is deceptive and misleading, as the package omits reference to the other risks as discussed above and in Section II.  By omitting these defects and resulting consequences from its advertising, marketing and labeling, Defendant denies consumers at the point of sale the opportunity to decide for themselves whether they are willing to engage in a potentially dangerous game of "Russian roulette" and risk being burned or being impaled with a hot projectile.  Defendant omitted and concealed these defects and dangers from consumers.  Thus consumers using the CONAIR Hair Dryers would have no reasonable expectation that the Hair Dryers would catch fire or expose them to serious injury while using the product for its intended use.

54.  Defendant, through years of consumer complaints and first-hand knowledge, was aware of the CONAIR Hair Dryers' defects.  Despite Defendant's knowledge of the Hair Dryer's propensity to spark, catch fire and/or project hot coils from the device, CONAIR has perpetrated a fraud-by-omission on Plaintiffs and consumers who purchased the Hair Dryers.  CONAIR at all times herein, had exclusive knowledge of the material facts (the defects) which were not known to Plaintiffs or other similarly situated consumers.  Defendant had a duty to disclose the defects to Plaintiff and consumers yet failed to do so.  At no time during or after the conclusion of Defendant's internal investigations did Defendant place warnings of the defects on its website, on the packaging of the product, and in the Important Safety Information pamphlet included in the package with each Hair Dryer.

55.  Plaintiffs are informed and believe Defendant has acknowledged internally that the cause of the electrical short-outs, fires, flames,  sparking, projecting hot coils and ceasing to operate originated from defects in the CONAIR Hair Dryers' design, materials, assembly and/or workmanship.

56.  Defendant continues to conceal the material information, even post-sale, from consumers, users, and the public, through such omission on its website

1  and its customer service representatives that the Hair Dryers: (a) are inherently

2  defective and potentially dangerous; and (b) are not of merchantable quality or fit for

3  their ordinary purpose.

4       57.    Defendant's statements and omissions have occurred in at least four

5  forms, all of which constitute "advertising." These include: its packaging; inserts to

6  its packaging and shipping materials; its print advertisements; and its website

7  through which it directly sells its CONAIR Hair Dryers and related products to the

8  public. Defendant's pervasive advertising message conveys the impression that

9  CONAIR Hair Dryers are safe and without extraordinary health risks.   As

10  demonstrated above in Section II, however, this is materially deceptive, false and

11  misleading given the information revealed by complaints and studies that CONAIR

12  Hair Dryers are potentially dangerous to your health and property, which is not

13  disclosed by Defendant.

14       58.    CONAIR's pattern of deceptive marketing continues today, including

15  through use of its "Great Hair … Salon Results at Home" slogan (or the like) in its

16  advertisements, and other false, misleading and deceptive statements.

17       59.    As   demonstrated   above,   Defendant's   pervasive   advertisements

18  representing that CONAIR Hair Dryers provide "Great Hair … Salon Results at

19  Home" are materially deceptive, false and misleading given the complaints and

20  studies discussed above in Section II and fail to disclose that such complaints,

21  research, and studies have raised significant concerns about the risks of CONAIR's

22  Hair Dryers.

23                    **CLASS DEFINITION AND ALLEGATIONS**

24       60.    Plaintiffs Czuchaj, Mundy, McConnell and Carter bring this action as a

25  class action pursuant to Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of

26  Civil Procedure ("Rule") for the purpose of asserting the claims alleged in this

27

28

1   Complaint on a common basis. Plaintiffs bring this action on behalf of themselves
2   and all members of the following Class comprised of:

3           A class consisting of all "consumers" as defined by Cal. Civ.
4           Code § 1761(d) and other states substantially similar consumer
5           protection statutes, residing in the United States who purchased,
6           not for resale, CONAIR Hair Dryers at any time in the four, six
7           and ten years preceding the filing of this action (the
8           "Nationwide Class"). The Nationwide Class seeks certification
9           of claims based on the UCL, Cal. Bus. & Prof. Code §17500 *et*
10          *seq.* ("FAL"), the CLRA, Strict Products Liability—Product
11          Defect, and/or Strict Products Liability—Failure to Warn,
12          Breach of Implied Warranty, and Magnuson-Moss Warranty
13          Act, 15 U.S.C. §§ 2301, *et seq.*

14          a.   **California Class:**  In addition to, and in the alternative to the
15               claims asserted on behalf of the Nationwide Class, Plaintiff
16               Czuchaj also brings this action on behalf of a subclass consisting
17               of all consumers who purchased, not for resale, CONAIR Hair
18               Dryers in the State of California and/or who was a resident of the
19               State of California at the time of purchase, at any time in the four
20               years preceding the filing of this action (the "California Class").
21               The California Class seeks certification of claims based on the
22               UCL, the FAL, CLRA, Strict Products Liability—Product
23               Defect, and/or Strict Products Liability—Failure to Warn.

24          b.   **Michigan Class:**  In addition to, and in the alternative to the
25               claims asserted on behalf of the Nationwide Class, Plaintiff
26               McConnell also brings this action on behalf of a subclass
27               consisting of all consumers who purchased, not for resale, and/or

28

suffered injury as a result of use for its intended purpose, CONAIR Hair Dryers in the State of Michigan (the "Michigan Class").

c.   **Ohio Class:**  In addition to, and in the alternative to the claims asserted on behalf of the Nationwide Class, Plaintiff McConnell also brings this action on behalf of a subclass consisting of all consumers who purchased, not for resale, CONAIR Hair Dryers in the State of Ohio (the "Ohio Class").

d.   **Pennsylvania Class:**  In addition to, and in the alternative to the claims asserted on behalf of the Nationwide Class, Plaintiff Mundy also brings this action on behalf of a subclass consisting of all consumers who purchased, not for resale, and/or suffered injury as a result of use for its intended purpose, CONAIR Hair Dryers in the State of Pennsylvania (the "Pennsylvania Class").

e.   **New York Class:**  In addition to, and in the alternative to the claims asserted on behalf of the Nationwide Class, Plaintiff Carter also brings this action on behalf of a subclass consisting of all consumers who purchased, not for resale, and/or suffered injury as a result of the use for its intended purpose, CONAIR Hair Dryers in the State of New York (the "New York Class").

61.   The above subclasses are collectively referred to herein as the "Subclasses."  Plaintiffs reserve the right to modify or amend the definitions of the Class and/or Subclasses after they have had an opportunity to conduct discovery.

