UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA L. CZUCHAJ, individually and on behalf of all others similarly situated, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CONAIR CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.: 13-cv-1901-BEN (RBB)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Before this Court is a Motion for Class Certification, filed by Plaintiffs Cynthia Czuchaj, Angelique Mundy, Barbara McConnell, and Patricia Carter. (Docket No. 108.) Respectively, Plaintiffs are residents of California, Pennsylvania, Michigan, and New York. (Mot. 2.) Each allege that they purchased a Conair hair dryer that malfunctioned. (Mot. 2.) Now that this case has been pending for two years, Plaintiffs seek to certify a class of potentially 3.3 million.

## BACKGROUND

Defendant Conair Corporation sells the Infiniti Pro 1875 Watt hair dryer that is at issue in this case. The hair dryer is identified by a model number beginning with "259" or "279". The Court refers to the hair dryer as "Model 259" for consistency. According

1

to Conair, the Model 259 was designed by a manufacturer in China. (Opp'n 3.) Conair contracts with various manufacturers to build the hair dryers. (Opp'n 3-4.) Conair sells the hair dryers to retailers and the retailers then resell the products to consumers. (Opp'n 5.) Between December 2009 and August 2015, over 3.3 million Model 259 dryers were sold to retailers. (Opp'n 5.)

Plaintiff Czuchaj purchased the Model 259 hair dryer at a Sam's Club store in California. (SAC ¶ 19; Opp'n Ex. 21.) After owning and using the product for approximately ten months, the Model 259 malfunctioned during use and began emitting flames from the handle where the cord connects to the device. (SAC ¶ 20.) Czuchaj dropped the dryer onto the floor, but it did not stop malfunctioning until she unplugged the device. As a result, a small area of her bathroom carpet was burned. (SAC ¶ 20.)

Plaintiff Mundy purchased a Model 259 from a Wal-Mart store in Pennsylvania. (SAC ¶ 21; Opp'n Ex. 22.) Mundy was using her Model 259 as she usually did in the two years that she owned the product when it ejected several hot coils onto her head and blouse. (SAC ¶ 21.) One of the hot coils fell down Mundy's blouse and caused a burn and scar on her chest. (SAC ¶ 21.)

Plaintiff McConnell purchased a Model 259 from a Target in Ohio. (SAC ¶ 22; Opp'n Ex. 24.) While using the Model 259 to dry her hair, "flames began emanating from the cord." (SAC ¶ 22.) Immediately, McConnell tossed the product into her sink, but the flames did not stop until she unplugged the device. (SAC ¶ 22.) Her sink sustained damage as a result. McConnell owned the Model 259 for approximately one and a half years before it malfunctioned. (SAC ¶ 22.)

Plaintiff Carter bought her Model 259 from an Ulta Beauty store in New York. (SAC ¶ 23.) Carter claims that she was using the product to dry her hair when it "exploded, burst into flames and ejected a hot coil which was lodged into [her] skull." (SAC ¶ 23.) Carter's hair caught fire as a result, and she suffered burns to her scalp. (SAC ¶ 23.) Carter was treated at Mount St. Mary's hospital on November 2, 2013. (SAC ¶ 23.)

Plaintiffs initiated this strict products liability class action on August 15, 2013. A First Amended Complaint was filed on December 17, 2013. (Docket No. 9.) The operative Second Amended Complaint was filed on June 2, 2014. (Docket No. 41.) Plaintiffs primarily allege that the Model 259 was defectively designed and that Conair was aware of the defect yet failed to warn consumers.

