1   RYAN D. SABA, ESQ. (State Bar No. 192370)
    rsaba@rosensaba.com
2   MOMO E. TAKAHASHI, ESQ. (State Bar No. 238965)
    mtakahashi@rosensaba.com
3   **Members of Rosen ✧ Saba, LLP**
    9350 Wilshire Blvd., Suite 250
4   Beverly Hills, California 90210
    Telephone: (310) 285-1727
5   Facsimile:  (310) 285-1728

6   Attorneys for Defendant,
    CONAIR CORPORATION

7

8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  CYNTHIA L. CZUCHAJ, a              Case No.: 13-cv-1901 BEN (RBB)
    California resident; ANGELIQUE     *Honorable Roger T. Benitez*
12  MUNDY, a Pennsylvania resident;
    BARBARA MCCONNELL, a              **CLASS ACTION**
13  Michigan resident; and PATRICIA
    CARTER, a New York resident,      **DEFENDANT CONAIR**
14  individually and on behalf of     **CORPORATION'S OPPOSITION TO**
    themselves and all others similarly **PLAINTIFFS' REQUEST FOR**
15  situated,                         **APPROVAL OF NOTICE OF CLASS**
                                      **CERTIFICATION AND NOTICE PLAN**
16              Plaintiffs,
                                      Date:        February 22, 2016
17       vs.                          Time:        10:30 a.m.
                                      Courtroom:   5A
18  CONAIR CORPORATION, a
    Delaware Corporation; and DOES 1
19  through 10, inclusive,            Complaint Filed: August 15, 2013

20              Defendants.           First Amended
                                      Complaint Filed: December 17, 2013
21
                                      Second Amended
22                                    Complaint Filed: June 2, 2014

23

24

25

26

27

28

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

**TABLE OF AUTHORITIES**

I.     INTRODUCTION…………………………………………………….     1

II.    LEGAL STANDARD FOR NOTICE OF CLASS
       CERTIFICATION…………………………………………………….     2

III.   DUE PROCESS REQUIRES THAT CLASS MEMBERS ARE TO
       BE PROVIDED WITH DIRECT NOTICE…………………………     4

       A.     *Plaintiffs' Counsel Is Misleading This Court*………………….     5

       B.     *Plaintiffs Are In Possession Of Individual Contact
              Information*……………………………………………………..     7

       C.     *Plaintiffs Do Not Provide A Legitimate Justification For Why
              Individualized Notice Is Not "Reasonable"*…………………...     7

       D.     *Plaintiffs' Own Notice Expert Has Previously Testified
              Directly In Contravention To His Testimony In This Case*…….    10

       E.     *KCC Admits That Notice Plans Without Individualized Notice
              Have An Extremely Low Response Rate*…………………………    12

IV.    PLAINTIFFS' PRINT AD PLAN WILL ONLY REACH 22.4% OF
       THE CLASS…………………………………………………………….    13

V.     THE   UNTARGETED   INTERNET   BANNERS   PROPOSED   BY
       PLAINTIFFS WILL ONLY REACH 0.03% OF THE CLASS……...    13

       A.     *The Plan Fails To Account For Men*…………………………..    14

       B.     *Placement of Banners*…………………………………………    14

       C.     *Plaintiffs' Internet Plan Is Woefully Inadequate*……………....    14

       D.     *The Proposed Banner Advertisements Are Deficient*…………    16

              1.     Plaintiffs' Internet Banner Reach Is Actually 0.03%......    17

              2.     Plaintiffs' "Unique" Impression Numbers Are Inflated..    17

VI.    PLAINTIFFS' REACH CLAIM OF 71% IS OVERINFLATED…….    18

VII.   CONCLUSION…………………………………………………………    20

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

i

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Alberghetti v. Corbis Corporation*
    263 F.R.D. 571 (C.D.Cal.2010) .......................................................................3

4

*Avery v. State Farm Auto. Ins.*
    (Cir. Ct. Ill., 97-L-114) .................................................................................9

5

6

*Couch v. Telescope Inc./Hebert v. Endemol USA, Inc.*
    No. 2:07-cv-03916 (C.D. Cal.) .....................................................................11

7

*Eisen v. Carlisle and Jacquelin*
    417 U.S. 156 (1974) .......................................................................................3

8

*Flynn v. Sony Elec., Inc.*
    2015 WL 128039 (S.D.Cal.2015) ..................................................................3

9

*Ford Explorer Cases*
    (Cal. Super. Ct., JCCP Nos. 4226 & 4270) ...................................................9

10

11

*Hunt v. Check Recovery Sys., Inc.*
    2007 WL 2220972 (N.D.Cal.2007) ................................................................3

12

*Hunt v. Imperial Merch. Servs., Inc.*
    560 F.3d 1137 (9th Cir. 2009) ........................................................................3

13

14

*In re Domestic Air Transp. Antitrust Litig.*
    (N.D.GA, MDL No. 861) ................................................................................8

