1   RYAN D. SABA, ESQ. (State Bar No. 192370)
    rsaba@rosensaba.com
2   MOMO E. TAKAHASHI, ESQ. (State Bar No. 238965)
    mtakahashi@rosensaba.com
3   **Members of Rosen ✧ Saba, LLP**
    9350 Wilshire Blvd., Suite 250
4   Beverly Hills, California 90210
    Telephone: (310) 285-1727
5   Facsimile:  (310) 285-1728

6   Attorneys for Defendant,
    CONAIR CORPORATION
7

8                **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10  CYNTHIA L. CZUCHAJ, a            Case No.: 13-cv-1901 BEN (RBB)
    California resident; ANGÉLIQUE   *Honorable Roger T. Benitez*
11  MUNDY, a Pennsylvania resident;
    BARBARA MCCONNELL, a            **DEFENDANT'S OPPOSITION TO**
12  Michigan resident; and PATRICIA **PLAINTIFFS' MOTION TO EXCLUDE**
    CARTER, a New York resident,    **INADMISSIBLE, SPECULATIVE,**
13  individually and on behalf of   **UNFOUNDED EXPERT OPINION**
    themselves and all others similarly **TESTIMONY OF DEFENDANT'S**
14  situated,                        **ENGINEERING EXPERT ROBERT A.**
                                     **CARNAHAN**
15              Plaintiffs,
                                     Hearing Date:    August 22, 2016
16          vs.                      Hearing Time:    10:30 a.m.
                                     Department:      5A
17  CONAIR CORPORATION, a
    Delaware Corporation; and DOES 1
18  through 10, inclusive,           Complaint Filed:   August 15, 2013

19              Defendants.          First Amended
                                     Complaint Filed:   December 17, 2013
20
21                                   Second Amended
                                     Complaint Filed:   June 2, 2014
22                                   Trial Date:        September 13, 2016
23
24
25
26
27
28

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROSEN ◊ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

## <u>TABLE OF CONTENTS</u>

**I.** **INTRODUCTION.** ........................................................................................ 1

**II.** **MR. CARNAHAN'S OPINIONS ARE NOT SPECULATIVE.** ................. 2

*A.* *Mr. Carnahan Offered Specific and Definitive Ultimate Opinions Regarding Observed Coil Failures.* ......................................................... 2

*B.* *Mr. Carnahan Offered Specific and Definitive Ultimate Opinions* ............ 3 *Regarding Observed Cord Failures.* ......................................................... 3

*C.* *Reliable and Certain Opinions Are Admissible.* ..................................... 4

*D.* *Mr. Carnahan Does Not Have to Offer An Ultimate Opinion About What* ........ 6 *Caused Certain Coil Failures.* .................................................................. 6

    **1.** **Mr. Carnahan's Opinions Regarding the Silver Plan Heater Coil and Potential Oscillations Are Based on Proper Foundation and Are Not Speculative** ..................................................................................... 7

    **2.** **Mr. Carnahan Observed An Improper Testing Methodology** ..................... **by Plaintiffs' Expert.** ..................................................................... 8

**III.** **MR. CARNAHAN IS A REBUTTAL EXPERT AND IS PROPERLY ADDRESSING THE IMPROPRIETY OF PLAINTIFF'S EXPERT'S CONCLUSIONS.** ........................................................................................ 9

*A.* *Conair's Expert Is Entitled to Critique Plaintiffs' Expert's Methodology to Point Out the Flaws in the Expert's Conclusions.* ............................... 10

*B.* *Carnahan Is Not Obliged to Provide Absolute Alternatives in Critiquing Plaintiffs' Expert's Conclusion Regarding Causation.* ........................... 11

**IV.** **MR. CARNAHAN DID EXPRESS OPINIONS ON MATTERS   IDENTIFIED, AND IS ENTITLED TO CRITIQUE PLAINTIFFS'  EXPERT'S OPINIONS .. AND TESTING.** ........................................................................................ 12

**V.** **CONCLUSION.** ........................................................................................ 17

ii

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*1st Source Bank v. First Res. Fed. Credit Union,*
  167 F.R.D. 61 (N.D. Ind. 1996) ............................................................................ 11, 15

*Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.,*
  829 F.Supp.2d 802 (D. Minn. 2011) ...................................................................... 14

*Benedict v. United States,*
  822 F.2d 1426 (6th Cir.1987) ................................................................................. 10

*Boyd v. City and County of San Francisco,*
  576 F.3d 938 (9th Cir. 2009) ................................................................................... 4

*Coquina Invs. v. Rothstein,*
  2011 WL 4949191 (S.D. Fla. Oct. 18, 2011) ........................................................ 11

*Deutsch v. Novartis Pharmaceutical Corp.,*
  768 F.Supp.2d 420 (E.D.N.Y.2011).................................................................. 12, 15

*Dukes v. Wal-Mart, Inc.,*
  474 F.3d 1214 (9th Cir. 2007)................................................................................. 4

*Gayton v. McCoy,*
  593 F.3d 610 (7th Cir. 2010)................................................................................... 5

*General Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ............................................................................................... 8

*Heller v. Shaw Industries, Inc.,*
  167 F.3d 146 (3d Cir. 1999).................................................................................... 5

*Holbrook v. Lykes Bros. S.S. Co., Inc.,*
  80 F.3d 777 (3d Cir. 1996)...................................................................................... 5

