UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA L. CZUCHAJ, individually and on behalf of all others similarly situated, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>CONAIR CORPORATION, a Delaware corporation,<br><br>                              Defendant. | Case No.: 3:13-cv-01901-BEN-RBB<br><br>**ORDER GRANTING IN PART MOTION TO SEVER AND TRANSFER CERTAIN CLAIMS** |

   Defendant Conair Corporation filed a Motion to Sever and Transfer Certain Claims.  (ECF No. 290.)  Defendant seeks the following orders:  (1) to sever individual claims from class claims; (2) to sever the California subclass count from the New York subclass count; (3) to transfer the New York subclass count to the Southern District of New York or the District of Connecticut; and (4) to transfer the individual claims to their respective Federal District Courts.  (*Id.*)  Plaintiffs oppose the Motion.  (ECF No. 299.)

   As explained below, the Court severs and transfers the non-California individual claims.  The Court declines to sever the California subclass claim from the New York subclass claim.

1

**BACKGROUND**

This action arises from two alleged defects in Defendant Conair's Infinity Pro 1875 Watt hair dryer, a defect to the strain relief in the product's cord and a defect to coils in the barrel of the product. Plaintiffs argue that all hair dryers suffered from the coil defect, even if the hair dryers first failed due to problems with the cord. There are four named plaintiffs: Plaintiffs Czuchaj, Carter, McConnell, and Mundy. Czuchaj is the only California resident. Carter resides in New York, McConnell resides in Michigan, and Mundy resides in Pennsylvania. The hair dryers of Czuchaj and McConnell had cord failures, while the hair dryers of Carter and Mundy failed because of the coil issue.

On March 30, 2016, the nationwide damages class was decertified, and on May 24, 2016, the nationwide injunctive relief class was decertified. (ECF Nos. 248, 280.) After decertification and summary judgment, by the Court's count, twenty-seven claims remain, only two of which have been certified for a class action. The two class claims are a California damages subclass for violation of the Song-Beverly Warranty Act, represented by Plaintiff Czuchaj, and a New York damages subclass for violation of New York General Business Law section 349, represented by Plaintiff Carter. There are twenty-five individual claims asserted under five states' laws: California, New York, Pennsylvania, Ohio, and Michigan. Each plaintiff individually asserts claims based on strict products liability, implied warranty, and consumer protection laws.[1]

---

[1] Based on the Second Amended Complaint and the history in this case, the following individual claims remain:

By Plaintiff Czuchaj: (1) breach of implied warranty under California law; (2) strict products liability for defective design or manufacture under California law; (3) strict products liability for failure to warn under California law; and (4) violation of the Magnuson-Moss Warranty Act ("MMWA").

Defendant seeks to sever and transfer Plaintiffs Mundy and McConnell's individual claims because it would be inefficient, cumbersome, and prejudicial to try their cases with the other claims. Defendant asserts that their claims are factually and legally different than the class claims. Defendant requests, but does not address,

---

By Plaintiff Carter: (1) breach of implied warranty under New York law; (2) strict products liability for defective design or manufacture under New York law; (3) strict products liability for failure to warn under New York law; and (4) violation of the MMWA.

By Plaintiff Mundy: (1) breach of implied warranty under Pennsylvania law; (2) strict products liability for defective design or manufacture under Pennsylvania law; (3) strict products liability for failure to warn under Pennsylvania law; (4) breach of the Pennsylvania Unfair Trade Practices and Consumer Protection Act; and (5) violation of the MMWA.

By Plaintiff McConnell: (1) breach of implied warranty under Michigan law; (2) strict products liability for defective design or manufacture under Michigan law; (3) strict products liability for failure to warn under Michigan law; (4) violation of the Michigan Consumer Protection Act; (5) violation of the Michigan Product Liability Act; (6) breach of implied warranty in tort under Ohio law; (7) violation of the Ohio Product Liability Act; (8) violation of the Ohio Statutory Inadequate Warning Law; (9) breach of implied warranty under Ohio law; (10) strict products liability for defective design or manufacture under Ohio law; (11) strict products liability for failure to warn under Ohio law; and (12) violation of the MMWA.

The Court expresses no opinion whether all of these claims could be maintained or whether any are duplicative of others. The only claims dismissed from this action have been Plaintiffs' claims under California's Consumer Legal Remedies Act and Unfair Competition Law. (ECF No. 251.) When the Court declined to certify a class for strict products liability for design defect and failure to warn, those claims remained as individual claims alleged on behalf of each Plaintiff. Similarly, when the Court decertified the nationwide class for common law implied warranty claims and violations of the MMWA, those claims survived as individual claims of each Plaintiff. *See Smith v. CRST Van Expedited, Inc.*, No. 10-cv-1116, 2012 WL 5873701, at *3 (S.D. Cal. Nov. 20, 2012) ("[T]hat claim was decertified, and thus only remains as an individual claim.").

severance of Plaintiffs Czuchaj and Carter's individual claims and transfer of Carter's claims to the Southern District of New York or the District of Connecticut.

