1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9         SOUTHERN DISTRICT OF CALIFORNIA

10

11   CYNTHIA L. CZUCHAJ, individually          Case No.:  3:13-cv-01901-BEN-RBB
     and on behalf of all others similarly
12   situated, et al.,                         **ORDER GRANTING IN PART**
                                               **DEFENDANT'S MOTION TO**
13                          Plaintiffs,        **MODIFY SUBCLASS DEFINITIONS**

14   v.

15   CONAIR CORPORATION, a Delaware
     corporation,
16
                            Defendant.
17

18

19          Defendant Conair Corporation has moved to modify the definitions of the New

20   York and California subclasses.  (ECF No. 298.)  Plaintiffs opposed (ECF No. 312), and

21   Defendant filed a reply (ECF No. 322).  Thereafter, the Court ordered supplemental

22   briefing on how the existing subclasses satisfy the typicality requirement of Federal Rule

23   of Civil Procedure 23(a)(3), and each party filed the requested briefs.  (ECF Nos. 329,

24   330.)

25          For the reasons stated below, the Court **GRANTS** Defendant's motion in part.

26                              **BACKGROUND**

27          This action arises from two alleged defects in Defendant's Infinity Pro 1875 Watt

28   model 259 hair dryer:  a defect to the strain relief in the product's cord and a defect to

1

coils in the barrel of the product.  There are two class claims:  (1) a New York damages subclass for violation of New York General Business Law section 349, represented by Plaintiff Patricia Carter, whose hair dryer failed because of the coil issue, and (2) a California damages subclass for violation of the Song-Beverly Warranty Act, represented by Plaintiff Cynthia Czuchaj, whose hair dryer failed because of the cord issue.

There are four manufacturers of the model 259 hair dryer:  Sun Luen, Neumax, Silver Plan, and Yueli.[1]  Throughout this litigation, Plaintiffs have maintained that the *coil* defect arose in all relevant hair dryers, regardless of manufacturer.  (*See, e.g.*, Pls.' Mot. for Class Certification ("Class Cert. Mot.") at 1 [ECF No. 156]; Pls.' Reply In Support Of Mot. for Class Certification ("Class Cert. Reply") at 4, 11 [ECF No. 166]; Preliminary Engineering Analysis of Pls.' Engineering Expert ("Pls.' Eng'g Expert Prelim. Rpt.") [ECF No. 296-3]; Supplemental Engineering Analysis of Pls.' Engineering Expert ("Pls.' Eng'g Expert Suppl. Rpt.") [ECF No. 296-5]; Pls.' Opp'n to Mot. to Modify Subclasses ("Pls.' Opp'n") at 15 [ECF No. 312].)  They allege that the *cord* defect occurred in Sun Luen-manufactured hair dryers only.  (Class Cert. Mot. at 1; Class Cert. Reply at 2-3; Pls.' Eng'g Expert Prelim. Rpt. at 19; Pls.' Eng'g Expert Suppl. Rpt. at 18.)[2]

---

[1] In their class certification motion, Plaintiffs concede that "it is unclear if [model] 259s . . . produced [by Yueli] are part of the potential class."  (ECF No. 156 at 9.)

[2] In Plaintiffs' class certification papers, they appear to concede that Yueli-manufactured hair dryers did not contain defects because their arguments are limited to the defects in the Sun Luen, Neumax, and Silver Plan-manufactured hair dryers.  (*See, e.g.* Class Cert. Mot. at 1; Class Cert. Reply at 2-4.)  However, in their Opposition to this motion, they argue that the subclasses include hair dryers from all factories.  (Pls.' Opp'n at 12-14.)  Therefore, this Court will assume that Plaintiffs seek to include Yueli-manufactured hair dryers in the classes.  As explained below, because Plaintiffs proffered no expert evidence that hair dryers from Yueli failed because of the cord or coil failure, or likely would have failed because of either failure, those hair dryers cannot be included within the classes.

Plaintiff Carter used a hair dryer made by Neumax.  Therefore, under Plaintiffs' theory, Carter's hair dryer only had a coil defect.  Plaintiff Czuchaj used a Sun Luen hair dryer.  Accordingly, under Plaintiffs' theory, Czuchaj's hair dryer had a cord and coil defect.