62.   ***Numerosity.   Rule 23(a)(1).***   The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that the proposed Class contains at least thousands of purchasers of the CONAIR Hair Dryers who have been damaged by Defendant's conduct as alleged

herein.   The number of Class members is unknown to Plaintiffs but could be
discerned from the records maintained by Defendant.

63.   ***Existence of Common Questions of Law and Fact.   Rule 23(a)(2).***
This action involves common questions of law and fact, which include, but are not
limited to, the following:

        a.    Whether the statements made by Defendant as part of its
advertising for CONAIR Hair Dryers discussed herein are true, or
are reasonably likely to deceive, given the omissions of material
fact described above;

        b.    Whether Defendant's conduct described herein constitutes a
deceptive act or practice in violation of the CLRA;

        c.    Whether Defendant's conduct described herein constitutes an
unlawful, unfair, and/or fraudulent business practice in violation
of the UCL;

        d.    Whether Defendant's conduct described herein constitutes unfair,
deceptive, untrue or misleading advertising in violation of the
UCL;

        e.    Whether Defendant's conduct described herein constitutes an
unconscionable, deceptive, or unfair act or practice in violation of
the PUTPCPL;

        f.    Whether Defendant's conduct described herein constitutes an
unconscionable, deceptive, or unfair act or practice in violation of
the MCPA;

        g.    Whether Defendant's conduct described herein constitutes a
deceptive act or practice in violation of the GBL;

        h.    Whether Defendant's conduct constitutes a breach of express
warranty;

i.   Whether Defendant's conduct constitutes a breach of the implied warranty of merchantability;

j.   Whether the CONAIR Hair Dryers are defective in manufacturing and/or design;

k.   Whether CONAIR failed to warn consumers of the defects in the CONAIR Hair Dryers;

l.   Whether Plaintiffs and the other members of Class are entitled to damages; and

m.   Whether Plaintiffs and the Class are entitled to injunctive relief, restitution or other equitable relief and/or other relief as may be proper.

64.   ***Typicality. Rule 23(a)(3).***   All members of the Class have been subject to and affected by the same conduct and omissions by Defendant.   The claims alleged herein are based on the same violations by Defendant that harmed Plaintiffs and members of the Class.   By purchasing CONAIR Hair Dryers during the relevant time period, all members of the Class were subject to the same wrongful conduct. Plaintiffs' claims are typical of the Class' claims and do not conflict with the interests of any other members of the Class.   Defendant's unlawful, unfair, deceptive, and/or fraudulent actions and breaches of warranty concern the same business practices described herein irrespective of where they occurred or were experienced.

65.   ***Adequacy. Rule 23(a)(4).***   Plaintiffs will fairly and adequately protect the interests of the members of the Class.   Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.   Plaintiffs have no adverse or antagonistic interests to those of the Class.

66.   ***Injunctive and Declaratory Relief.  Rule 23(b)(2).***  Defendant's actions regarding the deceptions and omissions regarding CONAIR Hair Dryers are uniform as to members of the Class.  Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief as requested herein is appropriate respecting the Class as a whole.

67.   ***Predominance and Superiority of Class Action.   Rule 23(b)(3).*** Questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons:

   a.   Absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendant's violations of their legal obligations will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

   b.   It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

   c.   When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

   d.   A class action will permit an orderly and expeditious administration of each Class member's claims and foster economies of time, effort, and expense;

   e.   A class action regarding the issues in this case does not create any problems of manageability; and

   f.   Defendant has acted on grounds generally applicable to the members of the Class, making class-wide monetary relief appropriate.

- 30 -

68.    Plaintiffs do not contemplate complications with class notice if the Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may be accomplished through publication, signs or placards at the point-of-sale, or other forms of distribution, if necessary, if the Class is certified under Rule 23(b)(3) or if the Court otherwise determines class notice is required. Plaintiffs will, if notice is so required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

## FIRST CAUSE OF ACTION

**Injunctive Relief and Damages for Violations of the Consumers Legal Remedies Act**

**(Cal. Civil Code §§ 1750, *et seq.*)**

**(By Plaintiff Czuchaj Asserted on Behalf of the Nationwide Class, and Alternatively, on Behalf of the California Class Against Defendant)**

69.    California Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

70.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA" or the "Act"), which provides that enumerated listed "unfair methods of competition and unfair or deceptive acts or practices [including those listed below in ¶ 78] undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful," CLRA § 1770, and that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person to recover or obtain," various forms of relief, including injunction and damages. Cal. Civ. Code § 1780. This cause of action is seeks both injunctive relief and damages on behalf of the Class.

71.    On April 15, 2013, prior to the filing of this Complaint, Plaintiff

Czuchaj sent Defendant a CLRA notice letter providing the notice required by California Civil Code § 1782(a). Plaintiff Czuchaj sent the letter via certified mail, return receipt requested, to Defendant's agent for service of process in Los Angeles, advising Defendant that it is in violation of the CLRA and must correct, replace or otherwise rectify the goods and/or services alleged to be in violation of § 1770. Defendant was further advised that in the event the relief requested has not been provided within thirty (30) days, Plaintiff Czuchaj will amend his Complaint to include a request for monetary damages pursuant to the CLRA. A true and correct copy of Plaintiff Czuchaj's letter is attached hereto as Exhibit A.

72. Defendant did not correct, replace, or otherwise rectify the goods and/or services alleged in Plaintiff Czuchaj's letter. Therefore, California Plaintiff seeks monetary damages pursuant to the CLRA.

73. California Plaintiff was deceived by Defendant's unlawful practices as described more fully above, which included carrying out an advertising campaign, directed at California Plaintiff and the Class, conveying the message that CONAIR Hair Dryers provide "Great Hair … Salon Results at Home", and variations of that statement, which were deceptive, false and misleading given the complaints, studies and the defects identified above which are known or should be known to Defendant. Also undisclosed was the potential danger and harm the defects could and did cause.

74. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

75. Defendant marketed, sold and distributed CONAIR Hair Dryers in California and throughout the United States during the relevant period.

76. California Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

77. Defendant's CONAIR Hair Dryers were and are "good[s]" within the

meaning of Cal. Civ. Code §§ 1761(a) & (b).