Plaintiffs seek to certify the following:

> A class consisting of all "consumers" as defined by Cal. Civ. Code § 1761(d) and other states substantially similar consumer protection statutes, residing in the United States who purchased, not for resale, CONAIR Hair Dryers at any time in the four, six, and ten years preceding the filing of this action (the "Nationwide Class"). The Nationwide Class seeks certification of claims based on the UCL, Cal. Bus. & Prof. Code §17500 *et seq.* ("FAL"), the CLRA, Strict Products Liability—Product Defect, and/or Strict Products Liability—Failure to Warn, Breach of Implied Warranty, and Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

(SAC ¶ 60.)[1]

Plaintiffs also seek certification of California, Michigan, Pennsylvania, Ohio, and New York subclasses that raise state consumer protection violations. Alternatively, Plaintiffs ask this Court to certify five separate state classes. Plaintiffs seek restitution and equitable relief. (Mot. 1, 23-24.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs federal class action lawsuits. A plaintiff seeking to certify a class must first meet all of the requirements under Rule 23(a) and must also satisfy at least one of the prongs of Rule 23(b).

Under Rule 23(a), members of a class may sue as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of

---

[1] In their Motion, Plaintiffs do not define the class they seek to certify.

the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Upon meeting the Rule 23(a) requirements, a plaintiff must then present evidentiary proof that one of the 23(b) prongs has been satisfied. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

Under Rule 23(b)(2), a court may certify a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." A class may be certified under Rule 23(b)(3) if the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The party seeking certification under Rule 23(b)(3) must also provide a "workable" class definition by showing that members of the class are identifiable. *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 576 (S.D. Cal. 2013) (citation omitted). In other words, a plaintiff must show that the members of the class are ascertainable in order to proceed pursuant to Rule 23(b)(3). *Backhaut v. Apple, Inc.*, No. 14-cv-2285, 2015 WL 4776427, at *4 (N.D. Cal. Aug. 13, 2015) (slip copy) (citations omitted).

Rule 23 is not a "mere pleading standard" and a party seeking class certification "must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). It may be necessary for a court to "probe behind the pleadings before coming to rest on the certification question." *Id.* (citation omitted). In making the class certification determination, a court is required to engage in "rigorous analysis." *Id.* That analysis frequently entails "some overlap with the merits of the plaintiff's underlying claim." *Id.*

4

# DISCUSSSION[2]

Plaintiffs seek to certify a Nationwide Class and five state subclasses under Rule 23(b)(2) and (b)(3). Alternatively, Plaintiffs seek to certify five state classes.

## I. Standing

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation omitted). At least one plaintiff must both meet the constitutional standing requirements and show that "he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

To establish Article III standing, a plaintiff must show injury-in-fact, causation, and redressability. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) ("Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."). The plaintiff bears the burden of establishing the Article III requirements in the same "manner and degree of evidence required at the successive states of litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "On a motion for class certification, this means Plaintiffs must show standing 'through evidentiary proof.'" *Backhaut*, 2015 WL 4776427, at *5 (citing *Comcast Corp.*, 133 S. Ct. at 1432); *see also Nelsen v. King Cnty.*, 895 F.2d 1248, 1249 (9th Cir. 1990) ("Standing is a jurisdictional element that must be satisfied prior to class certification.").

Here, each Plaintiff has established the injury-in-fact requirement by showing that each received a Model 259 that malfunctioned during ordinary use. In addition, they alleged either personal injury or property damage. Had the Model 259 not malfunctioned, either by hot coils ejecting from the barrel or flames emanating from the

---

[2] As an initial matter, the Court GRANTS Plaintiffs' Request for Judicial Notice (Docket No. 108-13) and Defendant's Request for Judicial Notice (Docket No. 136). The Court DENIES Plaintiffs' Request to judicially notice the Declaration of Stuart M. Eppsteiner (Docket No. 148), which was filed in an unrelated action.

handle and cord, the named Plaintiffs would not have been injured. Finally, this Court has the ability to provide Plaintiffs relief.

Conair challenges standing in only one instance: Plaintiff McConnell's ability to represent the Michigan Class. Plaintiffs did not respond to Conair's challenge. The Michigan Class, either as a separate class or subclass, is defined as "all consumers who purchased, not for resale, and/or suffered injury as a result of use for its intended purpose, CONAIR Hair Dryers in the State of Michigan." (SAC ¶ 60(b).) Plaintiff McConnell asserts that she purchased the Model 259 in Ohio. The record is devoid of any allegations, much less "evidentiary proof," that might show McConnell was injured in Michigan. McConnell therefore does not have standing to represent the Michigan Class.