15

16

*In re Simon II Litigation*
    211 F.R.D. 86 (E.D.N.Y.2002) ......................................................................3

17

*Ko v. Natura Pet Products, Inc.*
    N.D. Cal, No. 5:09-cv-02619 ......................................................................19

18

*Lavender v. Skilled Healthcare Group, Inc.*
    No. DR060264 (Cal. Super. Ct.). .................................................................10

19

20

*Lerma v. Schiff Nutrition International, Inc.*
    No 3:11-cv-01056 (S.D. Cal.) ......................................................................11

21

*Mullane v. Cent. Hanover Bank & Trust Co.*
    339 U.S. 306 (1950) .......................................................................................2

22

23

*Nichols v. SmithKline Beecham*
    (E.D.Pa., No. 006222) ....................................................................................9

24

*Pappas v. Naked Juice Co.*
    No. 2:11-cv-08276 (C.D.Cal.) ......................................................................11

25

26

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) .......................................................................................2

27

28

ROSEN ✦ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

*Poertner v. The Gillette Co. and The Procter & Gamble Co.*
    (M.D. Fla., No. 6:12-cv-00803) .............................................................. 12, 19

*Soders v. General Motors*
    (C.P. Pa, No. CI-00-04225) .................................................................. 9

*Talalai v. Cooper Tire & Rubber*
    (N.J. Super. Ct., Middlesex County, No. MID-L-8839-00 MT) ...................... 9

*Wang v. Chinese Daily News, Inc.*
    623 F.3d 743 (9th Cir.2010) .................................................................. 2

**STATUTES**

FRCP 23(c)(2)(B) ............................................................. 2, 4, 7, 16, 17

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

iii

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Conair Corporation herein opposes Plaintiffs' request to approve notice of class certification and notice plan.   Plaintiffs fail to meet their burden, and as such, the entire request should be rejected and denied.

## I.   **INTRODUCTION.**

The proposed plan by Plaintiffs is woefully insufficient and is not compliant with FRCP 23(c)(2)(B).  First, Plaintiffs' plan fails to provide individualized notice to the class members in which Plaintiffs already have contact information.  This is a "bright-line" violation of Rule 23.  Further, Plaintiffs do not seek to individually notify others who may be identifiable through reasonable available sources.

Second, Plaintiffs' plan promises to reach 71.1% of the class through a 17 word Internet banner.  The Internet banner is a headline, not a Rule 23 compliant notice.  Furthermore, the banner only provides notice to those who click it.  The click through rates for Internet banner advertisements is 0.06%.  Therefore, only 45,000 people will actually click the banner advertisement out of the 75,000,000 banner advertisements purchased.  Then, only a small fraction of those 45,000 viewers will actually be class members.  Based upon Plaintiffs' own statistics, this is 1,203 persons.  This is why the Federal Judicial Center warns the judiciary against approving over promised Internet banner ad-reliant notice efforts.

Third, Plaintiffs' placement of the Internet banners advertisements is not "media relevant" and does not specifically target potential class members, which further deflates their overly exaggerated numbers.

Plaintiffs are selling weak, non-compliant notice to this Court while turning their backs on most class members.  This is a text book example of presenting "the cheapest possible notice plan" to this Court, instead of a plan that is the "best practicable notice under the circumstances."  That is not the appropriate standard.

1

Rosen ◇ Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212

Considering Plaintiffs are suing Conair for "tens of millions of dollars," they have the responsibility and statutory obligation to provide due process notice that is not the "cheapest" available plan.

Preparing an appropriate notice plan is Plaintiffs' burden.  Since Plaintiffs' plan is deficient, this Court should reject and deny the proposed plan.

## II.  **LEGAL STANDARD FOR NOTICE OF CLASS CERTIFICATION.**

Notice of a certified class action is subject to the statutory requirement of FRCP 23(c)(2)(B).  The statute requires that __individual notice__ is to be provided to all members of the class who can be identified through reasonable means.

Additionally, class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Moreover, notice must contain clear and concise, plain and easily understood language of:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Due process requires that potential class members receive proper notice so that they may participate in the litigation or opt-out and preserve the right to institute their own action. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. (1985); *Wang v. Chinese Daily News, Inc.,* 623 F.3d 743, 757 (9th Cir.2010) *vacated on other grounds*, 132 S.Ct. 741 (2011) ("The purpose of this notice is to

2

protect a class members' due-process rights by affording them the opportunity to opt out of the action. The district court has wide discretion in fashioning the proposed notice.").

"The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 812 (quoting *Mullane*, 339 U.S. at 314–15); *Flynn v. Sony Elec., Inc.,* 2015 WL 128039, at *2 (S.D.Cal.2015) (internal citation omitted) (approving in part notice plan prepared by Kurtzman Carson Consultants ("KCC") that specifically includes individualized direct notice).