*In re Cessna 208 Series Aircraft Products Liab. Litig.,*
  2009 WL 1649773 (D. Kan. June 9, 2009) ............................................................ 11

*Manchak v. N–Viro Energy Sys., Ltd.,*
  876 F.Supp. 1123 (CD. Cal. 1994)......................................................................... 11

*Messick v. Novartis Pharmaceuticals Corp.,*
  747 F.3d 1193 (9th Cir. 2014)............................................................................. 4, 6

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.,*
  982 F.Supp.2d 237 (E.D.N.Y. 2013)...................................................................... 10

*Primiano v. Cook,*
  598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010)............................... 6

*Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.,*
  752 F.3d 807 (9th Cir. 2014)................................................................................... 4

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

iii

*Ramirez v. E.I. DuPont de Nemours & Co.,*
   579 Fed. Appx. 878 (11th Cir. 2014) ...................................................... 5

*ROMAG Fasteners, Inc. v. Fossil, Inc.,*
   2014 WL 1246554 (D. Conn. Mar. 24, 2014) ....................................... 11, 14

*Smith v. Wal–Mart Stores, Inc.,*
   537 F.Supp.2d 1302 (N.D. Ga. 2008) .................................................. 14

*Stutzman v. CRST, Inc.,*
   997 F.2d 291 (7th Cir. 1993) ............................................................. 5

*Tedder v. American Railcar Industries, Inc.,*
   739 F.3d 1104 (8th Cir. 2014) ........................................................... 5

*U.S. v. Bonds,*
   12 F.3d 540 (6th Cir. 1993) ............................................................... 5

*U.S. v. Brady,*
   595 F.2d 359 (6th Cir. 1979) ............................................................. 5

*United States v. 17.69 Acres of Land,*
   2004 WL 5632928 (S.D. Cal. 2004) ...................................................... 2

*United States v. Mitchell,*
   365 F.3d 215 (3d Cir.2004) ................................................................ 10

*United States v. Velasquez,*
   64 F.3d 844 (3d Cir.1995) .................................................................. 10

*V & M Star Steel v. Centimark Corp.,*
   678 F.3d 459 (6th Cir. 2012) ............................................................. 5

ROSEN ✧ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

iv

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Defendant Conair Corporation herein opposes Plaintiffs' motion to exclude selected opinions of Robert Carnahan.

## I. INTRODUCTION.

Plaintiffs' efforts to exclude selected opinions of Conair's expert, Robert Carnahan (of Exponent), misses the fundamental purpose of Mr. Carnahan's role as an expert witness in this case. Mr. Carnahan's testimony will critique Plaintiffs' liability expert, Phil Van Herle's (of 4x Laboratories) opinion, destructive testing methodology, and associated conclusions. As such, he is not required, under the law, to offer a definitive alternative cause of failure of any hair dryer. That is Plaintiffs' burden. Mr. Carnahan is allowed to critique Plaintiffs' expert's opinions, including testimony about what is *not* the cause of failure of any hair dryer. Mr. Carnahan was present during Plaintiffs' destructive testing of ten hair dryers, received and analyzed samples taken and all of the raw data received from the testing, then critiques 4x's methodology and reliability of Plaintiffs' expert's conclusions. To do so, it is not a prerequisite that Mr. Carnahan offer a definitive alternative theory of causation, nor is it a prerequisite that Mr. Carnahan conduct his own testing.

Ultimately, it is Plaintiffs' burden to prove there is an underlying design defect with the 259 hair dryer to support Plaintiffs' two theories of this case: (1) violation of the California Song-Beverly Act; and (2) violation of the New York General Business Law §349. Conair's expert may offer rebuttal testimony that calls into question Plaintiffs' expert's methodology and opinions. Those opinions by Mr. Carnahan are based on sound and reasoned analysis of the data and facts in this case. Plaintiffs' challenge to Mr. Carnahan's opinions speaks to the *weight* of such testimony, which is to be determined by the jury, not the *sufficiency* of his testimony, which is properly evaluated under FRE 702 and *Daubert* standards.

If there is any question regarding the bases of Mr. Carnahan's opinions, Conair requests that a 402 hearing be held to address these issues.

1

## II.     MR. CARNAHAN'S OPINIONS ARE NOT SPECULATIVE.

"Unless the expert's opinion is in the realm of mere speculation or guesswork, the expert should be allowed to testify and should be subjected to cross-examination for the jury's consideration. An expert's opinion should not be excluded as speculative unless it is so fundamentally unsupported that it can offer no assistance to the jury." *United States v. 17.69 Acres of Land,* 2004 WL 5632928, at *1 (S.D. Cal. 2004) (internal citations omitted).

The entire basis of the instant motion is reliant on Plaintiffs' selective semantics. Plaintiffs pick and choose isolated portions of Mr. Carnahan's report and deposition testimony to reach the assumption that because Mr. Carnahan used the terms "may" and "may have" in *three* isolated sentences in his 83-page report, this renders his ultimate opinions speculative and inadmissible. Mr. Carnahan does not use the word "may" in any of his opinions.  Plaintiffs' representative of Mr. Carnahan's testimony is taken out of context and does not dilute Mr. Carnahan's ultimate opinions Moreover, Plaintiffs' arguments are also not in conformity with the law on this issue.