Plaintiffs agree to sever the individual claims of Mundy and McConnell but do not consent to transfer.  They believe that Mundy and McConnell's claims should be stayed until completion of the class trial.

Defendant also requests severance of the California subclass from the New York subclass and transfer of the New York subclass to an appropriate district court.  Defendant argues severance is necessary to avoid prejudice to Conair and promote judicial economy.  Plaintiffs reject Defendant's contentions.

## DISCUSSION

### I. Defendant's Motion to Sever

**A. Legal Standard Governing Severance**

A court has broad discretion to sever claims under Federal Rule of Civil Procedure 21, which permits a court to "sever any claim against a party." Fed. R. Civ. P. 21.  In considering whether to sever a claim under Rule 21, the court considers the following factors:  (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.  *Anticancer, Inc. v. Pfizer Inc.*, No. 11-cv-107, 2012 WL 1019796, at *1 (S.D. Cal. Mar. 26, 2012).

**B. The Court Severs the Non-California Individual Claims**

Severance of Plaintiffs Carter, McConnell, and Mundy's individual claims under the laws of New York, Ohio, Michigan, and Pennsylvania will promote judicial economy and avoid prejudice to both parties.  Although Plaintiffs' claims all arise from alleged defects to the same hair dryer, the facts differ regarding each Plaintiff's use (and potential misuse) of the product and resulting damages.  There is a risk that a jury might conclude that one plaintiff's misuse of a product bars all of the other plaintiffs'

individual claims. Similarly, "one plaintiff, despite a weaker case of causation, could benefit merely through association with the stronger plaintiff's case." *Rubio*, 2016 WL 3097292, at *6. Furthermore, the numerous individual claims raise different legal issues arising under different state laws. Trying the claims together would require the Court to decide issues of foreign law. It would also require the jury to apply four different fact patterns to jury instructions on five state's laws. This would be cumbersome, inefficient, confusing to the jury, and potentially prejudicial to both parties.

The Court finds that the similarities in the claims are not enough to overcome the risk of jury confusion and prejudice. *Id.* at *5 ("[T]he Court need not decide whether Plaintiffs' claims are factually similar enough to constitute the same transaction or occurrence, because even if their claims did [arise from the same transaction and occurrence and involve common questions of fact and law], the interests of fairness and efficiency would dictate that the Court exercise its discretion to sever Plaintiffs' claims."). Plaintiffs' rights will not be prejudiced by severance, as each is free to proceed with her own individual claims. *Id.* at *6. Therefore, the Court exercises its discretion to sever the non-California individual claims. As explained below, the Court transfers these claims to their respective Federal District Courts.

### C. The Court Declines to Sever the California Subclass Claim from the New York Subclass Claim

The Court denies Defendant's Motion to the extent it seeks to sever the California subclass count from the New York subclass count. The crux of this case has always been about the class allegations. Moreover, because Plaintiffs allege that the coil defect was present in all hair dryers, regardless of whether that defect actually manifested, the parties will have to present the same expert evidence in both cases. Further, instructing the jury on six claims under two state's laws—with only one claim arising under foreign law—does not pose the same risk of confusion and prejudice that could have resulted from asking the jury to resolve twenty-seven claims under five

state's laws. Thus, the Court will maintain jurisdiction over the California law-based claims—the class and individual claims—and the New York subclass claim.

## II. Defendant's Motion to Transfer

### A. Legal Standard Regarding Transfer

District courts have broad discretion to transfer a case to another court. *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1212 (S.D. Cal. 2013). A court may transfer an action to a different district court "[f]or the convenience of the parties and witnesses, in the interest of justice," if the case could have originally been brought in the transferee court. 28 U.S.C. § 1404(a). The transferee court must have subject matter jurisdiction and be a proper venue for the action, and the defendant must be subject to personal jurisdiction in the district. *Rubio v. Monsanto Co.*, No. CV 15-07426, 2016 WL 3097292, at *7 (C.D. Cal. Mar. 24, 2016).

In determining whether transfer would serve "the convenience of the parties and witnesses" and "the interest of justice," courts look to the following factors: (1) the plaintiffs' choice of forum; (2) the extent to which there is a connection between the plaintiffs' causes of action and this forum; (3) the convenience of parties; (4) the convenience of witnesses, (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (6) the ease of access to sources of proof; (7) the existence of administrative difficulties resulting from court congestion; (8) whether there is a "local interest in having localized controversies decided at home"; (9) whether unnecessary problems in conflict of laws, or in the application of foreign law, can be avoided; and (10) the unfairness of imposing jury duty on citizens in a forum unrelated to the action. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1156 (S.D. Cal. 2005).

### B. The Court Transfers the Non-California Individual Claims

The Court transfers Plaintiffs Carter, McConnell, and Mundy's individual claims to the U.S. District Courts for the Western District of New York, Eastern District of Michigan, and Middle District of Pennsylvania, respectively. The Court explains below

why the jurisdictional requirements for filing actions in those courts are satisfied and why the factors weigh in favor of transfer.