Defendant seeks to narrow the definitions of each subclass.  The current definition of both subclasses is as follows:  All New York or California residents who purchased either a model 259 or 279[3] Infiniti Pro 1875 Watt hair dryer, between August 15, 2009 and the present, sold by Defendant Conair Corporation directly or through a retailer for primarily personal, family, or household purposes, and not for resale. (Order Granting In Part Pls.' Mot. for Approval of Class Notice [ECF No. 274].)

Defendant requests the Court change the New York subclass definition to:  "Any consumer who purchased in the state of New York, a Conair model 259 or 279 Infiniti Pro 1875 Watt hair dryer, manufactured by Neumax, any time between December 17, 2010 and the present."  (Def.'s Mot. to Modify Subclasses ("Def.'s Mot.") at 2 [ECF No. 298].)  Defendant contends the definition should be modified for the following reasons:  (1) the statute of limitations is three years, not four years, for a N.Y. GBL § 349 claim; (2) a proper plaintiff for a GBL § 349 claim is a consumer who purchases a product in New York, not a New York resident; and (3) Plaintiffs' expert concedes that only hair dryers manufactured by Neumax have ejected coils, so the class should be limited to those hair dryers, not all hair dryers.  Defendant also asks the Court to "clarify that the New York subclass consists only [of] those individuals who have experienced a coil failure."  (Def.'s Mot. at 7.)  Defendant contends that Plaintiff Carter does not have standing to represent cord defect claims and that her coil claims are not typical of cord claims.

---

[3] The "[m]odel 279 and 259 are identical, but the 279 is sold only to Bed Bath & Beyond."  (Class Cert. Mot. at 2.)  The Court refers to the hair dryer as "model 259" for consistency.

Similarly, Defendant asks the Court to modify the California subclass definition to: "Any consumer who purchased in the state of California, a Conair model 259 or 279 Infiniti Pro 1875 Watt hair dryer, that has a plug date stamp between SE0809 and SE0713." (Def.'s Mot. at 2.) The specified plug date stamps indicate a hair dryer manufactured by Sun Luen between August 2009 and July 2013. Defendant argues that the definition should be altered because (1) the only hair dryers at issue were manufactured by Sun Luen prior to July 26, 2013 because, at that time, the problematic cord strain relief was removed from production; and (2) the proper plaintiff for a Song-Beverly Act claim is a consumer who purchased a product in California, not a California resident. Again, Defendant asks the Court to "clarify that the California subclass consists only [of] those individuals who have experienced a cord failure." (Def.'s Mot. at 8.) Defendant repeats its arguments about standing and typicality with respect to Plaintiff Czuchaj.

## LEGAL STANDARD

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). As a decision in this District recently noted, this rule provides district courts with "the flexibility to address problems with a certified class as they arise, including the ability to" redefine classes as appropriate in response to developments in the case. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, No. 12-cv-01685-BAS-JLB, 2016 WL 2610107, at *5-6 (S.D. Cal. May 6, 2016) (internal citations omitted); *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 482 (S.D. Cal. 2005) (modifying class definition in light of new evidence, pleadings, and arguments). For instance, the district court may cure overbreadth in a class definition. *See Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483 (N.D. Cal. 2011). "In considering the appropriateness of [modifying a class], the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Marlo v. United Parcel Serv., Inc.,* 251 F.R.D. 476, 479 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011).

# DISCUSSION

The Court concludes that the present subclass definitions are overbroad and must be narrowed.  Changes to the New York subclass are addressed first, followed by discussion of the California subclass.

## I.    New York Subclass

### A. Plaintiff Carter Can Only Represent Coil Complainants

In a class action, standing is satisfied if the named plaintiff meets the constitutional standing requirements and shows that he or she has standing for the type of relief sought. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  To establish Article III standing and standing under N.Y. GBL § 349, a plaintiff must show injury.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).  Here, Plaintiffs do not dispute that Plaintiff Carter could have only suffered from a coil defect.  That is, she never could have been injured from the cord defect because her hair dryer is not from the manufacturer where the cord problems arose.  Therefore, had Plaintiff Carter brought a N.Y. GBL § 349 claim for a cord defect, she would not have had standing to maintain such a claim.  Consequently, Plaintiff Carter cannot serve as a class representative for cord defect claims.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong.'").