78.   Defendant violated the CLRA by engaging in the at least following practices proscribed by California Civil Code § 1770(a) in transactions with California Plaintiff and the Class which were intended to result in, and did result in, the sale of CONAIR Hair Dryers:

> (5) Representing that [CONAIR Hair Dryers have] . . . approval, characteristics . . . uses [or] benefits . . . which [they do] not have . . . .
>
> ***
>
> (7) Representing that [CONAIR Hair Dryers are] of a particular standard, quality or grade . . . if [they are] of another.
>
> ***
>
> (9) Advertising goods . . . with intent not to sell them as advertised.

79.   As such, Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it does not sell, and because it intends not to sell, the CONAIR Hair Dryers as advertised and instead misrepresents the particulars by, in its marketing, representing CONAIR Hair Dryers as described above when it knew, or should have known, that the representations and advertisements were deceptive, false and misleading in light of the omissions of material facts as described above.

80.   The omitted information would have been material to a reasonable customer in his or her decision as to whether to purchase the CONAIR Hair Dryers and/or purchase the CONAIR Hair Dryers at the price at which they were offered.

81.   Defendant had a duty to disclose this information to California Plaintiff and the members of the Class for several reasons. First, Defendant repeatedly made the representation that its products offer "Great Hair ... Salon Results at Home," or closely analogous representations, as detailed above. Disclosure of the omitted information, including information in the complaints and studies referred to *supra* in

Section II, was necessary to avoid the false impression of safety provided by that tagline.  Second, Defendant was in a position to know, both from its own product knowledge, creation decisions and studies of the defects in its CONAIR Hair Dryers, while consumers were not reasonably in a position to be aware of Defendant's internal product information or such studies.  Third, Defendant actively omitted to disclose, or actively concealed, these material facts as to California Plaintiff and the Class.  Finally, while Defendant made representations about the risks associated with its products exposure to water or clogged intake vents, those representations were misleading half-truths because they implied that those are all of the risks relating to the product, when, in fact, they are not.

82.   Defendant provided California Plaintiff and the other Class members with CONAIR Hair Dryers that did not match the quality portrayed by its marketing.

83.   As a result, California Plaintiff and members of the Class have suffered irreparable harm.  California Plaintiff's and the other Class members' injuries were proximately caused by Defendant's conduct as alleged herein.  Plaintiff Czuchaj, individually and on behalf of all other Class members, seek entry of an order enjoining Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code section 1780(a)(2), awarding exemplary and punitive damages against Defendant pursuant to California Civil Code sections 1780(a)(1) and (a)(4), and ordering the payment of costs and attorneys' fees, and such other relief as deemed appropriate and proper by the Court under California Civil Code section 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm.

84.   Pursuant to section 1780(d) of the CLRA, attached hereto as Exhibit B is an affidavit showing that this action has been commenced in the proper forum.

## SECOND CAUSE OF ACTION

**Injunctive and Equitable Relief for Violations of California's Unfair Competition Law**

**(Cal. Business & Professions Code §§ 17200, *et seq.*)**

**(By Plaintiff Czuchaj Asserted on Behalf of the Nationwide Class, and Alternatively, on Behalf of the California Class Against Defendant)**

85.     California Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

86.     The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or fraudulent, business act or practice and any false or misleading advertising.

87.     In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Cal. Civil Code §§ 1750, *et seq.*, and the common law.

88.     Plaintiff Czuchaj, individually and on behalf of other Class members, reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

89.     Defendant's actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engages in deceptive and false advertising, and misrepresents and omits material facts regarding its Hair Dryers, and thereby offends an established public policy, and engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq.*

90.     Business & Professions Code §§ 17200, *et seq.*, also prohibits any

1  "fraudulent business act or practice."

2      91.   Defendant's actions, claims, nondisclosures, and misleading statements,

3  as alleged in this Complaint, also constitute "fraudulent" business practices in

4  violation of the UCL because, among other things, they are false, misleading, and/or

5  likely to deceive reasonable consumers within the meaning of Business &

6  Professions Code §§ 17200, *et seq.*

7      92.   There were reasonably available alternatives to further Defendant's

8  legitimate business interests, other than the conduct described herein.

9      93.   As a result of Defendants' pervasive false marketing, including

10  deceptive and misleading acts and omissions as detailed in this Complaint,

11  California Plaintiff and other members of the Class have in fact been harmed as

12  described above. If Defendant had disclosed the information discussed above about

13  the CONAIR Hair Dryers and otherwise been truthful about their safety, Plaintiff

14  Czuchaj would not have purchased Defendant's products. Defendant was also able

15  to charge more than what its CONAIR Hair Dryers would have been worth had it

16  disclosed the truth about them.

17      94.   As a result of Defendant's unlawful, unfair, and fraudulent practices,

18  California Plaintiff and the other Class members have suffered injury in fact and lost

19  money.

20      95.   As a result of its deception, Defendant has been able to reap unjust

21  revenue and profit in violation of the UCL.

22      96.   Unless restrained and enjoined, Defendant will continue to engage in

23  the above-described conduct. Accordingly, injunctive relief is appropriate for

24  California Plaintiff and the Class.

25      97.   As a result of Defendant's conduct in violation of the UCL, California

26  Plaintiff and members of the Class have been injured as alleged herein in amounts to

27  be proven at trial because they purchased CONAIR Hair Dryers without full

28

1    disclosure of the material facts discussed above.

2         98.   As a result, Plaintiff Czuchaj, individually and on behalf of the Class,

3    and the general public, seek restitution and disgorgement of all money obtained from

4    California Plaintiff and the members of the Class collected by Defendant as a result

5    of unlawful, unfair, and/or fraudulent conduct, and seek injunctive relief, and all

6    other relief this Court deems appropriate, consistent with Business & Professions

7    Code § 17203.

8    **THIRD CAUSE OF ACTION**

9    **Damages for Violations of Song—Beverly Warranty Act**

10   **(Cal. Civil Code §§ 1792, *et seq.*)**

11   **(By Plaintiff Czuchaj Asserted on Behalf of the Nationwide Class, and**

12   **Alternatively, on Behalf of the California Class Against Defendant)**

13        99.   California Plaintiff repeats and realleges the allegations contained in the

14   paragraphs above, as if fully set forth herein.

15        100.  Under the Song-Beverly Warranty Act, California Civil Code §§ 1792,

16   *et. seq.,* every sale of consumer goods in California is accompanied by both a

17   manufacturer's and retail seller's implied warranty that the goods are merchantable.