In conclusion, the named Plaintiffs have standing to represent the Nationwide Class. Additionally, Plaintiff Czuchaj has standing to represent the California Class. Plaintiff Mundy has standing to represent the Pennsylvania Class. Plaintiff McConnell has standing to represent the Ohio Class. Plaintiff Carter has standing to represent the New York Class.

## II. Nationwide Class Certification

As the Rule 23(b) analysis in this case overlaps with some of the Rule 23(a) factors and is dispositive, the Court need not address the 23(a) factors.

### A. Rule 23(b)(3) Damages Class

Plaintiffs seek certification of a Nationwide Class asserting breach of implied warranty claims under state common law and the Magnuson-Moss Warranty Act, and strict products liability for design defect and failure to warn. Conair argues that substantive differences in state strict liability laws exist so that individual questions predominate over any common questions. The Court agrees.

Plaintiffs contend that the Model 259 was defectively designed, as exemplified by the coil and cord defects. In Plaintiffs' Reply, Plaintiffs confirm that they claim all Model 259 dryers have the coil defect. (Reply 4, 12.) However, Plaintiffs do not assert that all Model 259 dryers have the cord defect. Rather, they assert that the Model 259s

manufactured by the Sun Luen factory (one of at least three factories that manufacture the Model 259) prior to July 2013 had a cord design defect. (Reply 3.) Plaintiffs represent that the cord defect is caused by a strain relief (which protects the cord as it connects to the handle) that is too short. They argue that the coil defect, on the other hand, is caused by excessive vibrations and poor mica card materials. Thus, Plaintiffs assert two different design defects, only one of which applies to all Model 259s.

Also, the statutes of limitation for products liability actions vary among the states. *See, e.g.*, Cal. Civ. Proc. Code §§ 335.1, 338; N.Y. C.P.L.R 214; Ohio Rev. Code Ann. § 2305.10(A). Even in California, products liability claims for personal injury are barred after two years, while claims for property damage are barred after three years. *See* Cal. Civ. Proc. Code §§ 335.1, 338.

Interestingly, Plaintiffs raise products liability claims which provide for the recovery of property damage and personal injury, yet expressly exclude recovery for personal injury. There is no estimate for how many members of the putative class would be required to opt out in order to protect their claims for personal injuries. Also, throughout Plaintiffs' filings, they repeatedly seek "restitution" and propose to calculate damages based upon the full refund price of the Model 259. Upon review of the operative complaint and Plaintiffs' briefs, it appears that they do not actually seek to recover for property damage. If Plaintiffs do in fact wish to recover for property damage, such an award would apply to only a subset of the class. *But see Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 530 (C.D. Cal. 2012) (courts should accept plaintiff's theory as it is stated). Thus, the unequal application of an award for property damages generates the need for more individual questions.[3]

The products liability claims here call for a disjointed class action. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (although products

---

[3] This case is distinguishable from *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 565, 569 (S.D. Cal. 2012), where the named plaintiffs only sought restitution.

liability class actions are not prohibited *per se*, such cases usually involve an abundance of individual issues). The Court therefore declines to certify the product liability claims, as they raise individualized inquiries which predominate over common questions.

However, common questions related to Plaintiffs' implied warranty claims predominate over individual questions. Whether the Model 259 was defective and whether the implied warranty of merchantability was breached are two questions appropriate for a class action. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173-74 (9th Cir. 2010). Further, Conair raises no challenge to Plaintiffs' nationwide breach of implied warranty claims.

In this instance, a class action is the superior method of litigation because the relatively small size of each class members' claim would prevent them from seeking relief individually. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.").

Accordingly, the Court certifies the Nationwide Class, modified and defined as follows: "All persons who purchased either a model 259 or 279 Infiniti Pro 1875 Watt hair dryer, between August 15, 2009 and the present, sold by Defendant Conair Corporation directly or through numerous retailers for primarily personal, family, or household purposes, and not for resale."