In order for Plaintiffs to "fairly and adequately" represent the interests of these absent class members, the class members must be able to object, opt out of the class, or otherwise insure that their own rights and interests are protected. *Alberghetti v. Corbis Corporation*, 263 F.R.D. 571, 577 (C.D.Cal.2010).

It is Plaintiffs' burden to provide constitutionally sufficient notice. *See, e.g., Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 179 (1974) (remanding with instructions to dismiss the proposed class action because plaintiffs were unwilling to bear the burden of providing constitutionally sufficient notice). "Class representatives must be prepared, at the outset of the suit, to accept the responsibility of identifying absentee class members and paying for their individual notice." *Hunt v. Check Recovery Sys., Inc*., 2007 WL 2220972, at *4 (N.D.Cal.2007) *aff'd sub nom. Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009).

Ultimately, determining the scope of "best notice practicable" is a fact-intensive inquiry that is performed by this Court. *In re Simon II Litigation,* 211 F.R.D. 86, 183 (E.D.N.Y.2002).

Rosen ◇ Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212

3

### III.   DUE PROCESS REQUIRES THAT CLASS MEMBERS ARE TO BE PROVIDED WITH DIRECT NOTICE.

Plaintiffs' proposed notice plan fails to provide for any individualized notice to any class member.  On its face, the notice plan is defective for this reason alone.  FRCP 23 leaves no wiggle room for this requirement.  Individualized notice must be given pursuant to FRCP 23(c)(2)(B).

Plaintiff's motion is completely silent on this issue and Plaintiffs do not provide for any justification for why individualized notice should not be provided to the class.

The Supreme Court has set a bright line rule that individual notice must be given, and that such notice is not "discretionary:"

> The short answer to these arguments is that **individual notice to identifiable class members is not a discretionary consideration** to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23. As the Advisory Committee's Note explained, the Rule was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit, 28 U.S.C. App., pp. 7765, 7768. Accordingly, **each class member who can be identified through reasonable effort must be notified** that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action. There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs. *Eisen*, 417 U.S. at 176 (emphasis added).

It is obvious from this notice plan that Plaintiffs did not include individualized notice to the class members because they are trying to save money.  However, Plaintiffs' desire to cut financial corners in order to fit their "pocketbooks" is not a justification for avoiding providing individualized notice.

Similarly, the Federal Judicial Center's Judges' Class Action Notice and

Rosen ◇ Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212

4

Claims Process Checklist and Plain Language Guide of 2010 ("Class Action Checklist") identifies the core criteria that needs to be met to ensure notice will effectively reach the class.   [Exhibit "A" attached to the Request for Judicial Notice ("RJN").]

Specifically, the Class Action Checklist warns judicial officers that: "[i]f names and addresses are reasonably identifiable, Rule 23(c)(2) requires individual notice. Be careful to look closely at assertions that mailings are not feasible."

### A.     Plaintiffs' Counsel Is Misleading This Court.

When seeking to certify their class action, Plaintiffs represented to this Court that the names and contact information for class members was ascertainable and available.   [Declaration of Jerusalem F. Beligan in Support of Plaintiffs' Motion for Class Certification ("Beligan Motion Decl.") filed under seal in Docket #108.]

In May 2015, Plaintiffs subpoenaed 21 third party retailers seeking sales data and consumer contact information.[1]   In response, two retailers produced consumer contact information. However, in the Beligan Motion Decl., Plaintiffs' counsel represented to this Court that many of the retailers (such as Walmart, Costco and others) have the ability to identify contact information for purchasers. [Beligan Motion Decl.,¶4.]

Plaintiffs' counsel also represented to this Court that Plaintiffs were going to file motions to compel against the retailers who objected to the subpoenas and refused to voluntarily cooperate.  Plaintiffs' counsel even concedes that this is a necessary step before concluding that "information is readily available to ascertain class members…" [Beligan Motion Decl., ¶¶5-6.]

Furthermore, in the reply to the motion for class certification, Plaintiffs' counsel Jerusalem Beligan filed another declaration ("Beligan Reply Decl.").

[1] Conair Corporation does not sell the model 259 hair dryers directly to consumers.  The hair dryers are purchased by consumers through third party retailers. To that end, Conair does not have the contact information of a consumer unless the consumer registers the product or contacts Conair with a complaint.

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

5

[Docket #140.]

In the Beligan Reply Decl. at paragraphs 12 and 13, Plaintiffs' counsel made the following representations to this Court:

- "it may be possible to provide direct notice to" 1,128,898 class members.
- Plaintiffs have already obtained the contact information for 126,006 class members from Bed Bath & Beyond.
- Target agreed to produce contact information for 174,632 purchasers.
- Costco agreed to assist in sending notice to 2,684 purchasers.
- Amazon can and will identify the names of the 11,800 purchasers.
- Rite Aid can identify purchases for some or all of the 55,872 purchasers
- Sears and Walmart are also cooperating in response to subpoenas for personal contact information.