### A.     Mr. Carnahan Offered Specific and Definitive Ultimate Opinions Regarding Observed Coil Failures.

Conair retained Mr. Carnahan to critique Plaintiffs' expert's opinions, in part, regarding the coil failure being a design defect as opposed to an isolated manufacturing defect in Neumax manufactured hair dryers. In this regard, Mr. Carnahan intends to offer the following opinions:

1.      Neumax hair dryers with failed heater coils exhibit severe mica board wear.

2.      Relatively minor mica board wear observed in the already heavily used Gutierrez (Sun Luen hair dryer does not support the contention by 4x Forensic that this unit would have experienced a coil-to-coil short circuit with continued use).

3.      Relatively minor mica board wear observed in the Silver Plan (Ellington) hair dryer that was examined and tested indicates that the heater coil failed for reasons other than mica board wear and therefore did not fail for the same

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

2

reason as the Neumax heater coils. Examination of one hair dryer in [sic] not sufficient to draw conclusions of any sort regarding the population of Silver Plan hair dryers.

4.   Hair dryer vibration testing performed by 4x Forensic should not be relied on due to the manner in which the accelerometer was attached to the hair dryers and due to the fact that the hair dryers were allowed to sit freely on a hard lab bench during testing.

5.   Heater coil oscillation is related to acceleration of the mica board, among other things. 4x measured acceleration of the hair dryer housing, not the mica board

6.   4x hair dryer housing acceleration measurements with the hair dryers sitting loose on a table top do not represent normal use conditions.

7.   Changes in hair dryer housing acceleration measured by 4x during dynamic testing were caused by rocking the hair dryer back and forth and have nothing to do with gyroscopic effects.

[Exhibits "A" at pp. 81-82 and "B" at p. 37].

**B.    *Mr. Carnahan Offered Specific and Definitive Ultimate Opinions Regarding Observed Cord Failures.***

Mr. Carnahan offered the following definitive opinions regarding the alleged cord failures and critique of Plaintiffs' expert's opinion:

8.   The Sun Luen (Gutierrez and Czuchaj) hair dryer power cord separations and Sun Luen (Wagenblast) power cord strand fractures were caused by abuse.

9.   Examination and testing performed by 4x Forensic does not support their conclusion that Sun Luen hair dryer cord bushings are defective.  Moreover, 4xd has performed no performance testing or engineering analysis of the power cords or bushings.

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

3

10.  The Sun Luen pre-July 2013 hair dryer equipped with a shorter strain relief was tested in accordance with applicable standards and passed.

11.  Customer abuse of power cords is a known issue and a concern for any consumer product that uses an AC power cord.  Customer abuse of power cords is not specific to Conair Infiniti Pro hair dryers.  No power cord can be designed to last forever or to withstand all conditions.

12.  4x has performed no testing to relate their bushing curvature measurements to line cord performance.

13.  4x did not propose a method to repair hair dryers supplied with allegedly defective bushings.

14.  There is no design defect in the line cord detection circuit due to the lack of a third ground conductor or lack of fuse as asserted by 4x.

[Exhibits "A", pp. 81-82 and "B" at p. 37].

### C.    Reliable and Certain Opinions Are Admissible.

Mr. Carnahan's opinions are sufficiently reliable and certain.  *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814–16 (9th Cir. 2014) (expert's opinion was sufficiently relevant, reliable, and certain, to be admissible and the trial court erred by excluding it).  *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193 (9th Cir. 2014) (expert's opinion based on differential diagnosis was sufficiently relevant and reliable and the court should not have excluded it, even though it failed to rule out all other possible causes); *Boyd v. City and County of San Francisco*, 576 F.3d 938, 945–46 (9th Cir. 2009) (expert's "suicide by cop" theory was sufficiently reliable under Daubert, even if the theory could not be subject to testing and other experts might reach different conclusions); *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214 (9th Cir. 2007), *opinion withdrawn and superseded on denial of reh'g*, 509 F.3d 1168 (9th Cir. 2007), *reh'g en banc granted,* 556 F.3d 919 (9th Cir. 2009), *reh'g en banc*, 603 F.3d 571 (9th Cir. 2010), *cert. granted in part*, 131 S. Ct. 795 (2010), *and rev'd on other grounds*, 131 S. Ct. 2541 (2011) (expert testimony does not need to rise to a quantifiable level of certainty in order to be reliable and admissible).