1. <u>Carter's Case Could Have Been Filed in the Western District of New York</u>

Carter could have brought her claims in the U.S. District Court for the Western District of New York. First, Defendant is subject to personal jurisdiction in the Western District because it supplies goods within the District and Carter's cause of action "arises from" that act.[2] N.Y. C.P.L.R. § 302(a) (New York long-arm statute). According to the Second Amended Complaint ("SAC"), Defendant sold its products in the Western District, Carter purchased her hair dryer from a store in the District, and Carter was subsequently injured by the hair dryer. SAC ¶ 23; *Stephan v. Babysport, LLC*, 499 F. Supp. 2d. 279, 286 (E.D.N.Y. 2007) ("Proof of one transaction, though the defendant never entered New York, may be sufficient to confer jurisdiction 'so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted.'").

Second, venue is proper in the Western District because, pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2), venue is proper for corporations in any district in which a court has personal jurisdiction over that corporation.

Third, the Western District of New York would have federal question subject matter jurisdiction because Carter pled a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, a claim arising under federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) ("[F]ederal question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law.")

---

[2] Further, Defendant does not appear to contest that it would be subject to personal jurisdiction in New York.

### 2. McConnell's Case Could Have Been Filed in the Eastern District of Michigan

Similarly, McConnell could have brought her claims in the U.S. District Court for the Eastern District of Michigan. The district court has personal jurisdiction over Defendant under Michigan's long-arm statute because it "caus[ed] . . . consequences to occur in the state resulting in an action for tort."[3] Mich. Comp. Laws § 600.715. According to the SAC, McConnell, a Michigan citizen residing within the Eastern District, suffered property damage when her Conair hair dryer failed. SAC ¶ 22. Again, venue in the Eastern District is proper under 28 U.S.C. § 1391(b)(1) because the court has personal jurisdiction over Defendant. And, the court would have subject matter jurisdiction because McConnell pled a federal law cause of action: violation of the Magnuson-Moss Warranty Act.

### 3. Mundy's Case Could Have Been Filed in the Middle District of Pennsylvania

Mundy's claims could have been brought in the U.S. District Court for the Middle District of Pennsylvania. The district court will have personal jurisdiction over Mundy's claims.[4] The Pennsylvania long-arm statute permits the exercise of personal jurisdiction over a defendant that transacts business in the Commonwealth or that causes harm or tortious injury by an act in the Commonwealth. *See* 42 Pa. Cons. Stat. § 5322. Here, the SAC alleges that Mundy, a resident of the Middle District, purchased her Conair hair dryer at a Wal-Mart retail store in the Middle District and was subsequently injured when it failed. SAC ¶ 21. As explained above, venue is proper

---

[3] Again, Defendant does not appear to dispute that it would be subject to personal jurisdiction in the Eastern District of Michigan.

[4] Defendant does not contest that it would be subject to personal jurisdiction in the Middle District of Pennsylvania.

under 28 U.S.C. § 1391(b)(1), and subject matter jurisdiction exists because McConnell pled a violation of the Magnuson-Moss Warranty Act.

### 4. The Relevant Factors Weigh in Favor of Transferring Plaintiffs' Claims to their Respective District Courts

As noted, courts consider a variety of factors in determining whether a transfer would serve "the convenience of the parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404. Here, these factors weigh in favor of transfer. Importantly, there is no connection between Carter, McConnell, and Mundy's cases and this forum. Their claims did not arise in this forum and there is no evidence related to their claims in this forum. The parties will have to travel across the country to this Court to try their case. Any witnesses specific to their individual claims will also have to travel to this forum. Although a plaintiff's choice of forum is a factor to consider, that choice is accorded less weight when the plaintiff does not reside in the forum or "where the action has little connection with the chosen forum." *Saleh*, 361 F. Supp. 2d at 1157.

This is not a "localized controversy" that the Southern District of California has an interest in having decided here. "Plaintiffs are not residents of this district, the alleged acts . . . that underlie plaintiffs' claims did not occur in this district, and California does not have any significant interest in applying and interpreting" foreign state's laws in this case. *Id.* at 1167. It would burden a local jury to decide foreign plaintiffs' claims that arise under foreign laws. In contrast, the Western District of New York, the Eastern District of Michigan, and the Middle District of Pennsylvania would have a strong interest in adjudicating claims that arose from injuries to their residents and which concern their state's laws. It would not be an undue burden for jurors in those districts to resolve local controversies.

Therefore, considering the factors, the Court concludes that transfer is warranted "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

/ / /

## CONCLUSION

The Court severs the individual claims of Plaintiffs Carter, McConnell, and Mundy. Carter's claims are transferred to the U.S. District Court for the Western District of New York. McConnell's claims are transferred to the U.S. District Court for the Eastern District of Michigan. Mundy's claims are transferred to the U.S. District Court for the Middle District of Pennsylvania.

**IT IS SO ORDERED.**

Dated: August 10, 2016

*[signature]*
Hon. Roger T. Benitez
United States District Judge