Another requirement to maintain a class action is that "the claims or defenses of the representative part[y]" must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The typicality requirement helps ensure "that the interest of the named representative aligns

5

with the interests of the class" so that the absent class members' interests will be fairly represented and adequately pursued by the class representative. *Id.*

Courts have found that the "the typicality requirement is not satisfied where evidence needed to prove the named plaintiff's claims is not probative of other class members' claims." *Wiener v. Dannon Co.*, 255 F.R.D. 658, 665 (C.D. Cal. 2009) (summarizing cases); *see also In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 611 (S.D. Cal. 2008) (finding typicality requirement satisfied where "the proof Lead Plaintiff would need to establish its claims would also prove the claims of the proposed . . . Class.").

Here, Carter's claims are not typical of unnamed class members who suffered a cord defect because the evidence needed to prove her coil claim is not probative of unnamed class members' cord claims. Carter does not need to present evidence of the cord defect to prevail on her coil claim. She never had a cord defect and could not have had a cord defect. Therefore, Carter has no incentive to represent unnamed class members who suffered from cord defects. *See, e.g.*, *Tschudy v. J.C. Penney Corp.*, No. 11-cv-1011-JM-KSC, 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) ("Named Plaintiffs' injuries arise from the PTNMA vacation plan. . . . Named Plaintiffs do not need to present any evidence regarding the MA plan to prevail on their claims. While Named Plaintiffs argue that they will vigorously pursue the claims on behalf of the MAs, there is no incentive for Named Plaintiffs to do so. In sum, MAs are improperly included in the class definition.").

In opposition, Plaintiffs argue that a plaintiff injured by a defective hair dryer can represent all class members that were injured by the same hair dryer. They contend that the precise nature of the defect, or whether the defect manifests at all, is not relevant. The Court disagrees. The precise nature of the defect does matter because the evidence necessary to prove the coil defect differs from the evidence necessary to prove the cord defect. This difference demonstrates that Carter's coil claim is atypical of cord claims. *Wiener*, 255 F.R.D. at 666-67 ("[T]he evidence needed to prove Wiener's claims involving Activia, namely proof that Dannon's claim that *Bifidus Regularis* is clinically

proven to regulate digestion is false or misleading, is not probative of the claims of unnamed class members who purchased DanActive, which require evidence that the claim that *L. Casei Immunitas* is clinically proven to strengthen the immune system is false or misleading.").

Moreover, the cases Plaintiffs cite to argue that class certification does not depend on manifestation of a defect are distinguishable.  In each of the cited cases, plaintiffs identified *one* defect alleged to be the *same* among all class members.  *Baker v. Microsoft Corp.*, 797 F.3d 607, 613 (9th Cir. 2015); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010) ("[A]ll of the proposed class members allege that their vehicles suffer from the same defect."); *Wilson v. Metals USA, Inc.*, No. 12-cv-568, slip op. at 14 (E.D. Cal. July 1, 2016) ("Here, the alleged defect is the same, no matter how quickly it manifested.").  In this case, *two, distinct, unconnected* defects *did* manifest, and Carter could have been injured by *only one* of them.

Plaintiffs also argue that Carter *has* adequately represented the interests of the class; therefore, there is no reason to find typicality lacking less than 60 days before trial. However, the Court may modify the class at any time before final judgment.  Fed. R. Civ. P. 23(c)(1)(C).  This case still must proceed through trial, in which the named Plaintiffs will testify, and any post-trial motions.  The case may also settle.  Because Carter's coil claims are distinct from unnamed class members' cord claims, Carter's incentives to settle may conflict with other class members.

Therefore, because Plaintiff Carter lacks standing to allege a cord defect claim and her coil claims are atypical of cord claims, the New York subclass must be limited to individuals who allege injury from the coil defect.