18        101.  Plaintiff Czuchaj and members of the Class each purchased one or more

19   of the Hair Dryers from retailers located in California and/or through CONAIR

20   directly via their website.  The Hair Dryers are "consumer goods" within the

21   meaning of California Civil Code §1791(a).

22        102.  Defendant is in the business of manufacturing and selling the Hair

23   Dryers to retail buyers, and is therefore a "manufacturer" and "seller" within the

24   meaning of California Civil Code § 1791.

25        103.  Defendant impliedly warranted to Plaintiff Czuchaj and members of the

26   Class that the Hair Dryers were of merchantable quality, would pass without

27   objection in the trade or industry, and were fit for the ordinary purposes for which

28

1   the hair dryers are used.

2        104.  Plaintiff Czuchaj and members of the Class discovered the defect in the

3   Hair Dryers within one year of the purchase of the Hair Dryers and/or the defects

4   were present during the implied warranty period.

5        105.  As described in detail above and below, Defendant has breached the

6   implied warranties because the Hair Dryers sold to Plaintiff Czuchaj and members of

7   the Class were not of the same quality as those generally acceptable in the trade and

8   were not fit for the ordinary purposes for which such goods are used in that the Hair

9   Dryers have a propensity to spark, catch fire, and shoot flames and/or hot projectiles,

10  exposing Plaintiff Czuchaj and members of the Class Members to serious injury and

11  dangerous conditions.

12      106.  As a direct and proximate result of CONAIR's breach of the Song-

13  Beverly Act, Plaintiff Czuchaj and members of the Class sustained damages and

14  other losses in an amount to be determined at trial.  CONAIR's conduct has caused

15  Plaintiff Czuchaj and members of the Class as described above to incur

16  compensatory damages, consequential damages, statutory damages, costs, attorneys'

17  fees and interest.

### FOURTH CAUSE OF ACTION

**Damages for Breach of the Pennsylvania Unfair Trade Practices and Consumer**

**Protection**

**(73 P.S. §§ 201-1, *et seq.*)**

**(By Plaintiff Mundy Asserted On Behalf of the Pennsylvania Class**

**Against Defendant)**

24      107.  Plaintiff Mundy incorporates the above allegations by reference as if set

25  forth herein in full.

26      108.  This action is brought to secure redress for the unlawful, deceptive and

27  unfair trade practices perpetrated by CONAIR on Plaintiff Mundy and the Class

1    Members.

2       109.   Plaintiff Mundy and Class members are consumers and are the users of

3    the CONAIR Hair Dryers at issue in this action.

4       110.   As a seller of hair dryers to the consuming public and whose conduct

5    affects similarly situated consumers and has a broad impact on consumers at large,

6    CONAIR is engaged in consumer-oriented conduct within the intended ambit of 73

7    P.S. § 201-1, *et seq.*

8       111.   CONAIR violated the UTPCPL by engaging in the following unfair and

9    deceptive practices:

10          a.   in violation of § 202.2(4)(v), CONAIR represented the Hair

11               Dryers have characteristics, uses and benefits that they do not

12               have;

13          b.   in violation of §202-2(4)(vi), CONAIR represented the Hair

14               Dryers are original even though they may have been altered by

15               the manufacturer; and

16          c.   in violation of § 202.2(4)(vii), CONAIR represented the Hair

17               Dryers are of a particular standard, quality or grade when they are

18               not.

19

20       112.   Defendant's Hair Dryers failed to perform in accordance with their

21    expected characteristics, uses and benefits.

22       113.   Defendant intentionally conceals and/or fails to disclose the material

23    fact that the Hair Dryers have defects and those defects cause the Hair Dryer to fail,

24    typically within the first few years of use and Hair Dryers' propensity to catch fire or

25    shoot hot projectiles.  This concealment is done for the purpose of inducing Plaintiff

26    Mundy and consumers to purchase Defendant's hair dryers.  If Plaintiffs and the

27    Class members had known of the Hair Dryer's defects, they would not have

28

purchased the Hair Dryers, let alone at the prices they did.

114.  Defendant had a duty to disclose the defects in the Hair Dryers for various reasons, including but not limited to:

        a.    CONAIR had exclusive knowledge of material facts not known to Plaintiff Mundy or Class members; and

        b.    CONAIR actively concealed and failed to disclose material facts from Plaintiff Mundy and Class members prior to the time they purchased the Hair Dryers.

115.  Defendant engaged in unfair and deceptive practices by withholding the above material facts from Plaintiff Mundy and the Class Members.

116.  As a direct and proximate result of Defendant's conduct, Plaintiff Mundy and Class members suffered injury and damage in an amount to be determined at trial, but in no case less than $100.  Plaintiff Mundy and the Class members are entitled to injunctive relief, restitution, costs of litigation, attorneys' fees pursuant to § 201-9.2(a) and (b) and/or other applicable statutes, and other relief the Court deems proper.

## FIFTH CAUSE OF ACTION

**Injunctive Relief and Damages for Violation of the Michigan Consumer Protection Act**

**(MCL 445.902, *et seq.*)**

**(By Plaintiff McConnell Asserted On Behalf of the Michigan Class Against Defendant)**

117.  Plaintiff McConnell incorporates the above allegations by reference as if set forth herein in full.

118.  At all times relevant to this case, CONAIR was conducting trade or commerce, as defined under MCL 445.902(1)(g), which is also known as the

- 40 -

1  Michigan Consumer Protection Act ("MCPA").

2  119.  Plaintiff McConnell and Class members are "persons" as defined by

3  MCL 445.902(1)(d).

4  120.  CONAIR's acts as alleged herein were committed in trade or commerce

5  as defined by MCL 445.902(c).

6  121.  CONAIR violated the MCPA by engaging in the following unfair and

7  deceptive practices:

8            a.    in violation of MCL 445.903(1)( c), CONAIR represented the

9                  Hair Dryers have characteristics, uses and benefits that they do

10                  not have;

11            b.    in violation of MCL 445.903(1)( e), CONAIR represented the

12                  Hair Dryers are of a particular standard, quality or grade when

13                  they are not; and

14            c.    in violation of MCL 445.903(1)(s), CONAIR failed to reveal a

15                  material fact, the omission of which tends to mislead or deceive

16                  the consumer, and which fact could not reasonably be known by

17                  the consumer.