B. Rule 23(b)(2) Injunctive Relief Class

Plaintiffs also seek to certify the Nationwide Class under Rule 23(b)(2), seeking injunctive or declaratory relief and restitution.

Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2257.

The Nationwide Class, as certified by the Court, may be entitled to restitution. However, an award of restitution would be based upon the number of Model 259 dryers

bought by each class member. Thus, questions of each class member would be required in order to determine how much monetary damages should be awarded. Accordingly, Plaintiffs' Motion to certify the Nationwide Class under Rule 23(b)(2) is **DENIED** insofar as Plaintiffs seek to recover restitution. *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) (denying class certification under Rule 23(b)(2) because case required an individualized inquiry into the award of monetary restitution).

### III. Subclass Certification

Although Plaintiffs' Motion lacks any argument for the certification of subclasses raising consumer protection claims, Conair argues the subclasses cannot satisfy the predominance or commonality requirements.

#### A. California

Plaintiff Czuchaj asks to represent California plaintiffs raising claims under the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770, *et seq.*, and Song-Beverly Warranty Act, Cal. Civ. Code §§ 1792, *et seq.*

Conair argues that Plaintiffs' unfair competition law and CLRA claims fail because Conair's alleged misstatements amount to mere puffery which is not actionable under the statutes. However, Conair's argument goes too far into a merit analysis than this stage of litigation allows. *See Moore v. Apple*, ---F.R.D.---, 2015 WL 4638293, at *4 (N.D. Cal. Aug. 4, 2015) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.") (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)). Conair raises no challenge against the Song-Beverly Warranty Act.

Courts use an objective test to assess injury under the FAL and CLRA. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011). Pursuant to the objective test, "injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that 'members of the public are likely to be deceived.'" *Id.* Thus, where the misrepresentations are found

to be material, individual inquiries are not necessary. Here, Plaintiffs allege the packaging of the Model 259 was the same or substantially similar. They assert that the advertisements and packaging did not warn of the alleged defects. As Czuchaj alleges that she viewed the same advertisements as the California Class, there is no variation in what advertisements had been seen. Accordingly, the common question of whether Conair's advertisements were deficient outweighs any individual questions. The commonality and predominance requirements are met. The Court **GRANTS** Plaintiffs motion to certify the California subclass under Rule 23(b)(3).

B. Pennsylvania

Plaintiff Mundy asks to represent the Pennsylvania subclass, asserting a claim under the state's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq.*

Under Pennsylvania's consumer protection statute, a plaintiff must prove justifiable reliance. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221-22 (3d Cir. 2008). As such, each member of the putative Pennsylvania Class would be required to show that he or she justifiably relied upon Conair's misrepresentations. Individual questions would therefore predominate over any common questions. *See Beck-Ellman*, 283 F.R.D. at 570 (denying certification to a class raising claim under Pennsylvania's consumer protection statute).

The Court therefore **DENIES** the motion to certify the Pennsylvania subclass.

C. New York

Plaintiff Carter asks to represent the New York subclass, asserting a claim under New York's General Business Law § 349. Under section 349, courts use an objective standard to determine whether Conair's allegedly deceptive practices were "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014) (quoting *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005)). Similar to the California subclass, the objective standard presents a common question that is proper for class litigation. Accordingly, the

Court **GRANTS** Plaintiffs' motion to certify the New York subclass under Rule 23(b)(3).

D. Ohio

Plaintiffs failed to bring a cause of action under Ohio's consumer protection laws. The Court therefore **DENIES** Plaintiffs' motion to certify the Ohio subclass.

## CONCLUSION[4]

The Court therefore **GRANTS in part** Plaintiffs' Motion for Class Certification. The Court certifies the Nationwide Class, as modified, and the California and New York subclasses. Plaintiffs' Motion is **DENIED** as to the proposed Michigan, Ohio, and Pennsylvania subclasses.

**IT IS SO ORDERED.**

Dated: November 1, 2015

HON. ROGER T. BENITEZ
United States District Judge

---

[4] The Parties filed numerous objections to evidence. The objections are overruled to the extent they are inconsistent with this Court's Order.