In the conclusion of the Beligan Reply Decl. at paragraph 17, Plaintiffs' counsel stated that "[i[f the motion for class certification is granted, Plaintiffs will continue their efforts to compel the production of the contact information of putative class members by filing motions in each district necessary." Based upon these representations to the Court, this Court certified a nationwide class and California and New York subclasses. However, this was a false promise to the Court. No such effort has been made by Plaintiffs' counsel.

Rather, in sharp contrast, now that the class has been certified, Plaintiffs' counsel submits a declaration in support of the instant motion stating that "I and my co-counsel contacted several firms experienced in providing notice in nationwide class actions involving consumer products" before concluding that the time and expense required to "negotiate, arrange for protective orders, move to

6

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

compel in multiple jurisdictions, review any contact information obtained, and prepare it for mail was not reasonable under the circumstances." [Geraci Decl. ¶6 (Docket #176-2).]

This new position is in direct contravention to Plaintiffs' counsel's prior promise to this Court. This exemplifies that Plaintiffs' counsel is willing to say anything to win a motion. This Court should not allow for this type of behavior. In order to convince this Court to certify a nationwide class, Plaintiffs represented that they could reasonably expect to give individualized notice to 90% of the class. [Beligan Reply Decl. ¶12.] Now, Plaintiffs' counsel is claiming they do not have to give individualized notice to anyone. This position is in direct violation of the individualized notice requirement of Rule 23(c)(2)(B).[2]

### B.   Plaintiffs Are In Possession Of Individual Contact Information.

Without any further effort, Conair is aware that Plaintiffs are in possession of *at least* 128,198 individual names and contact information. At a bare minimum, these individuals should receive individualized notice by U.S. Mail.

Further, this Court should require Plaintiffs to exercise reasonable effort to obtain the contact information of the other class members so that individualized notice can be provided to 90% of the class, as promised by Plaintiffs.

### C.   Plaintiffs Do Not Provide A Legitimate Justification For Why Individualized Notice Is Not "Reasonable."

In evaluating the feasibility of requiring a party to provide individualized notice, the Class Action Checklist sets forth the following inquiries for judicial officers to consider:

---

[2]/ This Court should not permit a complete reversal of position. If Plaintiffs' counsel cannot obtain the names of the individuals, then this Court should revisit its decision to certify the class which was based upon the representations and promises by Plaintiffs' counsel that they would act diligently and obtain 90% of the consumer's names and contact information. This was a fully briefed issue in the class certification motion.

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

7

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

- ***Did you receive reliable information on whether and how much individual notice can be given?***
  Consider an expert review of the information you have been provided regarding the parties' ability to give individual notice. The parties may have agreed to submit a plan that does not provide sufficient individual notice in spite of the rule.

- ***Will the parties search for and use all names and addresses they have in their files?***
  If the parties suggest that mailings are impracticable, look to distinguish between truly unreasonable searches (e.g., the defendant has nuggets of data that could be matched with third-party lists by a new computer program and several man-years) and situations where a search would be difficult but not unreasonably burdensome (e.g., lists reside directly in defendant's records but are outdated or expensive to mail to because of the volume). Rule 23 generally requires the latter.

Here, Plaintiffs' notice expert Daniel Burke acknowledges that direct notice data is available, but provides *zero* justification for why a media-only campaign is "reasonable under the circumstances." Mr. Burke simply cites to prior cases where media-only notice programs were utilized. [Burke Decl., ¶21 (Docket 176-3).] However, these cases have drastically different facts from this case[3] and do not justify foregoing Rule 23's statutory requirement to provide direct notice to the class:

- *In re Domestic Air Transp. Antitrust Litig.* (N.D.GA, MDL No. 861), was a case where there were tens of millions of addresses and notice

---

[3] / The differences in these cases are discussed in further detail in the Declaration of Todd B. Hilsee, at ¶30. Further, the cases cited by Mr. Burke in support of notice plans that reached only 70% of the class are distinguishable, at the very minimum, because direct notice was provided.  [Hilsee Decl. ¶52.]

8

would have been cost prohibitive, and the process of obtaining addresses would have taken many-years.

- *Talalai v. Cooper Tire & Rubber* (N.J. Super. Ct., Middlesex County, No. MID-L-8839-00 MT), was a New Jersey state case that did not require individualized notice and the number of addresses exceeded 40 million and was cost prohibitive.  Rule 23(c)(2)(B) did not apply to this case.  New Jersey has relaxed rules regarding individualized notice.

- *Avery v. State Farm Auto. Ins.*  (Cir. Ct. Ill., 97-L-114), was an Illinois state case that did not requiring individualized notice and would have cost $8.6 million.  Rule 23(c)(2)(B) did not apply and Illinois state law has relaxed rules regarding individualized notice.

- *Ford Explorer Cases* (Cal. Super. Ct., JCCP Nos. 4226 & 4270) was a California state case that did not requiring individualized notice.  Rule 23(c)(2)(B) did not apply.  California state law does not require individualized notice.