4

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

Other circuits also concur that exclusion of an expert related to causation is improper because it speaks to the *weight* of the testimony as opposed to the *sufficiency. Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 156–57 (3d Cir. 1999) (expert did not need to rule out all other possibilities for the opinion to be valid) (note that the expert's opinion was properly excluded on other grounds); *Holbrook v. Lykes Bros. S.S. Co., Inc.,* 80 F.3d 777, 785–86, (3d Cir. 1996) (no error in allowing the defendants' expert to testify that a certain product was "a distinct possible cause" of the plaintiff's disease); *V & M Star Steel v. Centimark Corp.,* 678 F.3d 459, 466–68 (6th Cir. 2012) (expert's opinion was sufficiently relevant and sufficiently certain to be admissible. Any weaknesses impacted the weight and not the admissibility of the opinion and thus, the trial court erred by excluding it); *U.S. v. Bonds,* 12 F.3d 540, 558 (6th Cir. 1993) ("Daubert requires only scientific validity for admissibility, not scientific precision."); *U.S. v. Brady*, 595 F.2d 359, 362–63 (6th Cir. 1979) (expert's lack of certainty in an opinion regarding hair comparison affected the weight of the opinion and not the admissibility of it); *Gayton v. McCoy,* 593 F.3d 610, 618–19 (7th Cir. 2010) (expert's opinion regarding causation was not required to be absolutely certain in order to be admissible and the trial court erred by excluding the opinion as unreliable on the basis that it did not rule out certain other possible causes); *Stutzman v. CRST, Inc.,* 997 F.2d 291, 295–96 (7th Cir. 1993) (any lack of certainty in the opinions of experts affected the weight and not the admissibility of their opinions and the trial court did not abuse its discretion by admitting the opinions); *Tedder v. American Railcar Industries, Inc.*, 739 F.3d 1104, 1109–10 (8th Cir. 2014) (expert's testimony regarding causation was sufficiently certain for the jury to consider it); *Ramirez v. E.I. DuPont de Nemours & Co.,* 579 Fed. Appx. 878, 880–83 (11th Cir. 2014) (doctor's testimony regarding lack of causation was sufficiently certain to be admissible).

There is nothing speculative about Mr. Carnahan's ultimate opinions.  Just like Plaintiffs' expert, Mr. Carnahan examined and made observations regarding certain failed Neumax hair dryers.  He also examined and made observations about Sun Luen and Silver Plan manufactured hair dryers. Based on these observations and measurements, he reached

5

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

the above conclusions.  None of these opinions are based on guesswork.  Rather, Mr. Carnahan's opinions criticize Plaintiffs' expert's opinion that there is a coil design defect, as opposed to a manufacturing defect.  Mr. Carnahan's opinions are proper and well within the scope of relevant, reliable expert opinion under *Daubert*.

### D.   Mr. Carnahan Does Not Have to Offer An Ultimate Opinion About What Caused Certain Coil Failures.

Plaintiffs argue that Mr. Carnahan's opinions should be excluded because he does not provide an ultimate opinion as to why certain hair dryers failed.  First, that is an incorrect reading of Mr. Carnahan's report and deposition testimony.  He does provide such opinions.  Second, as a matter of law, he does not have to reach any such conclusion.  "Lack of certainty is not, for a qualified expert, the same thing as guesswork. Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (internal citation omitted)

The Ninth Circuit has similarly stressed that "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science. *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786." *Messick v. Novartis Pharm. Corp.,* 747 F.3d 1193, 1198 (9th Cir. 2014).

Here, Plaintiffs take issue with three isolated sentences of Mr. Carnahan's report. These sentences are on pages 77 and 78 of Mr. Carnahan's report in a discussion wherein Mr. Carnahan was specifically commenting the "September 16, 2015 4x Forensic Report." [Exhibit "A."]

This portion of the report by Mr. Carnahan was dedicated to either agreeing to or critiquing the report of Plaintiffs' expert.  This section goes from pages 77 to 80.  In this section, Plaintiffs point to three sentences:

    1.    "The Silver Plan heater coil may have failed because it was loose.  (p. 77, ¶2, third sentence);

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

6

2.      "Oscillation of the heater coils may result from motor and fan vibration and possibly air flow through the nozzle (p. 77 ¶4);

3.      "The Accelerometer, which is flat, is intended to be rigidly mounted to a flat surface.  Instead, it was non-rigidly mounted to the curved surface of the hair dryer using zip-ties or tape.  This may have allowed for additional vibration between the accelerometer and hair dryer."  (p. 78, ¶1)

[Exhibit "A."]

Contrary to Plaintiffs' word play, Mr. Carnahan's opinion regarding the heater coil failures are not based on speculation, but rather were based on his observations regarding comparative differences between the three failed Neumax hair dryers and the one failed Silver Plan hair dryer. The single cited sentences regarding his analysis cannot be read in a vacuum.  Conair encourages this Court to read pages 77-80 of Mr. Carnahan's report so that the context of the statements are clear.

Regardless, Mr. Carnahan's ultimate opinions (which are on pages 81-82 of his report) are not based upon the three selected sentences, but rather upon the totality of his 82 page report. *See* Exhibit "A."

**1.      Mr. Carnahan's Opinions Regarding the Silver Plan Heater Coil and Potential Oscillations Are Based on Proper Foundation and Are Not Speculative.**

Of the ten hair dryers that were observed by the experts, there was only one Silver Plan manufactured hair dryer that had a failure.  Plaintiff's expert Phil Van Herle concedes that he only observed coil ejections in hair dryers manufactured by Neumax.  He did not observe any hair dryers that failed as a result of a coil ejection that were manufactured by the other three hair dryer manufacturers: Sun Luen, Silver Plan or Yueli.  [Deposition of Van Herle as Exhibit "C" at 173:14-25 (Neumax only); 160:17-22 (he only observed one Silver Plan with coil ejection), but at 150:12-21 (the only Silver Plan coil ejection was a result of a human error, not design defect).]

Nonetheless, Plaintiffs have attempted to use this one failed hair dryer as a catalyst

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

to expand the scope of the failures beyond the Neumax failed hair dryers.[1]

In regard to the one failed Silver Plan hair dryer, Mr. Carnahan observed: (1) The Silver Plan hair dryer sustained a heater coil failure; and (2) the Silver Plan heater coil failure does not appear related to the Neumax heater coil failures. Mr. Carnahan also states that "The Silver Plan heater coil may have failed because it was loose." [Exhibit "A" p. 77, ¶2.] However, this is just a summary of the information that Mr. Carnahan set forth previously on pages 33-39 of his report wherein he opines: "The observed mica board wear is not consistent with that observed in the Neumax hair dryers, and is not sufficient to have allowed the heater coils to contact one another." [*Id* at p. 33, ¶3.]