The Court denies Plaintiffs' request to add a new class representative to represent cord defect complainants.  "Allowing Plaintiffs to [appoint new] class representatives at this juncture would require Defendant[] to conduct new and/or additional discovery [and file new dispositive motions] that would not otherwise have been required had Plaintiffs joined the appropriate representatives in the first instance."  *In re Flash Memory Antitrust*

1  *Litig.*, No. C 07-0086, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010) (denying

2  addition of new class representatives); *Osakan v. Apple Am. Grp.*, No. C 08-4722, 2010

3  WL 1838701, at *5 (N.D. Cal. May 5, 2010) (same).  That would unduly delay the case

4  and prejudice Defendant, who has been preparing its defense based on the identities of

5  the class representatives identified in the pleadings.  Plaintiffs have had three years to

6  properly construct their classes and appoint class representatives.  Now, on the eve of

7  trial, they do not get another shot.

8         **B. Changes to the New York Subclass Definition**

9        Defendant proposes three changes to the existing subclass definition.  First,

10  Defendant argues that the proper plaintiff for a N.Y. GBL § 349 claim is a consumer who

11  purchased a product in New York, not a resident of New York.  Plaintiffs agree with this

12  proposition.  Therefore, this modification to the definition is proper.

13        Second, Defendant proposes that the timeframe for the New York subclass

14  definition should be December 17, 2010 through present day, rather than August 15, 2009

15  to present day.  Defendant argues that the timeframe should date back three years from

16  the time of filing the First Amended Complaint ("FAC") on December 17, 2013 because

17  Plaintiff Carter and coil issues first appeared in the FAC and section 349 claims have a

18  statute of limitations of three years.

19        Plaintiffs counter that the class period for the New York subclass begins August

20  15, 2009, four years before the original complaint was filed.  They contend that the New

21  York subclass contains claims for breach of implied warranty under New York law,

22  which has a four-year statute of limitations, and that the FAC relates back to the original

23  complaint, filed August 15, 2013, under Federal Rule of Civil Procedure 15.

24        As the Court noted in its July 26, 2016 order requesting supplemental briefing, the

25  New York subclass does not include claims for breach of implied warranty.  (ECF No.

26  324.)  Therefore, Plaintiffs' argument that a four-year statute of limitations applies is

27  incorrect.  General Business Law section 349's three-year statute of limitations governs.

28  *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 459 (S.D.N.Y. 2014).

1    The only issue is whether the timeframe should date back from the date of filing
2    the original complaint on August 15, 2013, or the date of filing the FAC on December 17,
3    2013.  An amendment "adding a plaintiff relates back to the date of the original pleading
4    when '(1) the original complaint gave the defendant adequate notice of the claims of the
5    newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant;
6    and (3) there is an identity of interests between the original and newly proposed
7    plaintiff.'"  *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1068 (S.D. Cal. 2015).  The
8    relation back doctrine is "liberally applied."  *ASARCO, LLC v. Union Pac. R.R. Co.*, 765
9    F.3d 999, 1004 (9th Cir. 2014).

10    The basis for Czuchaj's original complaint was that the model 259 had a
11    propensity to spark and catch fire.  The original complaint alleged claims on behalf of a
12    nationwide class of all consumers who purchased the Infiniti Pro 1875 Watt hair dryer.
13    (Compl. ¶¶ 32, 34 [ECF No. 1].)  In the FAC, Carter also claimed that the same hair dryer
14    had defects which caused it to spark or catch fire.  (FAC ¶¶ 14, 15 [ECF No. 9].)

15    Here, the FAC relates back to the original complaint.  First, the original complaint
16    notified Defendant that Czuchaj intended to represent all purchasers of the Infiniti Pro
17    1875 Watt hair dryer.  Carter fell within the prospective plaintiffs as defined by Czuchaj.
18    Moreover, both Czuchaj and Carter allege the same product is defective because of a
19    propensity to spark and catch fire.  Second, the "identity of interests" requirement is met
20    because "the circumstances giving rise to the claim remain [] the same under the
21    amended complaint as under the original complaint":  both Plaintiffs purchased the same
22    product and the product was defective because of a propensity to spark and catch fire.
23    *Allen*, 96 F. Supp. 3d at 1069.  Further, Defendant is not prejudiced by the addition of a
24    plaintiff who asserts the same general claim.  *Id.* ("The [addition] of new plaintiffs
25    forwarding the same theories on the same [p]roducts does not prejudice Defendant.").
26    Liberally applying Rule 15(c), the Court concludes that the FAC relates back to the
27    original complaint and, therefore, the timeframe for the class should date back three years
28    from the date of filing the original complaint on August 15, 2013.