18  122.  The allegations made by Plaintiff McConnell and Class Members meet

19  the requirements of MCL 445.911(11)(3) because the acts and/or practices of

20  CONAIR violate MCL 445.903, and have been declared unlawful.

21  123.  The unfair, unconscionable and deceptive acts committed by Defendant

22  caused damages to Plaintiff McConnell and the Class members.

23  124.  Defendant is liable to Plaintiff McConnell and Class members under the

24  MCPA for damages for breaching its implied warranties and for the unfair,

25  unconscionable and deceptive acts described herein.

26  125.  Plaintiff McConnell and Class members are entitled to injunctive relief,

27  declaratory relief, recovery of damages, class-wide relief pursuant to MCL

28

445.911(3), attorneys' fees and costs pursuant to 445.911(2) and other applicable statutes, and any other relief the Court deems proper.

## SIXTH CAUSE OF ACTION

### Strict Product Liability

### (MCL 600.2945, *et seq.*)

### (By Plaintiff McConnell Asserted On Behalf of the Michigan Class Against Defendant)

126.   Plaintiff McConnell repeats and realleges all prior paragraphs and incorporate them as if fully set forth herein.

127.   Michigan law recognizes an action for product defects that complements Michigan's Product Liability statute, MCL 600.2945, *et seq.*

128.   A breach occurs if a defect in a product, attributable to the product's manufacturer, causes damage.

129.   A product is defective if it is not reasonably fit for its intended or foreseeable use or creates an unreasonably dangerous condition.

130.   Conair marketed, sold, designed and/or manufactured the Hair Dryers owned by Plaintiff McConnell and other Michigan Class Members.

131.   The Conair Hair Dryers were defectively designed and/or manufactured in a manner that caused the Hair Dryers to spark and/or catch fire during normal and intended use.

132.   Based upon the propensity of the Hair Dryers to spark and/or catch fire, the CONAIR Hair Dryers were not reasonably fit and/or safe at the time the Hair Dryers left control of the manufacturer.

133.   A practically and technically feasible alternative means of design/production was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm.

134.   Alternative production was technically feasible because the technical and scientific knowledge, at the time the Hair Dryers of Plaintiff McConnell and the other Michigan Class Members left Conair's control, was developed, available and capable of use by the manufacturer.

135.   Conair possessed actual knowledge that its product was defective and had a substantial likelihood of causing damages and injury, and it actively concealed these defects from consumers.

136.   Plaintiff McConnell and other Michigan Class Members used the Hair Dryers for their intended purpose and did nothing to alter or misuse their Hair Dryers in any way.

137.   Plaintiff McConnell and other Michigan Class Members suffered damages proximately caused by the defects and/or unreasonably dangerous condition of the Hair Dryers.

As a result of the product defects in the Hair Dryers, Conair breached its duties to Plaintiff McConnell and the prospective Michigan Class Members and is responsible for all of Plaintiff McConnell's and Michigan Class Members' damages.

## SEVENTH CAUSE OF ACTION

**Injunctive Relief and Damages for Violation of New York General Business Law**

**(N.Y. GBS Law § 349)**

**(By Plaintiff Carter Asserted On Behalf of the New York Class Against Defendant)**

138.   Plaintiff Carter incorporates the above allegations by reference as if set forth herein in full.

139.   This cause of action is brought pursuant to New York General Business Law §349 ("GBL § 349" or the "Act"), which prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in

1    New York State.

2        140.   The conduct of Defendant alleged herein violates GBL § 349 in that

3    Defendant engaged in the unfair and deceptive practices as described herein, which

4    included carrying out an advertising campaign, directed at Plaintiff Carter and the

5    Class, conveying the message that CONAIR Hair Dryers provide "Great

6    Hair…Salon Results at Home," and variations of that statement, which were

7    deceptive, false and misleading given the complaints and studies that have found

8    CONAIR Hair Dryers are defective that could and did result in: (1) fire with normal

9    use and/or created a substantial risk of spark and/or fire; and/or (2) flames and hot

10   projectiles shooting from the barrel of the Hair Dryers.   Also undisclosed were

11   warnings relating to the results of these defects in advertising, marketing and

12   packaging, which offend public policies and are immoral, unethical, unscrupulous

13   and substantially injurious to consumers.   Such conduct is inherently and materially

14   deceptive and misleading in a material respect which was known, or by the exercise

15   of reasonable care, should have been known, to be untrue, deceptive or misleading

16   by Defendant.

17       141.   The materially misleading conduct of Defendant alleged herein was

18   directed at the public at large.

19       142.   Defendant's acts and practices described above are likely to mislead a

20   reasonable consumer acting reasonably under the circumstances.

21       143.   Defendant has willfully and knowingly violated GBL § 349 because, in

22   order to increase its own profits, Defendant intentionally engaged in deceptive and

23   false advertising, and misrepresentations and the omission of material facts

24   regarding its CONAIR Hair Dryers as discussed above.

25       144.   As a result of Defendant's deceptive and misleading acts, Plaintiff

26   Carter and other New York State consumers have been injured because they

27   purchased CONAIR Hair Dryers without full disclosure of the material facts

28

discussed above.

145.  As a result of Defendant's conduct in violation of GBL § 349, Plaintiff Carter and members of the Class have been injured as alleged herein in amounts to be proven at trial because if Defendant had disclosed the information discussed above about the CONAIR Hair Dryers and otherwise been truthful about their safety, Plaintiff Carter would not have purchased Defendant's products.  Defendant was also able to charge more than what its CONAIR Hair Dryers would have been worth had it disclosed the truth about them.

146.  As a result, pursuant to GBL § 349, Plaintiff Carter and the Class are entitled to make claims against Defendant for actual or statutory damages to be determined at trial, but not less than fifty (50) dollars per Class member, such damages to be trebled.

147.  Additionally, pursuant to GBL § 349, Plaintiff Carter and the Class make claims for  attorneys' fees, costs, and injunctive relief requiring Defendant to adequately disclose the omitted information described above.

### EIGHTH CAUSE OF ACTION

**Breach of Implied Warranty in Tort**

**(By Plaintiff McConnell Asserted On Behalf of Ohio Class Against Defendant)**

**Breach of Implied Warranty in Tort**

148.  Plaintiff McConnell repeats and realleges all prior paragraphs and incorporate them as if fully set forth herein.

149.  CONAIR impliedly warranted that its Hair Dryers were of good and merchantable quality – fit and safe for their ordinary intended use.