- *Nichols v. SmithKline Beecham* (E.D.Pa., No. 006222) individual notice was required and attempted, but certain members were not notified due to prohibiting privacy requirements.

- *Soders v. General Motors* (C.P. Pa, No. CI-00-04225) was a Pennsylvania state case that did not require individualized notice and where addresses were outdated by more than a decade.  Rule 23(c)(2)(B) did not apply and Pennsylvania has relaxed rules regarding individualized notice.

There is no explanation from Mr. Burke why individualized notice is not provided for in the notice plan. The failure to include individualized notice in the proposed plan warrants a complete rejection of this plan.

Furthermore, there is no explanation whether Mr. Burke or KCC would communicate with third party retailers to jointly send notice to the class.  To that end, Mr. Burke and KCC have previously requested third party retailers to mail notices to class members themselves directly. [Hilsee Decl., ¶33.]   Plaintiffs do not address this option even though they represented to this Court in the motion for

9

class certification that they would make this reasonable effort.  [Beligan Reply Decl., ¶13.]

In sum, Plaintiffs' plan is completely insufficient and Plaintiffs' counsel fails to explain why it is unreasonable to obtain the contact information for class members so that individualized notice may be properly provided to the class members.   This plan does not comply with Rule 23 or the Class Action Checklist or the proper notice plan standards.  [Hilsee Decl. ¶59.]

### D.   Plaintiffs' Own Notice Expert Has Previously Testified Directly In Contravention To His Testimony In This Case.

Plaintiffs argue that direct notice is not reasonable because Plaintiffs allegedly only have addresses for approximately 3.5% the potential class members. [Burke Decl. ¶21.]

However, Plaintiffs' own notice expert has designed and administered notice programs in other cases in recent years where direct mailing was made to less than 10% of the class.  For example, in a 2012 declaration, Mr. Burke describes a notice plan including direct mailing to 553,480 out of 5.3 million class members (this is about 9% of the class).[4]  [RJN, Exhibit "B" ¶¶9, 12.]  Significantly, Mr. Burke himself declares that, "[w]hen practicable and possible, direct mailed notice via email or United States Postal Service ('USPS') is the preferred form of legal notification."  [Id. at ¶14.]

In Mr. Burke's declaration in this action, he cites to 19 cases to support his position. [Burke Decl., ¶9.]  Significantly, nearly all of these 19 cases involved direct notice. [5]  In one of the cases, direct notice was mailed to 3.9 million class

---

[4] This declaration is from the same case that Plaintiffs' counsel previously submitted a declaration from Costco to justify class certification.  Plaintiffs submitted the Costco declaration to the Court to exemplify that Costco maintained detailed member contact information and that Costco would assist in sending postcards directly to their customers.  [Beligan Motion Decl. ¶4 and Exhibit "F" thereto.]  Ultimately, in that case, Costco mailed 129,474 direct notices. [Id. at ¶7.]

[5] One of the cases cited by Mr. Burke is a state court case (specifically requiring individualized notice by law) where case documents were not accessible for review.  Lavender v. Skilled Healthcare Group, Inc., No. DR060264 (Cal. Super. Ct.).

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

members where the class was estimated to be between 8 and 11 million. [RJN, Exhibit "C," ¶10.]

For the three cases identified in Mr. Burke's declaration where direct notice was not given, they are all distinguishable from this case.  In *Pappas v. Naked Juice Co.,* No. 2:11-cv-08276 (C.D.Cal.), the case consisted of 21.5 million estimated class members of purchasers of juice and there was no feasible way for determining direct contact information.  [RJN, Exhibit "D," ¶14.]  Additionally, the proposed notice in that case was designed to reach a higher percentage of the class at 85%.  [*Id.* at ¶16.]

In *Couch v. Telescope Inc./Hebert v. Endemol USA, Inc.*, No. 2:07-cv-03916 (C.D. Cal.), the class consisted of eight million members who watched "Deal or No Deal" and "American Idol" and who entered into text messaging contests costing 45 cents to a dollar. [RJN, Exhibit "E," ¶¶11-12.]  Direct notice was cost prohibitive where it was possible to reverse look up telephone numbers, but the information was unreliable.  [*Id.* at ¶20.]

In *Lerma v. Schiff Nutrition International, Inc.*, No 3:11-cv-01056 (S.D. Cal.), the class members were unknown purchasers of joint medication, and the notice was designed to reach 80% of the class. [RJN, Exhibit "F," ¶3.]

Thus, even in the cases where direct notice was not achieved, there are significant differences from the present case: (1) none of these cases involved a safety issue; (2) none of these cases relied on an Internet banner headline to accomplish promised reach levels; (3) the notice plans were designed to reach a higher proportion of the class (80% and higher); and (4) the products at issue were low cost.  These factors do not exist here.