Mr. Carnahan's ultimate opinion regarding this hair dryer is that "Relatively minor mica board wear [was] observed in the one Silver Plan hair dryer . . . [and] the heater coil failed for reasons other than mica board wear and therefore did not fail for the same reasons as the Neumax heater coils." [*Id.* at p. 81, at ¶7.] Mr. Carnahan continues: "Examination of one hair dryer is not sufficient to draw conclusions of any sort regarding the population of Silver Plan hair dryers." [*Id.*]

This opinion is not unfounded or speculative. See *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered"). Rather, Mr. Carnahan's opinions are based upon his observations and are well-reasoned.

### 2. Mr. Carnahan Observed An Improper Testing Methodology by Plaintiffs' Expert.

Plaintiffs' next two complaints result from Mr. Carnahan's criticism of Mr. Van Herle's collection of vibration measurements.

Mr. Carnahan explicitly observed and opined that the hair dryers were moving during the vibration testing because Mr. Van Herle did not properly secure the testing

---

[1]/ Conair concedes that there was a manufacturing defect in a subset of Neumax hair dryers which prompted the recall. Conair denies there is any design defect in regard to any of the hair dryers. Further there is no evidence that there was a similar failure mode in any hair dryer manufactured by Silver Plan, Sun Luen or Yueli. Nonetheless, Plaintiffs continue to argue that all hair dryers are defective.

8

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

device to the hair dryer. More significantly, Mr. Van Herle later admits this error in his supplemental report. Mr. Van Herle then conducts the vibration testing again (this time outside the presence of Mr. Carnahan). During the deposition of Mr. Van Herle, it was discovered that he again performed the vibration testing incorrectly because he taped the device to the hair dryer instead of attaching it with screws. [Deposition of Van Herle at 175:18-24 ". . . did you follow the instructions . . ? "I did not . . .".] [*See* Exhibit "C."] Mr. Van Herle then prepared a second supplemental report and purportedly performed the vibration testing again for a third time. This issue is the subject of Conair's motion to exclude Mr. Van Herle. [Docket No. 296.]

Nonetheless, Plaintiffs are attempting to restrict Mr. Carnahan from testifying about Mr. Van Herle's improper data collection.

Mr. Carnahan critiques Mr. Van Herle's first testing error by noting that the vibration testing was conducted while the dryers were sitting freely on a wooden table top. The hair dryers were moving while being tested *and would have been vibrating against the table top.*" [Exhibit "A" at p. 78, ¶1.] (emphasis added).

Ultimately, based on the above observations by Mr. Carnahan, he concludes: "Given uncertainty regarding the veracity of the acceleration measurements and the existence of only mild mica board wear in the Sun Luen (Gutierrez) hair dryer (and the Silver Plan hair dryer), we do not believe that 4x's conclusion is based on sound engineering judgment." [*Id.* at p. 78, ¶2.] Mr. Carnahan's opinions are based on a sound foundation of his background and expertise, observations and critique of Plaintiffs' expert's methodology and findings. It would be improper to exclude this opinion.

## III. <u>MR. CARNAHAN IS A REBUTTAL EXPERT AND IS PROPERLY ADDRESSING THE IMPROPRIETY OF PLAINTIFF'S EXPERT'S CONCLUSIONS.</u>

Plaintiffs are confused about their burden. Mr. Carnahan is not obligated to conduct independent testing in order to criticize Plaintiffs' expert's opinions. It is Plaintiffs' burden

9

ROSEN ◊ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

to establish that underlying their New York false advertising claim and California implied warranty claim, that there are two separate design defects for the coil and cord. Just because Mr. Carnahan offered some alternative causes for the failure of a single Silver Plan hair dryer with a coil failure does not render his ultimate opinions speculative that the observed coil failures were not due to a design defect.

Mr. Carnahan's role is to rebut Plaintiffs' expert's testing methodologies and flaws in how the expert reached his conclusions that there is a design defect with the 259 hair dryer.[2]  It is not Conair's burden to prove what the ultimate cause of certain failed hair dryers was, only to dispute Plaintiffs' expert's basis and understanding of causation. Mr. Carnahan does this based on his expertise, observations and critiques of Plaintiffs' expert's methodology and findings in destructive testing.

### A.    Conair's Expert Is Entitled to Critique Plaintiffs' Expert's Methodology to Point Out the Flaws in the Expert's Conclusions.