Finally, Defendant's third proposal to modify the definition relates to the product's manufacturers.  Defendant argues that the scope of the class should be limited to Neumax-manufactured hair dryers because Plaintiffs' expert, Phil Van Herle, concedes that he only observed coil ejections in hair dryers manufactured by Neumax.  Plaintiffs oppose this modification, contending that it mischaracterizes Van Herle's testimony and improperly requests the Court to adjudicate a factual issue.  The Court agrees with Plaintiffs.  Whether the coil problems arose in hair dryers from Sun Luen and Silver Plan, as well as Neumax, is a disputed factual issue.  Therefore, the class includes Sun Luen, Silver Plan, and Neumax-manufactured hair dryers.

However, the Court excludes from the class hair dryers manufactured by Yueli. Plaintiffs have not presented any evidence that the Yueli-manufactured hair dryers failed, or were likely to fail, because of the coil defect.  Therefore, common questions do not predominate.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) ("[T]he district court was required to resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class as a whole. If there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class.").

In sum, the new New York subclass definition is as follows:

> Any consumer who purchased in the state of New York a Conair Corporation model 259 or 279 Infiniti Pro 1875 Watt hair dryer, manufactured by Sun Luen, Silver Plan, or Neumax, anytime between August 15, 2010 and the present, sold by Conair directly or through a retailer for primarily personal, family, or household purposes, and not for resale.

## II.   California Subclass Definition

### A. Plaintiff Czuchaj Can Represent Cord and Coil Complainants

California permits plaintiffs to bring breach of implied warranty claims under California's Song-Beverly Act for defects that have not yet manifested.  *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1304 (4th Dist. 2009).  "[P]roof of breach of warranty does not require proof the product has malfunctioned but only that it contains an

inherent defect which is substantially certain to result in malfunction during the useful life of the product." *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 917 (2d Dist. 2001).  Therefore, standing does not depend on whether the defect actually manifested.  *In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1161, 1164 (C.D. Cal. 2010).  Rather, suffering economic loss by buying a defective product or alleging a credible threat of future harm can confer standing.  *Id.*

Here, Plaintiff Czuchaj has standing to represent coil complainants.  Although her hair dryer first failed from the alleged cord issue, Plaintiffs argue that her hair dryer had the coil defect at the time of purchase (*see* SAC ¶¶ 34, 36), and that it would have eventually failed from the coil problem.  In support, they present expert testimony that the coil defect was "likely" to manifest in her hair dryer.  (Pls.' Eng'g Expert Prelim. Rpt. at 20-21.)  Plaintiff Czuchaj alleges that she "has been damaged in the amount she purchased the Hair Dryer, which on information and belief, ranged between $24.99 to $39.99."  (SAC ¶ 20.)  These allegations of economic loss and the threat of future harm are sufficient to establish standing.

Further, the class can consist of both cord and coil complainants, and Plaintiff Czuchaj is an adequate and typical representative of such a class.  A party seeking class certification of an implied warranty claim must provide evidence of "a defect that is substantially certain to result in malfunction during the useful life of the product."  *Am. Honda Motor Co. v. Super. Ct.*, 199 Cal. App. 4th 1367, 1375 (2d Dist. 2011) (citing *Hicks*, 89 Cal. App. 4th at 917).  Such a showing permits a court to conclude that common questions of fact and law predominate over individualized questions.  *See Hicks*, 89 Cal. App. 4th at 916-923; *see also Cartwright v. Viking Indus., Inc.*, No. 2:07-cv-02159, 2009 WL 2982887, at *11 (E.D. Cal. Sept. 14, 2009) (adopting *Hicks* standard in considering predominance under Fed. R. Civ. P. 23).

In *Hicks*, homeowners brought a putative class action alleging a defect in the foundations of their homes.  *Hicks*, 89 Cal. App. 4th at 912.  Some of the putative class

members' foundations had not yet cracked. On their motion for class certification, the *Hicks* plaintiffs presented expert testimony that where the foundations had not yet cracked, they were "most likely" to crack because of the alleged defect. *Id.* at 923. The expert's opinion satisfied the requirement to show that an inherent defect was "substantially certain to result in malfunction during the useful life of the product." *Id.* Therefore, a predominate, common question for all class members was whether the alleged defect in the foundation was actually an inherent defect. *Id.* ("It is not necessary for each individual homeowner to prove his foundation has already cracked or split or that he has suffered property damage as a result of the cracking or splitting. We see no reason why a homeowner should have to wait for the inevitable injuries to occur before recovering damages to repair the defect and prevent the injuries from occurring.").