150.  There were design and/or manufacturing defects in the Hair Dryers manufactured, distributed and/or sold by Conair to retailers in Ohio and throughout the United States who then sold the Hair Dryers to Plaintiff McConnell and other members of the Ohio Class; and those defects were the direct and proximate cause

of injury to Plaintiff McConnell and the Ohio Class.

151.  As a direct and proximate result of Conair's breach of warranty, Plaintiff McConnell and other members of the Ohio Class were caused to suffer loss and damages.

### NINTH CAUSE OF ACTION

**Violations of Ohio Product Liability Act**

**(R.C. §§ 2307.71–2307.80, *et seq.*)**

**(By Plaintiff McConnell Asserted On Behalf of Ohio Class Against Defendant)**

152.  Plaintiff McConnell repeats and realleges all prior paragraphs and incorporate them as if fully set forth herein.

153.  Defendant designed, created, manufactured and distributed the CONAIR Hair Dryers at issue in this matter.  Defendant is a "manufacturer" as defined by O.R.C. § 2307.71(A)(9).

154.  Plaintiff McConnell and members of the Ohio Class are "Claimants" as defined by O.R.C. §2307.71(A)(1).

155.  At the time they left the Defendant's control the Hair Dryers were defective as set forth herein as defined by O.R.C. 2307.74.

156.  The negligible additional costs incurred to eliminate these defects is far outweighed by the harm in the form subjecting Plaintiffs and Class Members to serious bodily harm and the defective product does not conform to the representations about it or perform its intended functions.

157.  As a result of the failure of the Hair Dryers to conform to the Defendant's representations, Plaintiff McConnell and Ohio Class Members have suffered physical damage to property and person.  Such damage constitutes "economic loss" and "harm" as defined by O.R.C. 2307.71(A)(2) and (7), respectively.

///

158.   Defendant is strictly liable for the harm caused by the defect pursuant to O.R.C. §2307.77.   The Defendant is also strictly liable for additional compensatory and economic loss pursuant to O.R.C. §2307.79.

### TENTH CAUSE OF ACTION

**Violation of Statutory Inadequate Warning**

**(O.R.C. §§ 2307.76, *et seq.*)**

**(By Plaintiff McConnell Asserted On Behalf of Ohio Class Against Defendant)**

159.   Plaintiff McConnell repeats and re-alleges all prior paragraphs and incorporate them as if fully set forth herein.

160.   The Defendant knew, or in the exercise of reasonable care should have known, that the Hair Dryers were likely to spark and/or catch fire as stated herein, subjecting consumers to risk of serious harm to their person and/or property.

161.   At the time Conair manufactured, distributed and/or sold the Hair Dryers, it owed a non-delegable duty to persons like Plaintiff McConnell and the Ohio Class to exercise ordinary and reasonable care to properly design and/or manufacture the Hair Dryers, and it owes a continuing duty to warn about the problem and to correct the defect and/or recall its defective Hair Dryers.

162.   Conair had a pre-sale duty to warn potential purchasers that the Hair Dryers carried with them the risk of sparking and/or catching fire that could occur when an ordinary consumer was using the Hair Dryers in an intended or reasonably-foreseeable manner.

163.   The Defendant nonetheless failed to provide a warning regarding the potential dangers of the Hair Dryers.   The manufacturer would, in the exercise of reasonable care, have provided such a warning.   The defect(s) in the Hair Dryers are serious in light of the fact that it manifest during its normal use and essential purpose.   A hair dryer that catches fire falls well below a reasonable consumer's expectations.

164. As a result of Defendant's failure to warn consumers, Plaintiff McConnell and the Ohio Class have suffered damage to property and/or physical injuries. Such damage constitutes "economic loss" and "harm" as defined by O.R.C. §§2307.71(A)(2) and (7).

165. Plaintiff McConnell and Members of the Ohio Class are entitled to recover damages pursuant to O.R.C. §2307.71(A)(13), attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION

### Damages for Breach of Implied Warranty

**(By Plaintiffs Asserted on Behalf of the Nationwide Class, or Alternatively, on Behalf of the California, Michigan, Ohio, Pennsylvania and New York Classes Against Defendant)**

166. Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

167. Plaintiffs bring this claim individually and on behalf of the Class.

168. Plaintiffs purchased the Hair Dryers from CONAIR's authorized retailers in the United States, including retailers in Ohio.

169. Pursuant to agreements for resale of the Hair Dryers between CONAIR and nationwide retailers including, but not limited to, Sam's Club, Target, CVS Pharmacies, Ulta, Amazon and Wal-Mart Stores, Plaintiffs and the Class are third-party beneficiaries of such contracts.

170. At the time of sale, and currently, Defendant is in the business of manufacturing, distributing and selling hair dryers.

171. CONAIR impliedly warranted that its Hair Dryers were of good and merchantable quality—fit and safe for their ordinary intended use.

172. Defendant knowingly and/or recklessly sold a defective product without conspicuously informing consumers about the design and/or manufacturing defects in the Hair Dryers manufactured, distributed and/or sold by CONAIR to retailers

throughout the United States.  Defendant possessed actual, superior knowledge of the Hair Dryer's propensity to spark, catch fire and/or shoot flames or hot projectiles based on consumer complaints filed through the Consumer Product Safety Commission, CONAIR's customer service representatives and internal investigations.

173.  Defendant's waiver and/or limits on implied warranties are unconscionable and unenforceable since Plaintiffs and the Class had no meaningful choice in determining those time limitations, the warranties are written by Defendant without input from consumers, a gross disparity in bargaining power exists as between Defendant and members of the Class, and Plaintiffs and Class members had no way of knowing the unilateral limitations placed on the implied warranty by Defendant until they had already purchased and opened the product, Defendant knew or should have known that the Hair Dryers were defective at the time of sale and have a propensity to fail before the four year warranty period lapses, and Plaintiffs and Class members were unfairly surprised by the concealment of the material facts of the defects causing their Hair Dryers to spark, catch fire, and/or shoot flames and hot projectiles.

174.  Plaintiffs and Class members' Hair Dryers became unfit for their ordinary purpose of safely drying hair within the implied warranty period and posed a safety concern to consumers.

175.  The inherent design/manufacturing defects in the Hair Dryers existed when the hair dryers left Defendant's and their authorized resellers' possession and renders the Hair Dryers unfit for their intended use and purpose.