Rather, in the instant action, Plaintiffs are claiming that the hair dryers shot flames at the class members and allegedly caused personal injuries and property damage.  Even though the Court did not certify a class of personal injury or property damage claims, the point of notice is to notify the class of these allegedly

defective products that "shoot coils or flames from the barrel."[6]  To that end, bare-minimum notice is insufficient.

The Class Action Checklist states that a "median reach calculation on approved notice plans was 87%." [RJN, Exhibit "A."]  Considering the safety issues alleged by Plaintiffs in this action, this Court should require individualized notice to at least this percentage of the class, if not a significantly higher percentage.

### E.    KCC Admits That Notice Plans Without Individualized Notice Have An Extremely Low Response Rate.

Notice plans that do not provide individualized notice ultimately result in claims rates that are dismally low.  Deborah McComb, a Senior Consultant at KCC, provided a declaration in *Poertner v. The Gillette Company, et al.*, Case No. 6:12-cv-00803, pending in the Middle District of Florida, which states as follows:

**[I]t is KCC's experience that consumer class action settlements with little or no direct mail notice will almost always have a claims rate of less than one percent (1%)**.  For example, KCC did an analysis six months ago of all consumer class action settlements that KCC administered where the notice provided to class members relied entirely on media notice rather than direct    mail notice.  These settlements included products such as toothpaste, children's clothing, heating pads, gift cards, an over-the-counter medication, a snack food, a weight loss supplement and sunglasses.  The claims rate in these cases ranged between .002% and 9.378%, with a median rate of .023%. [RJN, Exhibit "G" (emphasis added).]

This is why FRCP 23 requires individualized notice.

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

---

[6]/ Conair obviously denies these allegations.  However, these are the allegations made by Plaintiffs, so they cannot downplay them now in order to push through an inadequate notice plan.

12

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

## IV.   PLAINTIFFS' PRINT AD PLAN WILL ONLY REACH 22.4% OF THE CLASS.

Plaintiffs' plan includes a one-time advertisement in People magazine that is only 1/3 of a page.

The total population of Conair hair dryer purchasers is 77.9% female and 22.1% male.  [Hilsee Decl., ¶46 and Exhibit "2".]  Therefore, of the 3,300,000 class members, approximately 729,300 of them are men.  [Hilsee Decl., ¶46.]

The reason why People magazine advertisement is ineffective is because People magazine only reaches 10.34% of men, while it reaches 25.73% of women (for a total of 18.32% of all adults).  [Hilsee Decl., ¶46.]  This means only 10 out of every 100 male class members would be reached, while 26 out of every 100 women would be reached.  People magazine does not reach men nearly as effectively as women.  Accordingly, its reach of all adults overall is significantly less than what is represented by Mr. Burke.  [Hilsee Decl., ¶47.]

Based upon this one-time People magazine advertising, the advertisement will reach 22.4% of the combined class of men and women (not 26.4% as claimed by Plaintiffs).  [Hilsee Decl., ¶49.]  The reason why Plaintiffs' numbers are incorrect is because Plaintiffs are proposing a plan that targets "women only" and not the combination of men and women.

## V.   THE UNTARGETED INTERNET BANNERS PROPOSED BY PLAINTIFFS WILL ONLY REACH 0.03% OF THE CLASS.

Plaintiffs' notice plan relies heavily on Internet banners, touting "75 million unique impressions over a one-month period."   However, the plan is deficient because it: (1) only directs notice to women, and not men, (2) does not identify the placement of the banners on specific websites, (3) fails to account for how the "reach" and "frequency" is calculated to avoid miscalculating actual views, and (4) does not set forth the necessary words to comply with Rule 23.

13

**A.      The Plan Fails To Account For Men.**

A fundamental problem with Plaintiffs' notice plan is that it is only designed to provide notice to women.  [Burke Decl., ¶11 ("the data pertained to usage among females only").]   However, the total population of Conair hair dryer purchasers is 77.9% female and 22.1% male.  [Hilsee Decl., ¶46 and Exhibit "2".]

Plaintiffs fail to account for this significant male population in both the print media and Internet media portions of the plan. Accordingly, the plan designed by Plaintiffs specifically *excludes* 22.1% of the class members.  For this reason alone, the plan should be rejected.

**B.      Placement of Banners.**

Another significant problem with Plaintiffs' plan is that it fails to account for "media relevant" approach to target the appropriate audience.  [Declaration of Jeanne Finegan, ¶14.]   "Media relevant" selection of placement of Internet advertising is necessary to advertise across digital and social media platforms to communicate with customers.  [*Id.*]

It is inappropriate to simply place Internet banner advertisements on *any unspecific* website, such as pornography and gun related websites.  The Internet banners should be placed on specific websites so that the target audience will have an opportunity to see the message.  [Finegan Decl., ¶15.]  As an example, specific targeting should include beauty and style websites, make-up and beauty-related campaigns, individuals who are identified by offline transactional shopping data, Facebook or individuals who have expressed interest in Conair.  [Finegan Decl., ¶21.]  This Internet targeted marketing using media relevant selection of banner placement is necessary to satisfy due process concerns and is consistent with the FJC's guidelines.  [Finegan Decl., ¶22.]