Plaintiffs do not cite any legal authority that a rebuttal expert must conduct testing or otherwise face exclusion for "speculative" opinions.  That is because this not the standard regarding rebuttal opinions intended to critique an opposing expert's opinions. "Expert opinions … which assess or critique another expert's substantive testimony are relevant." *Nature's Plus Nordic A/S v. Nat. Organics, Inc.,* 982 F.Supp.2d 237, 239 (E.D.N.Y. 2013) (internal citations omitted).  Numerous courts have permitted experts to testify at trial about the reliability of the opinions of opposing experts. *United States v. Mitchell,* 365 F.3d 215, 247 (3d Cir.2004) (error to exclude testimony of qualified opposing expert provided testimony meets criteria for admission under Rule 702); *United States v. Velasquez,* 64 F.3d 844, 852 (3d Cir.1995) (error to exclude expert testimony that called into doubt reliability and credibility of opposing expert's testimony); *Benedict v. United States,* 822 F.2d 1426, 1429 (6th Cir.1987) (expert testimony which directly disproves accuracy of opposing expert methodology and data is proper rebuttal); *Manchak v. N–Viro*

---

[2]/ This is why the three sentences Plaintiffs claim are speculative are all contained in a section entitled, "Review of September 15, 2015 4x Forensic Report," in Mr. Carnahan's Report.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DEFENDANT'S EXPERT ROBERT A. CARNAHAN

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

*Energy Sys., Ltd.,* 876 F.Supp. 1123, 1133 (CD.Cal.1994) (rebuttal expert testimony admitted to challenge validity of test relied on by opposing expert).

"Contrary to plaintiffs' suggestion, a rebuttal expert who critiques another expert's theories or conclusions need not offer his own independent theories or conclusions." *In re Cessna 208 Series Aircraft Products Liab. Litig.,* 2009 WL 1649773, at *1 (D. Kan. June 9, 2009) ("The expert reports of [defendant's] experts primarily critique the methodology and scientific principles which plaintiffs' experts use to arrive at their conclusions. Such evidence, which attacks the opposing expert's substantive testimony, is proper rebuttal."); *ROMAG Fasteners, Inc. v. Fossil, Inc.*, 2014 WL 1246554, at *4 (D. Conn. Mar. 24, 2014) ("Contrary to Defendants' argument, Armstrong's proposed testimony regarding a consumer experiment is not incomplete. Armstrong does not propose to testify regarding the hypothetical outcome of the proposed experiment. Rather, he proposes to testify, based on his extensive experience in marketing and survey research as to the flaws in Jay's survey, and how those flaws could have been corrected with a different design. The Court concludes, based on Armstrong's extensive marketing experience, that such rebuttal testimony is relevant, reliable, and would be helpful to the jury").

**B.**   ***Carnahan Is Not Obliged to Provide Absolute Alternatives in Critiquing Plaintiffs' Expert's Conclusion Regarding Causation.***

Not only is testing not a requirement, but a number of District Courts have held that rebuttal expert witnesses may criticize other experts' theories and calculations without offering alternatives. *See, e.g., Coquina Invs. v. Rothstein*, 2011 WL 4949191, at *5 (S.D.Fla. Oct. 18, 2011) ("A rebuttal expert can testify as to the flaws that she believe[s] are inherent in another expert's report that implicitly assumes or ignores certain facts.") (citation omitted); *Pandora Jewelers 1995, Inc.,* 2011 WL 2295269, at *6 (admitting a rebuttal expert who "merely provides other factors that [the plaintiff's expert] should have considered in his report, based on her economics expertise," explaining that "[h]ighlighting such factors will be helpful for the jury to weigh the evidence presented at trial."); *1st Source Bank v. First Res. Fed. Credit Union,* 167 F.R.D. 61, 65 (N.D.Ind.1996) (allowing

11

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

a rebuttal expert witness to criticize the plaintiff's damages theories and calculations without offering any alternatives); *Deutsch v. Novartis Pharm. Corp.,* 768 F.Supp.2d 420, 481 (E.D.N.Y.2011) (refusing to exclude rebuttal experts who focused on the reliability of plaintiff's expert's conclusions).

Plaintiffs' claim that Mr. Carnahan should be excluded because for an alleged failure to conduct any testing or to offer alternative causes is baseless. Mr. Carnahan is properly being offered as a rebuttal witness to criticize Plaintiffs' expert's theories and calculations and his opinions are based on a sound foundation of observing testing performed by Plaintiffs' expert.

## IV. MR. CARNAHAN DID EXPRESS OPINIONS ON MATTERS IDENTIFIED, AND IS ENTITLED TO CRITIQUE PLAINTIFFS' EXPERT'S OPINIONS AND TESTING.

Plaintiffs identify a list of topics for which they incorrectly identify that Mr. Carnahan did not express any opinions. Plaintiffs' Motion is vague, ambiguous and convoluted as to exactly what opinions they are seeking to exclude. [*See,* Motion, 9:17-10:9.] From what Conair can decipher, contrary to Plaintiffs' assertion, Mr. Carnahan either expressed an opinion, or otherwise, is entitled to express an opinion as addressed below.

1. **"Whether the materials specifications of the three editions of the dryers are nearly identical."**

3. **"Whether there are any material differences in the materials used to manufacture the Silver Plan, Sun Peun, and Neumax mica boards and/or whether they experienced the same rate of wear"**

Mr. Carnahan was never actually asked if there were any material differences or whether the specifications were nearly identical. There are 8 pages of deposition transcript testimony of Plaintiffs' counsel requesting that Mr. Carnahan read and identify the product specifications for three 259 hair dryer manufacturers, which he did. At most, Mr. Carnahan

12

was asked if he found any material differences between the Neumax, Silver Plan and Sun Luen *mica boards*. [Plaintiffs' Motion, Exhibit "2" at 47:5-23.]  Mr. Carnahan was not asked his opinion, one way or the other about the whether the material specifications were nearly identical and whether it mattered.