In this case, Plaintiffs' theory is that all hair dryers have inherent design defects related to coils in the barrel. The defect actually manifested itself in the hair dryers from the Neumax factory. Plaintiffs' expert opines that hair dryers from the Sun Luen and Silver Plan factories "likely" suffered from the same coil defect as the Neumax-manufactured hair dryers. (Pls.' Eng'g Expert Prelim. Rpt. at 20; Pls.' Eng'g Expert Suppl. Rpt. at 20.) The Court finds that this evidence satisfies the *Hicks* standard. Whether the hair dryers from the Sun Luen, Silver Plan, and Neumax factories had an inherent defect to their coils is a common, predominate question.

Given that Plaintiff Czuchaj is alleged to have been injured by the same defect affecting all class members, her claim is typical of unnamed class members and she can adequately represent them. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

In sum, Plaintiff Czuchaj can represent a California subclass containing unnamed plaintiffs who suffered from either the cord or coil failure. The cord failure is limited to hair dryers manufactured by the Sun Luen factory. The coil failure is limited to hair dryers manufactured by the Sun Luen, Silver Plan, and Neumax factories. As noted

above, because Plaintiffs do not offer expert evidence regarding whether the Yueli-manufactured hair dryers had the same propensity to fail from the coil or cord defect, those hair dryers must be excluded from the class.  *Am. Honda Motor Co.*, 199 Cal. App. 4th at 1376-77 (class treatment of breach of warranty claims inappropriate where plaintiff presented no evidence that it was substantially certain that product would malfunction as a result of the defect).

**B. Changes to the California Subclass Definition**

Defendant proposes two changes to the language of the California subclass definition.  First, it contends that the proper plaintiff for a Song-Beverly Act claim is a consumer who purchased a product in California, not a California resident.  Plaintiffs agree.  Thus, this revision is appropriate.

Second, it argues that the class should be limited to purchasers of hair dryers manufactured by Sun Luen prior to July 26, 2013 because the cord problem only occurred in Sun Luen hair dryers manufactured before that date.  Because the Court holds that the California subclass includes coil claims, the Court rejects this proposal.  As explained above, however, the class will be limited to hair dryers manufactured by Sun Luen, Silver Plan, and Neumax.

 Therefore, the new California subclass definition is as follows:

> Any consumer who purchased in the state of California a Conair Corporation model 259 or 279 Infiniti Pro 1875 Watt hair dryer, manufactured by Sun Luen, Silver Plan, or Neumax, anytime between August 15, 2009 and the present, sold by Conair directly or through a retailer for primarily personal, family, or household purposes, and not for resale.

## CONCLUSION

In sum, the Court holds that the New York subclass is limited to plaintiffs alleging coil issues.  The Court denies Plaintiffs leave to add a new New York class representative to represent cord problems.  The New York subclass definition is defined as follows: "Any consumer who purchased in the state of New York a Conair Corporation model 259 or 279 Infiniti Pro 1875 Watt hair dryer, manufactured by Sun Luen, Silver Plan, or

Neumax, anytime between August 15, 2010 and the present, sold by Conair directly or through a retailer for primarily personal, family, or household purposes, and not for resale."

The California subclass includes plaintiffs alleging cord failures from Sun Luen-manufactured hair dryers and plaintiffs alleging coil defects from Sun Luen, Silver Plan, and Neumax-manufactured hair dryers.  The California subclass definition is defined as follows:  "Any consumer who purchased in the state of California a Conair Corporation model 259 or 279 Infiniti Pro 1875 Watt hair dryer, manufactured by Sun Luen, Silver Plan, or Neumax, anytime between August 15, 2009 and the present, sold by Conair directly or through a retailer for primarily personal, family, or household purposes, and not for resale."

**IT IS SO ORDERED.**


Dated:  August 15, 2016

Hon. Roger T. Benitez
United States District Judge