176.  As a direct and proximate result of Defendant's breach of its implied warranty, Plaintiffs and members of the Class have sustained damages and other losses in an amount to be determined at trial.  Plaintiffs and Class members are entitled to recover legal and equitable relief against Defendant, including damages,

1   attorneys' fees, litigation costs and other relief provided by law and that the Court

2   deems proper.

3   **TWELFTH CAUSE OF ACTION**

4   **Damages for Strict Products Liability—Defective Design or Manufacture**

5   **(By Plaintiffs on Behalf of the Nationwide Class, or Alternatively, on Behalf of**

6   **the California, Michigan, Ohio, Pennsylvania and New York Classes Against**

7   **Defendant)**

8       177.   Plaintiffs repeat and reallege the allegations contained in the paragraphs

9   above, as if fully set forth herein.

10       178.   Plaintiffs bring this claim individually and on behalf of the Class.

11       179.   Defendant   designed,   created,   manufactured   and   distributed   the

12   CONAIR Hair Dryers at issue in this matter.   Defendant is a "manufacturer" as

13   defined by, among other state statutes, O.R.C. § 2307.71(A)(9).

14       180.   Plaintiffs and Class members purchased CONAIR Hair Dryers which

15   were manufactured, distributed or sold by Defendant.   Plaintiffs are therefore

16   "purchasers" or "claimants" as defined by, among other state statutes, O.R.C.

17   §2307.71(A)(1).

18       181.   At the time the CONAIR Hair Dryers left the manufacturer and control

19   of Defendant and were sold, the CONAIR Hair Dryers were defective in design

20   and/or manufacturing as defined by, among other state statutes, O.R.C. 2307.74.

21       182.   The Hair Dryers were defective and inherently and unreasonably

22   dangerous and unsafe for their intended use because they have a propensity to spark,

23   catch fire, electrically short-out, and/or shoot flames or hot projectiles from the

24   barrel of the Hair Dryers during normal use.

25       183.   The Hair Dryers failed to perform as safely as an ordinary consumer

26   would have expected it to perform.

27       184.   The negligible additional costs incurred to eliminate these defects is far

28

outweighed by the harm in the form subjecting Plaintiffs and Class members to serious bodily harm and the defective product does not conform to the representations about it or perform its intended functions.

185.   As a result of the failure of the CONAIR Hair Dryers to conform to the Defendant's representations, and due to the unreasonably dangerous condition of the Hair Dryers, Plaintiffs and Class members have suffered damages including, but not limited to, "economic loss" and "harm" as defined by, among other state statutes, O.R.C. 2307.71(A)(2) and (7), respectively, the amounts to be determined at trial. Defendant is strictly liable for the harm caused by the defect pursuant to, among other state statutes, O.R.C. § 2307.77.   The Defendant is also strictly liable for additional compensatory and economic loss pursuant to, among other state statutes, O.R.C. § 2307.79.   Plaintiffs and the Class are entitled to costs of litigation, attorneys' fees and any other or further relief the Court deems proper.

## THIRTEETH CAUSE OF ACTION

### Damages for Strict Products Liability—Failure to Warn

### (By Plaintiffs on Behalf of the Nationwide Class, or Alternatively, on Behalf of the California, Michigan, Ohio, Pennsylvania and New York Classes and Against Defendant)

186.   Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

187.   Plaintiffs bring this claim individually and on behalf of the Class **based on, among other state statutes, Statutory Inadequate Warning (O.R.C. §2307.76).**

188.   Plaintiffs, and others similarly situated, purchased Hair Dryers which were manufactured, distributed or sold by Defendant.

189.   The potential for the Hair Dryers to catch fire, spark, explode and cause flames or shoot hot projectiles while drying hair undoubtedly presents a substantial

1    danger to consumers.

2        190.   Plaintiffs and other ordinary consumers would not have recognized or
3    known of these defects or the potential risks.

4        191.   Defendant knew, or in the exercise of reasonable care should have
5    known, that the CONAIR Hair Dryers were likely to spark and/or catch fire as stated
6    herein, subjecting consumers to risk of serious harm to their person and/or property.

7        192.   At the time CONAIR manufactured, distributed and/or sold the Hair
8    Dryers, it owed a non-delegable duty to Plaintiffs and Class Members to exercise
9    ordinary and reasonable care to properly design and/or manufacture the Hair Dryers,
10   and it owes a continuing duty to warn about the defects and to correct the defects
11   and/or recall its defective CONAIR Hair Dryers.

12       193.   CONAIR had a pre-sale duty to warn potential purchasers that the Hair
13   Dryers carried with them the risk of sparking and/or catching fire that could occur
14   when an ordinary consumer was using the Hair Dryers in an intended or reasonably-
15   foreseeable manner.

16       194.   Defendant nonetheless failed to provide a warning regarding the
17   potential dangers of the CONAIR Hair Dryers.

18       195.   Defendant, as the manufacturer, should have, in the exercise of
19   reasonable care, have provided such a warning.  The defects in the CONAIR Hair
20   Dryers are serious in light of the fact that it manifest during its normal use and
21   essential purpose.   A hair dryer that catches fire falls well below a reasonable
22   consumer's expectations.

23       196.   Defendant failed to provide to Plaintiffs and consumers adequate
24   warnings of the ultimate dangers inherent in the product.  Such warnings should
25   have been placed on the packaging, the Important Safety Information (user guide)
26   included with each Hair Dryer, at the point of sale and/or their website where
27   Defendant sells the Hair Dryers directly to consumers, or should have otherwise

28

been placed in a way calculated to give reasonable and fair warning to consumers. Had such warnings been provided, Plaintiffs and consumers would have not purchased the product, or at the very least, avoided the risk caused by the dangerous product.

197.   As a direct and proximate result of Defendant's failure to warn of the risk of physical injury and injury to property that can be caused by the CONAIR Hair Dryers, Plaintiffs and the Class suffered property damage and economic loss as defined by, among other state statutes, O.R.C. §§2307.71(A)(2) and (7), in an amount to be determined at trial.   Plaintiff and the Class are entitled to costs of litigation, attorneys' fees pursuant to, among other state statutes, O.R.C. §2307.71(A)(13), and any other or further relief the Court deems proper.