**C.      Plaintiffs' Internet Plan Is Woefully Inadequate.**

Mr. Burke declares that the notice plan will reach approximately 71.1% of the class members on average of 1.2 times each.  [Burke Decl. ¶3.]  However, Mr.

Rosen ✧ Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212

14

Burke defines the term "reach" as "exposed to a notice."  This is an incorrect way to examine this issue.

It is undisputed that very few people actually click on an Internet advertisement banner.  The percentage or rate at which those exposed to a banner actually click on the banner is called a "click thru" rate.  According to Google, the average "click thru" rate of display ads across all formats is 0.06%.  [Hilsee Decl., ¶38.]

The low click thru rate is well known and supported by logic and research.  The primary reasons are:

- Many people have software in place that block Internet banners from appearing.  Ad blocking grew 41% in the last 12 months.
- Only 2.8% of people believe ads on websites are relevant.
- 18-34 year olds are far more likely to ignore online ads, than they are to ignore traditional TV, radio and newspaper ads.
- 50% of all clicks on mobile ads are accidental.
- 54% of users do not click banner ads because they do not trust them.
- 33% of Internet users find display ads intolerable.  [Hilsee Decl., ¶39.]

This is why the Class Action Checklist warns against over-reliance on Internet banners:

> "Inflated audience data via Internet ads is common.  It is very expensive to reach a significant percentage of a mass audience with Internet banner ads.  Watch for suggestions that Internet ads and social network usage can replace all other methods.  Reach, awareness, and claims will likely be very low when such a program is complete."

Based upon Mr. Burke's own reach statistics, the number of class members that will actually click thru and be exposed to the actual Rule 23 notice is 1,203, assuming the 3,300,000 hair dryers are all owned by different women.  [Hilsee Decl., ¶11.]  This is a reach of about 0.03% of the class – which is nowhere near

15

the promised 60.8% reach.  [*Id.*]

It should be noted that the United States Congress could have adopted Internet notice as a reasonable means to provide due process notice in Rule 23, but has not done so.  Nonetheless, vendors are now trying to sell the idea that digital media provides effective reach to consumers at a drastically cheap rate.  Vendors who compete for class action business need to propose cheaper plans to beat competitors.  The vendors have learned that they can win a job by promising to provide a declaration to support their conclusions.  This approach is what Plaintiffs are trying to sell to this Court.  Plaintiffs want to see what is the "least we can get away with" versus FRCP 23's requirement to give the "best notice practicable." [Hilsee Decl., ¶55.]

> The Class Action Checklist warns of this behavior:
>> "Be careful if the notice plan was developed by a vendor who submitted a low bid and might have incentives to cut corners or cover up any gaps in the notice program."

> Courts are seeing through these cheap plans.  For example, one Court stated:
>> "The Court is skeptical whether a notice program based primarily on banner ads would satisfy the notice requirements of Rule 23.  At least one study suggests that more than 90 per cent of people do not click on banner advertisements because they (1) do not wish to be taken away from their current online activity; (2) believe that the ads lack relevance to them; and (3) are concerned by computer security (e.g., spam, viruses)."  [Hilsee Decl. ¶56 and Exhibit 3 to his declaration.]

Nonetheless, even if Internet notice was appropriate, Plaintiffs' 17 word banner is not in compliance with Rule 23.

### D.   The Proposed Banner Advertisements Are Deficient.

Rule 23(c)(2)(B)(i)-(vii) requires that notice must clearly and concisely state in plain, easily understood language various necessary information about the action and the rights of the class members.

Rosen ◇ Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212

16

The Class Action Checklist poses the following relevant inquiry: ***"Are the notices informative and easy to understand?*** Notices should carry all of the information required by Rule 23 and should be written in clear, concise, easily understood language." [RJN, Exhibit "A."]

The proposed banners do not comport with the FRCP 23 requirements that notice be "clear and concise." Plaintiffs' proposed 17 word banner advertisement does not have any substantive information. Instead, it is just a headline that relies on the reader to click thru the advertisement to the actual linked information. This in itself is problematic because unless a person clicks through the banner advertisement, then the viewer is not actually provided with due process notice. [Hilsee Decl., ¶¶35-39.]

### 1.   Plaintiffs' Internet Banner Reach Is Actually 0.03%.

Internet media is not the same as print media, where a magazine can be picked up several times by a reader. A banner is only on a particular Internet page and there are many factors that affect whether the banner is actually viewed, and even more importantly, whether the banner is ultimately clicked on.

As discussed above, the expected click thru rate will only be 0.03%, which means almost no one will actually see the Rule 23 notice. It will only be viewed by the 1,203 people who click thru the banner ad.