Moreover, the product specification documents speak for themselves.  It is unclear why an expert opinion is necessary on this topic, requiring scientific, technical or other specialized knowledge, so much as a reading comprehension.

Further, Plaintiffs' won expert cannot speak to whether the mica boards experienced the same rates of wear.  Thus, if Mr. Carnahan is for any reason excluded from providing this opinion, Plaintiffs' expert, Van Herle, should also be excluded.

Accordingly, Mr. Carnahan should not be precluded from addressing these two topics regarding material specification differences.

> **2.** **"The conduct of any FTIR, SEM or other material testing, or opinions on whether the polymer or metallic components of the three editions of the Subject Hair Dryer are made from nearly identical materials and/or any opinions based thereon."**

The term "conduct" is vague and ambiguous and it is not clear what Plaintiffs are referring to.  It is not true that Mr. Carnahan did not express an opinion about the metallic components of the hair dryer.  As indicated in his Report, Mr. Carnahan stated: "Review of 4x photomicrographs of these samples indicates that they all have similar microstructure and do not exhibit microstructural abnormalities." [Exhibit "A", p. 73, ¶1.]

Additionally, Mr. Carnahan testified that he reviewed the results of testing performed by 4x.  Plaintiff's expert conducted very limited mica board testing from one hair dryer that was provided to Conair's expert.  Thus, if Mr. Carnahan is excluded from testifying about this topic, Plaintiffs' expert should similarly be limited in his testimony at trial regarding material testing whether the mica boards are "made from nearly identical materials."

Moreover, the fact that Mr. Carnahan did not conduct his own material testing or

Rosen ◆ Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212

13

alternative analysis is not a basis to exclude his opinion on such matters.  An expert is entitled to criticize other experts' theories and testing without conducting their own testing. *See Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F.Supp.2d 802, 834 (D. Minn. 2011) ("[R]ebuttal expert witnesses may criticize other experts' theories and calculations without offering alternatives."); *Smith v. Wal–Mart Stores, Inc.*, 537 F.Supp.2d 1302, 1324–25 (N.D. Ga. 2008) (holding that rebuttal expert could critique opposing expert's survey based on his specialized knowledge and experience without conducted his own tests or experiments); *ROMAG Fasteners, Inc. v. Fossil, Inc*., 2014 WL 1246554, at *4 (D. Conn. Mar. 24, 2014) (refusing to exclude expert proposing to testify about flaws in opposing expert's survey research and how could be corrected).

Accordingly, because Mr. Carnahan did provide an opinion as to the composition of certain component parts based on what was provided, he should not be excluded for a claimed lack of opinion.  Further, that he did not conduct his own testing is not a basis to exclude his opinion on this topic.

> **4.** **"The conduct of any testing on and/or any opinion on whether the new cord design of the initial version of the Sun Leun [sic] edition of the Subject Hair Dryer resulted in 'improved endurance' of its power cord."**

> **5.** **"No opinion on whether the new cord design of the Sun Luen edition of the Subject Hair Dryer improved the endurance of its power cords."**

Again, the term "conduct" is vague and ambiguous as to what Plaintiffs are seeking to exclude Mr. Carnahan from testifying about. To the extent Plaintiffs seek to exclude Mr. Carnahan from testifying about whether or not the 3 inch cord bushing "improved endurance" of the power cord, Conair does not oppose this.

> **6.** **"No opinion on Conair's purpose for the cord redesign of the Sun Leun [sic] edition of the Subject Hair Dryer."**

The purpose of the cord redesign does not require expert testimony to the extent the

14

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

purpose is set forth in Conair's engineering documents.  Mr. Carnahan was questioned about this during his deposition and he testified that the engineering report indicated that the purpose was for "improved endurance of cord flexing."   Thus, the document speaks for itself and there is no basis of reason to exclude Mr. Carnahan from addressing the same.

### 7.    "No opinion on what caused the coils in the Ellington dryer to fail and separate."

Mr. Carnahan does provide an opinion about what may have caused the Ellington coil to fail.  He opines that the Silver Plan heater coil may have failed because it was loose, something Plaintiffs' expert similarly conceded and agrees may have caused the Ellington coil failure.  Exhibit "C" at 160:17-22 (he only observed one Silver Plan with coil ejection).

Ultimately, Mr. Carnahan opines that "relatively minor mica board wear observed in the one Silver Plan (Ellington hair dryer that was examined and tested indicates that the heater coil failed for reasons other than mica board wear and therefore did not fail for the same reason as the Neumax heater coils." [Exhibit "A" at p. 81, ¶7.]   Further, as an expert critiquing Plaintiffs' expert's conclusions about the cause of the Ellington hair dryer,  Mr. Carnahan need not offer definitive alternative causes for the failure.  *1st Source Bank v. First Res. Fed. Credit Union,* 167 F.R.D. 61, 65 (N.D.Ind.1996) (allowing a rebuttal expert witness to criticize the plaintiff's damages theories and calculations without offering any alternatives); *Deutsch v. Novartis Pharm. Corp.,* 768 F.Supp.2d 420, 481 (E.D.N.Y.2011) (refusing to exclude rebuttal experts who focused on the reliability of plaintiff's expert's conclusions).

Accordingly, there is no legitimate basis to exclude Mr. Carnahan's opinion on this the topic.