## FOURTEENTH CAUSE OF ACTION

### Damages for Violations of Magnuson-Moss Warranty Act

### (15 U.S.C. § 2301)

**(By Plaintiff's Czuchaj, Mundy, McConnell and Carter Asserted on Behalf of the Nationwide Class, or Alternatively, on Behalf of the California, Michigan, Ohio, Pennsylvania and New York Classes and Against Defendant)**

198.   Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

199.   Plaintiffs bring this claim individually and on behalf of the Class.

200.   The Hair Dryers are "consumer products" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(1).

201.   Plaintiffs and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

202.   Defendant is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. §§2301(4)-(5).

203.   Defendant provided Plaintiffs and Class members with "implied

1    warranties" within the meaning of the MMWA, 15 U.S.C. §2301(7).

2         204.   Pursuant to agreements for resale of the Hair Dryers between CONAIR

3    and nationwide retailers including, but not limited to, Sam's Club, Target, CVS

4    Pharmacies, Amazon and Wal-Mart Stores, Plaintiffs and Class members are third-

5    party beneficiaries of such contracts.

6         205.   Defendant warranted to Plaintiffs and Class members the Hair Dryers

7    were free from defects, were of merchantable quality and fit for the ordinary purpose

8    for which the hair dryers are used.

9         206.   Defendant has breached its warranties.   Defendant breached its

10   warranties as to the Hair Dryers suffer from known defects that causes them to

11   spark, catch fire, and/or project hot coils during normal and intended use.

12        207.   The amount in controversy of Plaintiffs and Class members' individual

13   claims meets or exceeds the sum or value of $25.   In addition, the amount in

14   controversy meets or exceeds the sum of $50,000 (exclusive of interest and costs)

15   computed on the basis of all claims to be determined by this suit.

16        208.   In its capacity as a warrantor, and by the conduct described herein, any

17   attempt by Defendant to limit the implied warranty of merchantability in a manner

18   that would exclude coverage for the defects in the Hair Dryers is unconscionable and

19   any such effort to disclaim, or otherwise limit liability for its defective Hair Dryers

20   is null and void.

21        209.   By Defendant's conduct described herein, including Defendant's

22   knowledge of the defects in the Hair Dryers and its inaction in the face of that

23   knowledge Defendant has failed to comply with its obligations under its implied

24   warranties.

25        210.   Defendant has been afforded a reasonable opportunity to cure its breach

26   of warranty.   Plaintiffs, on behalf of themselves and the Class, provided written

27   notice of the defects to Defendant and demanded an appropriate remedy prior to

28

filing this action.  In addition Defendant has received reasonable notice of the breach through negative consumer complaints and comments on various websites, including complaints made to the Consumer Product Safety Commission, and directly to Defendant.  Defendant failed to remedy the situation on a class-wide basis.

211.  As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class members have suffered injury and damages in an amount to be determined at trial.  Plaintiffs and the Class members are entitled to recover damages, consequential damages, special damages, equitable relief, attorneys' fees and litigation costs pursuant to 15 U.S.C. §2310.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

a.  Certifying the Class as requested herein, appointing Plaintiffs as the class representative for the Class and their undersigned counsel as class counsel;

b.  Requiring Defendant to disgorge or return all monies, revenues and profits obtained by means of any wrongful act or practice to Plaintiffs and the members of the Class under each cause of action where such relief is permitted;

c.  Enjoining Defendant from continuing the unlawful practices as set forth herein, including marketing or selling CONAIR Hair Dryers without disclosing the defects and potential health risks relating thereto, and directing Defendant to engage in corrective action, or providing other injunctive or equitable relief;

d.  Awarding exemplary or punitive damages pursuant to Cal. Civ. Code § 1780 and other applicable statutes;

e.  Awarding damages for breach of express warranty;

f.  Awarding all equitable remedies available pursuant to Cal. Civ. Code §

1   1780 and other applicable law;

2   g.   Awarding attorneys' fees and costs;

3   h.   Awarding pre-judgment and post-judgment interest at the legal rate;

4        and

5   i.   Providing such further relief as may be just and proper.

6   DATED: June 2, 2014                    **ODENBREIT LAW, APC**

7

8        By:   /s/ Katherine J. Odenbreit
              KATHERINE J. ODENBREIT
9              odenbreit@huntortmann.com
              16835 Algonquin Street, Suite 221
10             Huntington Beach, California 92649
              Telephone: 888/490-3510

11

12                                       **COHELAN, KHOURY & SINGER**

13

14       By:   /s/ Michael D. Singer
              ISAM C. KHOURY
15             ikhoury@ckslaw.com
              MICHAEL D. SINGER
              msinger@ckslaw.com
16             JEFF GERACI
              jgeraci@ckslaw.com
17             605 C. Street, Suite 200
              San Diego, California
18             Telephone: 619/595-3001
              Facsimile: 619/595-3000

19

20                                       **BISNAR|CHASE LLP**

21

22       By:   /s/ Jerusalem F. Beligan
              BRIAN D. CHASE
              bchase@bisnarchase.com
23             JERUSALEM F. BELIGAN
              jbeligan@bisnarchase.com
24             tsiegel@bisnarchase.com
              1301 Dove Street, Suite 120
25             Newport Beach, CA
              Telephone: 949/752-2999
26             Facsimile: 949/752-2777

27                                       *Counsel for Plaintiffs*

28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: June 2, 2014

**ODENBREIT LAW, APC**

By:   /s/ Katherine J. Odenbreit
KATHERINE J. ODENBREIT
odenbreit@huntortmann.com
16835 Algonquin Street, Suite 221
Huntington Beach, California 92649
Telephone: 888/490-3510

**COHELAN, KHOURY & SINGER**

By:   /s/ Michael D. Singer
ISAM C. KHOURY
ikhoury@ckslaw.com
MICHAEL D. SINGER
msinger@ckslaw.com
JEFF GERACI
jgeraci@ckslaw.com
605 C. Street, Suite 200
San Diego, California
Telephone: 619/595-3001
Facsimile: 619/595-3000

**BISNAR CHASE LLP**

By:   /s/ Jerusalem F. Beligan
BRIAN D. CHASE
bchase@bisnarchase.com
JERUSALEM F. BELIGAN
jbeligan@bisnarchase.com
1301 Dove Street, Suite 120
Newport Beach, CA
Telephone: 949/752-2999
Facsimile: 949/752-2777

*Counsel for Plaintiffs*