### 2.   Plaintiffs' "Unique" Impression Numbers Are Inflated.

An impression (an opportunity to see a message on line) is created when the advertisement is delivered. The impression is counted regardless of whether a viewer actually views the banner. [Finegan Decl., ¶12.] There are several impediments to a banner actually being viewed, including lack of viewability (viewers might glance over a page within a second, never seeing the ad) or the advertisement is blocked by "cookie deletion" software. [*Id.*] Further, advertisements may be slow to load so the advertisement is never viewed. [Finegan Decl., ¶12 and Exhibit B to the Finegan Decl.] Adding to this, people

Rosen ◇ Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212

17

own software to block advertisements and largely believe banners are irrelevant. [Hilsee Decl., ¶39.] Further, a good portion of clicks on mobile ads are accidental, and people do not click on banners out of distrust and/or annoyance. [*Id.* at ¶¶35-41.]

Additionally, "click thru" rates for Internet banner advertisements average a mere 0.06%. [Hilsee Decl., ¶11.] Accordingly, even if Plaintiffs purchase 75,000,000 unique impressions, only 45,000 people will likely click the banner ad and see the FRCP 23 notice, and then only a small percentage of those people would likely be class members. Using Plaintiffs expert's own reach statistics, the reach is actually only 0.03%. [*Id.*] Further, these reach statistics are under inclusive to the extent Plaintiffs' expert's designed plan is geared towards women and does not account for men. [*Id.* at ¶44-50.]

"This is why buying a lump-sum of non-targeted millions of unique impressions (without using vetted validation software) with the presumption that you will reach the entire U.S. population would be nothing more than a vain hope." [Finegan Decl., ¶12.] Plaintiffs' plan does not come anywhere close to providing appropriate due process notice to the 3,300,000 or more class members.

## VI.   **PLAINTIFFS' REACH CLAIM OF 71% IS OVERINFLATED.**

The Class Action Checklist identifies effective notice as one that will reach 70-95% of the class. [RJN, Exhibit "A."] Not only is Plaintiffs' claimed reach an overinflated estimate, but it also aims to reach the lowest bar possible at 71.1%.

Mr. Burke cites cases in support of the bare minimum target. However, these cases are all significantly distinguishable from this case (4 of which involved Conair's expert, Todd Hilsee). For the cases involving Mr. Hilsee:

- None of the cases involved a safety issue;
- All four cases involved individualized notice to identifiable class of people;

18

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

- In one of the cases, *Weber v. Mobil Oil*, the Court ordered extensive research into the availability of contact addresses; and
- In another, *Kaufman v. American Express*, the minimal plan notice plan ultimately failed, requiring re-notification.

[Hilsee Decl., ¶52.]

With respect to the 7 other cases cited by Mr. Burke in support of the 71% notice target, nearly all of these cases involved at the very least, direct notice.[7]  The only case wherein direct notice was not provided was *Poertner v. The Gillette Co. and The Procter & Gamble Co.* (M.D. Fla., No. 6:12-cv-00803).  In *Poertner*, the class consisted of purchasers of low cost batteries and there was no feasible way to determine contact information. Moreover, the notice plan included a much more robust notice plan than this case, involving publication in 6 major magazine publications (for a larger notice size than this case), as well as 3 major syndication newspapers. [RJN, Exhibit "H."]

Cases with a low 70% notice target almost always involve direct notice and also had more robust notice plans.  For instance, in *Ko v. Natura Pet Products, Inc.*, N.D. Cal, No. 5:09-cv-02619, the class allegations involved false labeling claims regarding human grade quality of pet food.  Even in this case involving fairly low cost, non-human consumption goods with no risk of physical harm, the notice plan included 5 magazine publications.  [RJN, Exhibit "I."]

Accordingly, Plaintiffs' proposed notice plan is designed to hit the low target of 70% is deficient.  The Class Action Checklist states that a "median reach calculation on approved notice plans was 87%."  [RJN, Exhibit "A."]  Considering the safety issues alleged by Plaintiffs in this action, this Court should require individualized notice to at least 87% of the class, if not a significantly higher percentage.

---

[7] / *Wells v. Abbott Laboratories, Inc.* (Cal. Sup. Ct. No. BC389753) is a state court case not requiring individual notice and for which case documents were not readily accessible.

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

## VII.   <u>CONCLUSION.</u>

It is Plaintiffs' burden to present an appropriate notice plan to this Court so that due process is provided to the class members. The plan presented by Plaintiffs is woefully inadequate.  Accordingly, Defendant Conair Corporation respectfully requests that the Court reject and deny Plaintiffs' proposed notice plan.  Conair also suggests that this Court admonish Plaintiffs to present a new plan to provide for direct individualized notice to 90% of the class members like they promised to do in the class certification motion.

DATED: February 8, 2016                          ROSEN ✧ SABA, LLP

                                  By:    s/   Ryan D. Saba
                                         Ryan D. Saba, Esq.
                                         Momo E. Takahashi, Esq.
                                         Attorneys for Defendant
                                         CONAIR CORPORATION

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

20