### 8.    "No vibration testing of the three editions of the Subject Hair Dryer, and/or any opinions based thereon"

Plaintiffs are vague and ambiguous about what "three editions" of hair dryers they are claiming Mr. Carnahan should be excluded from opining about.  Nevertheless, as

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

15

addressed herein, it is not a perquisite that Mr. Carnahan conduct vibration testing independently in order to offer an opinion regarding vibration testing.  As such, contrary to Plaintiffs' assertion, Mr. Carnahan has opinions about vibration testing and the impropriety of Plaintiffs' expert's vibration testing (which Plaintiffs' expert admits to failing to follow manufacturer's instructions when using the accelerometer to measure vibrations).

**9.**  **"No testing of the power cords from any of the three editions of the Subject Hair Dryer, and/or any opinions based thereon"**

Again, Plaintiffs are vague and ambiguous about what "three editions" of hair dryers they are claiming Mr. Carnahan should be excluded from opining about.  Nevertheless, it is not a prerequisite that Conair's expert perform power cord testing before being permitted to provide an opinion about power cord testing, or critique Plaintiffs' expert's testing methodology or reliability of his conclusions.

In critiquing Plaintiffs' expert's testing, Exponent reviewed Plaintiffs' expert's metallographic examination, and made observations regarding the same.  [Exhibit "A" at p. 64.]  Further, Mr. Carnahan measured hardness of cord bushings from samples removed from the destructively tested hair dryers.  [*Id.* ¶2.]  Exponent also reviewed Plaintiffs' expert's FTIR analysis and graphed the results. [*Id.* at p. 70.]  Carnahan  has a foundation and basis for critiquing Plaintiffs' power cord testing having been present during testing, and having reviewed and analyzed 4x's test results.  Accordingly, there is no basis to exclude Mr. Carnahan from providing an opinion about power cord testing.

///
///
///
///
///
///

Rosen ◇ Saba, LLP
9350 Wilshire Blvd., Suite 250
Beverly Hills, California 90212

16

## V.   __CONCLUSION.__

Defendant Conair Corporation requests that the Court deny Plaintiffs' motion to exclude certain of Mr. Carnahan's opinions.  If there is any question as to any of the opinions raised by Plaintiffs' motion, Conair requests that the Court hold a 402 hearing to address these issues.


DATED: August 8, 2016                    Rosen ✧ Saba, LLP

                                         By:   s/   Ryan D. Saba
                                               Ryan D. Saba, Esq.
                                               Momo E. Takahashi, Esq.
                                               Attorneys for Defendant,
                                               CONAIR CORPORATION

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DEFENDANT'S EXPERT ROBERT A. CARNAHAN

# PROOF OF SERVICE

**STATE OF CALIFORNIA** )
)       ss
**COUNTY OF LOS ANGELES** )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 9350 Wilshire Blvd., Suite 250, Beverly Hills, California 90212.

On **August 8, 2016,** I served the foregoing document described as: **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE INADMISSIBLE, SPECULATIVE, UNFOUNDED EXPERT OPINION TESTIMONY OF DEFENDANT'S ENGINEERING EXPERT ROBERT A. CARNAHAN** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

## PLEASE SEE ATTACHED SERVICE LIST

[]    By Mail -

     []      As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Beverly Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[√]      By electronic transmission to all parties at the recipients at the electronic address above by using the Court's CM/ECF electronic filing system.

[√]      FEDERAL    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I also declare under penalty of perjury under the laws of the United States of America that      the above is true and correct.

Executed on **August 8, 2016**, at Beverly Hills, California.

/s/  Ryan D. Saba
Ryan D. Saba, Esq.

ROSEN ◇ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

**SERVICE LIST**

| Katherine J. Odenbreit, Esq.<br>ODENBREIT LAW, APC<br>16835 Algonquin St Ste 221<br>Huntington Beach, California 92649 | Attorneys for Plaintiff Cynthia Czuchaj, Patricia Carter, Barbara McConnell, Angelique Mundy:<br><br>Tel: (888) 490-3510<br>Fax: (714) 908-7628<br><br>Email: kodenbreit@kjolaw.com |
|---|---|
| Isam C. Khoury, Esq.<br>Michael D. Singer, Esq.<br>Jeff Geraci, Esq.<br>COHELAN, KHOURY & SINGER<br>605 C. Street, Suite 200<br>San Diego, California 92101 | Attorneys for Plaintiff Cynthia Czuchaj, Patricia Carter, Barbara McConnell, Angelique Mundy:<br><br>Tel: (619) 595-3001<br>Fax: (619) 595-3000<br><br>Email: ikhoury@ckslaw.com<br>Email: msinger@ckslaw.com<br>Email: jgeraci@ckslaw.com |
| Brian D. Chase, Esq.<br>Jerusalem F. Beligan, Esq.<br>BISNAR CHASE<br>1301 Dove Street, Suite 120<br>Newport Beach, California  92660 | Attorneys for Plaintiff Cynthia Czuchaj, Patricia Carter, Barbara McConnell, Angelique Mundy:<br><br>Tel: (949) 752-2999<br>Fax: (949) 752-2777<br><br>Email: bchase@bisnarchase.com<br>Email: jbeligan@bisnarchase.com |

ROSEN ◊ SABA, LLP
9350 WILSHIRE BLVD., SUITE 250
BEVERLY HILLS, CALIFORNIA 90212

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DEFENDANT'S EXPERT ROBERT A. CARNAHAN